# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

6994 Dawson Blvd, LLC, Individually
and on Behalf of a Class of Similarly
Situated Persons,

       Plaintiff,

vs.

Oppenheimer & Co., Inc., James Wallace
Woods, Michael J. Mooney, Britt
Wright, William V. Conn, Jr., Conn &
Co. Tax Practice, LLC, Conn &
Company Consulting, LLC, and
Kathleen Lloyd,

       Defendants.

Civil Action No. 1:21-cv-3625-SDG

---

## OPPENHEIMER & CO. INC.'S BRIEF IN SUPPORT OF
## <u>MOTION TO DISMISS</u>

#3318022v1

# <u>TABLE OF CONTENTS</u>

**Page**

I.     INTRODUCTION ........................................................................1

II.    BACKGROUND ........................................................................3

    A.    Woods' Employment With Oppenheimer Ended Years Before
Plaintiff Invested In A Security Through Horizon And Woods. ........3

    B.    Plaintiff Has Never Had A Relationship With Oppenheimer. ............4

    C.    Nothing Links Oppenheimer To Plaintiff's Transaction With
Woods. ..............................................................................4

III.    ARGUMENT ..........................................................................5

    A.    SLUSA Preempts and Bars All Claims Against Oppenheimer. ..........6

    B.    The Georgia RICO Claim Against Oppenheimer Fails For
Multiple Reasons (Count I). ..................................................9

        1.    Oppenheimer Is Not Liable For Woods' Acts In
Connection With Plaintiff's Purchase Of A Security. ..............9

            a.    Oppenheimer Has No Respondeat Superior
Liability Under RICO For Woods' Conduct
Towards Plaintiff. ............................................9

            b.    Plaintiff Fails To Allege A RICO Conspiracy
Involving Oppenheimer. ....................................11

        2.    Plaintiff's Direct Theory Of RICO Liability Against
Oppenheimer Fails For Many Independent Reasons. ..............12

            a.    Plaintiff Pleads No Pattern Of Racketeering
Activity By Oppenheimer. ..................................12

            b.    Plaintiff Fails To Allege Any Racketeering
Activity. ........................................................13

            c.    Plaintiff Fails To Allege RICO Causation. ..................17

            d.    The 16-14-4(a) RICO Claim Also Fails Because
Oppenheimer Did Not Acquire Money Or
Property. ........................................................20

# TABLE OF CONTENTS
### (continued)

**Page**

e.    The 16-14-4(b) RICO Claim Fails For The
Additional Reason That There Are No Facts
Showing That Oppenheimer Participated In An
Enterprise. ......................................................................20

C.    Plaintiff Fails To State A Claim For Conspiracy Or
Procurement Of A Breach of Fiduciary Duty (Count III).................21

D.    Plaintiff's Negligent Misrepresentation Claim Fails (Count IV).......23

E.    Plaintiff's Aiding And Abetting Fraud Claim Fails (Count V). ........25

F.    Plaintiff's Request for Punitive Damages/Attorneys' Fees Must
Be Stricken (Counts VII and VIII). ....................................25

IV.    CONCLUSION...............................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Almanza v. United Airlines, Inc.,*
    851 F.3d 1060 (11th Cir. 2017) ...................................................................11, 21

*Am. Dental Ass'n v. Cigna Corp.,*
    605 F.3d 1283 (11th Cir. 2010) ...........................................................11, 13, 16

*Ambrosia Coal & Const. Co. v. Pages Morales,*
    482 F.3d 1309 (11th Cir. 2007) .......................................................................14

*Anza v. Ideal Steel Supply Corp.,*
    547 U.S. 451 (2006)...................................................................................17, 19

*Ayres v. Gen. Motors Corp.,*
    234 F.3d 514 (11th Cir. 2000) .........................................................................16

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)...................................................................................5, 15

*State of Ga. ex rel. Bowers for Use & Ben. of Camden Cty. Sch. Dist.*
    *v. Dairymen, Inc.,*
    813 F. Supp. 1580 (S.D. Ga. 1991) .................................................................20

*Bridge v. Phoenix Bond & Indem. Co.,*
    553 U.S. 639 (2008)........................................................................................18

*Cisneros v. Petland, Inc.,*
    972 F.3d 1204 (11th Cir. 2020) .......................................................................20

*Club Exploria, LLC v. Aaronson, Austin, P.A.,*
    2019 WL 5328738 (M.D. Fla. Oct. 21, 2019) ..................................................17

*Courtesy Props., LLC v. S&ME, Inc.,*
    2020 WL 7698659 (N.D. Ga. Dec. 28, 2020) (Grimberg, J.)......................23, 25

*Cummings v. Walsh Const. Co.*,
  561 F. Supp. 872 (S.D. Ga. 1983) ........................................................9

*Curry v. TD Ameritrade, Inc.*,
  2015 WL 11251449 (N.D. Ga. June 30, 2015).....................................22

*Doe 2 v. Red Roof Inns, Inc.*,
  2020 WL 1872337 (N.D. Ga. Apr. 13, 2020).......................................15

*Farzaneh v. Merit Const. Co.*,
  710 S.E.2d 839 (Ga. App. 2011) .........................................................10

*Ghee v. JPMorgan Chase Bank, N.A.*,
  2018 WL 1833516 (N.D. Ga. Feb. 13, 2018), *adopted by Ghee v.
  J.P. Morgan Chase Bank*, N.A, 2018 WL 3698999 (N.D. Ga. July
  20, 2018) .............................................................................................15

*Gray v. Torbert*,
  2012 WL 13013986 (N.D. Ga. Jan. 26, 2012).......................................8

*Green Leaf Nursery v. E.I. DuPont De Nemours & Co.*,
  341 F.3d 1292 (11th Cir. 2003) ...........................................................17

*Hauptman v. Interactive Brokers, LLC*,
  2018 WL 4278345 (S.D.N.Y. June 12, 2018) ......................................24

*Hemi Grp., LLC v. City of New York, N.Y.*,
  559 U.S. 1 (2010).................................................................................19

*In re Herald*,
  753 F.3d 110 (2d Cir. 2014) ..................................................................7

*Holmes v. Sec. Inv. Prot. Corp.*,
  503 U.S. 258 (1992).............................................................................17

*Hopper v. Solvay Pharms., Inc.*,
  588 F.3d 1318 (11th Cir. 2009) .............................................................5

*Hosch v. Wachovia Bank, N.A.*,
  2011 WL 13355877 (N.D. Ga. Mar. 24, 2011), *aff'd*, 815 F. App'x
  352 (11th Cir. 2020)......................................................................10, 11

*Howell v. QS of Georgia, LLC*,
   2007 WL 9702215 (N.D. Ga. Mar. 12, 2007 ......................................................17

*Insight Tech., Inc. v. FreightCheck, LLC*,
   633 S.E.2d 373 (Ga. App. 2006) .......................................................................22

*Instituto De Prevision Militar v. Merrill Lynch*,
   546 F.3d 1340 (11th Cir. 2008) ......................................................................6, 7

*Intellicig USA, LLC v. CN Creative Ltd.*,
   2017 WL 11634374 (N.D. Ga. Mar. 6, 2017) ...................................................23

*Kahn v. Morton Indus. Grp., Inc.*,
   2006 WL 8433681 (N.D. Ga. June 23, 2006)......................................................6

*La Grasta v. First Union Sec., Inc.*,
   358 F.3d 840 (11th Cir. 2004) ............................................................................8

*Lander v. Hartford Life & Annuity Ins. Co.*,
   251 F.3d 101 (2d Cir. 2001) ...............................................................................8

*Lilliston v. Regions Bank*,
   244, 653 S.E.2d 306 (Ga. App. 2007) ...............................................................23

*Luis v. RBC Cap. Markets, LLC*,
   401 F. Supp. 3d 817 (D. Minn. 2019), *aff'd*, 984 F.3d 575 (8th Cir.
   2020) ...........................................................................................................15, 24

*Maddox v. S. Eng'g Co.*,
   500 S.E.2d 591 (Ga. App. 1998) .......................................................................17

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*,
   547 U.S. 71 (2006)..........................................................................................6, 7

*Moore v. Lovein Funeral Home*,
   852 S.E.2d 876 (Ga. App. 2020) .......................................................................24

*New York Life Ins. Co. v. Grant*,
   57 F. Supp. 3d 1401 (M.D. Ga. 2014) ...............................................................25

*Next Century Commc'ns Corp. v. Ellis*,
   214 F. Supp. 2d 1366 (N.D. Ga. July 30, 2002), *aff'd,* 318 F.3d
   1023 (11th Cir. 2003) ............................................................................24

*PHL Variable Ins. Co. v. Jolly*,
   800 F. Supp. 2d 1205 (N.D. Ga. 2011), *aff'd sub nom.* 460 F.
   App'x 899 (11th Cir. 2012) ................................................................23

*Premium Plus Partners, L.P. v. Davis*,
   2005 WL 711591 (N.D. Ill. Mar. 28, 2005) ........................................8

*Purchasing Power, LLC v. Bluestem Brands, Inc.*,
   2012 WL 3065419 (N.D. Ga. July 27, 2012) ......................................24

*Raines v. State*,
   467 S.E.2d 217 (Ga. App. 1996) ........................................................13

*Ray v. Spirit Airlines, Inc.*,
   836 F.3d 1340 (11th Cir. 2016) ...................................................18, 21

*Richman v. Goldman Sachs Grp., Inc.*,
   868 F. Supp. 2d 261 (S.D.N.Y. 2012) ...............................................15

*Rosen v. Protective Life Ins. Co.*,
   2010 WL 2014657 (N.D. Ga. May 20, 2010) ...............................11, 12

*Scala v. Citicorp Inc.*,
   2011 WL 900297 (N.D. Cal. Mar. 15, 2011) .......................................8

*Sec. State Bank v. Visiting Nurses Ass'n of Telfair Cty., Inc.*,
   568, S.E.2d 491, 493 (Ga. App. 2002) ..............................................10

*Serpentfoot v. Rome City Comm'n*,
   2010 WL 11507239 (N.D. Ga. Mar. 3, 2010) ....................................20

*Siavage v. Gandy*,
   829 S.E.2d 787 (Ga. App. 2019) ........................................................25

*Smith v. Copeland*,
   2010 WL 2104667 (N.D. Ga. May 21, 2010) .....................................10

*Smith v. Ocwen Fin.*,
488 F. App'x 426 (11th Cir. 2012) ....................................................................23

*Stroman v. Bank of Am. Corp.*,
852 F. Supp. 2d 1366 (N.D. Ga. 2012)..............................................................25

*Thompson v. Smith, Barney, Harris Upham & Co., Inc.*,
709 F.2d 1413 (11th Cir. 1983) .........................................................................15

*Thuman v. Dembski*,
2017 WL 3614522 (W.D.N.Y. Apr. 4, 2017).....................................................15

*Travelers Cas. & Sur. Co. of Am. v. Reznick Grp.*,
P.C., 271 F. App'x 833 (11th Cir. 2008) ...........................................................25

*United States v. Ruan*,
966 F.3d 1101 (11th Cir. 2020) .........................................................................16

*Vernon v. Assurance Forensic Acct., LLC*,
774 S.E.2d 197 (Ga. App. 2015) .......................................................................18

*Wade Park Land Holdings, LLC v. Kalikow*,
522 F. Supp. 3d 1341 (N.D. Ga. 2021)..............................................................11

*Williams v. Unum Life Ins. Co. of Am.*,
2007 WL 2479561 (N.D. Ga. Aug. 27, 2007) ...................................................12

*Wingate Land, LLC v. ValueFirst, Inc.*,
722 S.E.2d 868 (Ga. App. 2012) .......................................................................25

*Wylie v. Denton*,
746 S.E.2d 689 (Ga. App. 2013) .......................................................................19

**Statutes**

15 U.S.C. § 78bb(f)(1) ..............................................................................................6

18 U.S.C. § 1341 .....................................................................................................13

18 U.S.C. § 1343 .....................................................................................................13

18 U.S.C. § 1957 ...................................................................................13, 16

O.C.G.A § 16-14-3(4)(A) .................................................................12

O.C.G.A. § 16-14-4(a)-(c) ..................................................................9

O.C.G.A. § 51–2–2 ............................................................................9

Securities Litigation Uniform Standards Act, Pub. L. No. 105-353,
   112 Stat. 3227 (1998)...................................................................*passim*

**Other Authorities**

Fed. R. Civ. P. 9(b) ........................................................................*passim*

Fed. R. Civ. P. 12(b)(6)......................................................................5

## I.   <u>INTRODUCTION</u>

Plaintiff 6994 Dawson Blvd, LLC ("Plaintiff") seeks to hold Oppenheimer & Co. Inc. ("Oppenheimer") responsible for the sale of a security to him by John J. Woods ("Woods"), a former employee.  Woods allegedly duped Plaintiff into investing in Horizon Private Equity ("Horizon"), which Plaintiff characterizes as a Ponzi scheme.  Horizon has never been affiliated with Oppenheimer.  Plaintiff has never been a customer of Oppenheimer.  And Woods' employment at Oppenheimer ended in *December 2016*—years before Plaintiff invested with Woods in *June 2019*. The Complaint alleges no legal basis to hold Oppenheimer liable for the harm Plaintiff claims to have sustained from Woods' alleged Ponzi scheme.

*SLUSA Preclusion*.   The Securities Litigation Uniform Standards Act ("SLUSA") bars this action because it is a class action, it is brought under state law, and it asserts claims based on misrepresentations or omissions in connection with the purchase of products marketed as covered securities.  This alone is dispositive.

*No Derivative Liability*.  The Complaint pleads no basis to hold Oppenheimer liable for Woods' conduct.  Oppenheimer cannot be liable under *respondeat superior* principles because the Complaint makes clear that Woods was not employed by Oppenheimer when Plaintiff invested.  And Plaintiff pleads no facts to support any plausible theory that Oppenheimer conspired with Woods to defraud anyone.

***No Direct Liability***.  Unable to make Oppenheimer responsible for Woods' conduct, the Complaint exceeds all bounds of plausibility to try to bring claims based upon Oppenheimer's own alleged statements.  Why would Oppenheimer partake in a criminal scheme to enrich a long-gone former employee at the expense of an investor totally unknown to Oppenheimer?  It would not.  Each claim fails.

First, Plaintiff's conclusory references to supposed false communications and statements by Oppenheimer do not remotely satisfy Rule 9(b).  At most, Plaintiff contends that Oppenheimer should have disclosed that Woods sold securities outside his employment with Oppenheimer in the Form U5 it submitted to the Financial Industry Regulatory Authority ("FINRA") after Woods left Oppenheimer and years before Plaintiff's investment.  But there is no private right of action to enforce FINRA rules and Plaintiff cannot invoke the state law claims here to circumvent that restriction.  Moreover, this alleged omission in a non-public form to a government-authorized organization does not render the form false or misleading.  It cannot be the basis for liability to a private party under civil RICO or any other state law claim.

Second, all Plaintiff's claims against Oppenheimer fail for lack of causation.  Plaintiff does not allege that it obtained, reviewed, or relied upon that Form U5 or any statement in it.  And the Form U5 was submitted to FINRA years before

2

Plaintiff's investment.  Plaintiff does not allege a proximate causal connection between its investment with Woods and the Form U5.

Third, Plaintiff's Georgia RICO claim against Oppenheimer fails for other reasons.  Plaintiff alleges no facts demonstrating that Oppenheimer engaged in a pattern of racketeering activity, acquired any interest in anything, or participated in any conduct with Woods for the common purpose of defrauding Plaintiff.  Indeed, Plaintiff does not allege that Woods' scheme benefitted Oppenheimer.

Lastly, Plaintiff's state law claims all fail for numerous additional reasons— all of which reflect the fundamental problem that, when Plaintiff invested, Oppenheimer had no connection with Woods, Plaintiff, or their transaction.

## II.   BACKGROUND

### A.   Woods' Employment With Oppenheimer Ended Years Before Plaintiff Invested In A Security Through Horizon And Woods.

Plaintiff's Complaint alleges that Oppenheimer employed Woods as an investment adviser from January 2003 through December 31, 2016.  (Compl. ¶ 22.) But Woods had a separate business at Southport Capital ("Southport") during and after his Oppenheimer employment.  (*Id.* ¶ 37.)  While working at Southport, Woods convinced Plaintiff to invest in Horizon, a fund offered by Horizon Private Equity, LLC (an entity Woods incorporated).  (*Id.* at p. 4, ¶ 47.)  Plaintiff invested on June 1, 2019—more than two years after Woods left Oppenheimer.  (*Id.* ¶ 32.)

3

**B.**   <u>**Plaintiff Has Never Had A Relationship With Oppenheimer**</u>.

Plaintiff does not allege that it or its owner (Mike Hall) was ever a client of Oppenheimer.  Nor does Plaintiff allege that it (or Mr. Hall) ever communicated with Oppenheimer about anything, much less Plaintiff's 2019 Horizon investment.

**C.**   **Nothing Links Oppenheimer To Plaintiff's Transaction With** <u>**Woods**</u>.

Plaintiff alleges that Woods represented to potential investors that "their money would be invested in government bonds, stocks, or small real estate projects." (*Id.* ¶ 30 (quotation omitted).)  Plaintiff does not contend it ever communicated with Oppenheimer or invested because of anything Oppenheimer said or did.  (*Id.* ¶¶ 32-33.)  Instead, Plaintiff invested in June 2019 after "Hall was assured by Woods that the investment was guaranteed, that he would be paid a steady rate of interest, and that he could redeem his investment at any time with notice."  (*Id.*)

Rather than pleading any connection between Oppenheimer and Plaintiff's investment, Plaintiff alleges that, nearly three years earlier, Oppenheimer submitted a Form U5 to FINRA after Woods' employment with Oppenheimer ended.  (*Id.* ¶ 88.)  The Complaint alleges that contrary to an unidentified FINRA requirement, the Form U5 did not identify the reason Woods' employment ended (*id.*), but the Complaint does not allege that anything on that form was inaccurate.  (*Id.* ¶ 91.)  Nor does Plaintiff allege any facts supporting that Oppenheimer submitted the Form U5

4

with the intent to defraud anyone, let alone Plaintiff.  Plaintiff does not state that it

obtained, reviewed, or relied upon the Form U5, or any other statement linked to

Oppenheimer, before investing through Woods.

Nonetheless, Plaintiff brings six (of its eight) claims against Oppenheimer:

Georgia RICO (Count I); conspiracy and/or procurement of breach of fiduciary duty

(Count III); negligent misrepresentation (Count IV); aiding and abetting fraud

(Count V); and punitive damages (Count VII) and attorneys' fees (Count VIII).

## III.  <u>ARGUMENT</u>

To survive a motion to dismiss under Rule 12(b)(6), Plaintiff must provide

"more than labels and conclusions."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

(2007).  Factual allegations must transcend the "speculative," "conceivable," and

"possible," and must "state a claim to relief that is plausible on its face."  *Id.* at 555-

57, 566-67, 570.  Because Plaintiff's RICO and other claims sound in fraud, Plaintiff

must also satisfy Rule 9(b)'s heightened pleading standard.  Plaintiff bears the heavy

burden of pleading "facts as to time, place, and substance of the defendant's alleged

fraud, specifically the details of the defendant['s] allegedly fraudulent acts, when

they occurred, and who engaged in them."  *Hopper v. Solvay Pharms., Inc.*, 588 F.3d

1318, 1324 (11th Cir. 2009) (internal quotation marks omitted).

Here, all claims against Oppenheimer must be dismissed for multiple reasons.

## A.  **SLUSA Preempts and Bars All Claims Against Oppenheimer.**

SLUSA precludes certain class actions from proceeding under state law, so that covered securities-related class actions must be brought under federal securities law.  15 U.S.C. § 78bb(f)(1).  SLUSA preclusion applies if (1) the case qualifies as a "covered class action"; (2) the complaint asserts state law causes of action; and (3) the state law claims are based on misrepresentations or omissions "in connection with the purchase [or sale]" of (4) a "covered security." *Instituto De Prevision Militar v. Merrill Lynch*, 546 F.3d 1340, 1352 (11th Cir. 2008).  Because each element is satisfied here, all claims are preempted and must be dismissed.

First, a "covered class action" is a lawsuit seeking damages on behalf of more than 50 people.  *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 83 (2006).  This action meets that standard because Plaintiff alleges that "the class consists of at least 400 individuals and/or entities."  (Compl. ¶ 14.)

Second, on the face of the Complaint, Plaintiff brings only Georgia law claims, and SLUSA applies to "claims allegedly based on Georgia law."  *Kahn v. Morton Indus. Grp., Inc.*, 2006 WL 8433681, at *3 (N.D. Ga. June 23, 2006).

Third, Plaintiff alleges fraud "in connection with [Plaintiff's] purchase or sale" of a security.  The Eleventh Circuit addressed the "in connection with" requirement in *Instituto De Prevision Militar*.  There, a non-party Pension Fund of

America ("PFA") allegedly defrauded investors, including the plaintiff, by stealing their money rather than investing it.  546 F.3d at 1342.  The plaintiff brought state law claims alleging that Merrill Lynch allowed PFA to hold itself out as its agent and failed to stop PFA from misappropriating the plaintiff's funds.  *Id.*  These allegations satisfied SLUSA's "in connection with" requirement because plaintiff "is complaining about fraud that induced it to invest with PFA."  *Id.* at 1349.  Here Plaintiff's legal theory is that all Defendants conspired to fraudulently induce it to invest in Horizon (Compl. ¶¶ 66-68), easily falling within the "broad construction" of the "in connection with" requirement.  *Dabit*, 547 U.S. at 85-86.

Lastly, a "covered security" under SLUSA includes securities "traded nationally and listed on a regulated national exchange."  *Id.* at 83.  Importantly, an investment **marketed as** a covered security is within "the ambit of SLUSA."  *In re Herald*, 753 F.3d 110, 113 (2d Cir. 2014); *see also Instituto De Prevision Militar*, 546 F.3d at 1352 ("[W]hat controlled . . . was the product that was marketed to the investor, not what the defendant actually did with the investor's money.").  Hybrid investments comprised of both covered securities and uncovered securities qualify as covered securities.  *Id.* at 1351.

Here, Plaintiff alleges that "Woods and other advisers . . . falsely and fraudulently represented to" investors that "their money would be invested in

'government bonds, stocks, or small real estate projects.'" (Compl. ¶ 30 (quoting SEC Complaint).) Government bonds and stocks are generally covered securities, and Plaintiff does not allege that these stocks and government bonds were any exception.[1] Moreover, in a parallel SEC action against Woods, Southport, and Horizon, the SEC alleges that Woods and other Southport advisers violated federal securities laws by misrepresenting to investors "[t]hat the Horizon investment was an annuity." (Ex. 1, SEC Complaint, at ¶ 28(g).)[2] Variable annuities are also "covered securities" under SLUSA. *Lander v. Hartford Life & Annuity Ins. Co.*, 251 F.3d 101, 110 (2d Cir. 2001).

In short, Plaintiff's claims are "essentially securities claims" precluded by SLUSA.[3] Plaintiff even alleges as much, pleading that Woods' "scheme violated a host of securities laws." (Compl. at p. 4.) Thus, dismissal is proper under SLUSA.

---

[1]   *See Scala v. Citicorp Inc.*, 2011 WL 900297, at *5 (N.D. Cal. Mar. 15, 2011) (SLUSA preclusion applies because defendant "represented to investors that he would trade in 'instruments including . . . stocks [and] bonds . . . [a]nd there is no serious dispute as to whether stocks and bonds are 'covered securities[.]'"); *Premium Plus Partners, L.P. v. Davis*, 2005 WL 711591, at *19 (N.D. Ill. Mar. 28, 2005) (SLUSA bars state-law claims based on alleged trading in "government securities").

[2]   The SEC's lawsuit is "referenced in the complaint" (Compl., at p.5), and thus is properly considered on a motion to dismiss. *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004).

[3]   *See, e.g.*, *Gray v. Torbert*, 2012 WL 13013986, at *2-3 (N.D. Ga. Jan. 26, 2012) (dismissing lawsuit because "[a]lthough the plaintiffs in the instant action seek to avoid the consequences of SLUSA by artful pleading, it is clear that their claims of negligence and misrepresentation are essentially securities claims.").

**B.    The Georgia RICO Claim Against Oppenheimer Fails For Multiple Reasons (Count I).**

Plaintiff asserts claims against Oppenheimer under each subsection of Georgia RICO (O.C.G.A. § 16-14-4(a)-(c)), based on a derivative theory (that Oppenheimer is responsible for Woods' conduct) and a direct theory (that Oppenheimer itself violated Georgia RICO).  Both theories fail as a matter of law.

### 1.    Oppenheimer Is Not Liable For Woods' Acts In Connection With Plaintiff's Purchase Of A Security.

Plaintiff claims Oppenheimer is responsible for Woods' conduct (1) under *respondeat superior* principles and (2) as Woods' supposed criminal co-conspirator. (Compl. ¶¶ 64, 70-74.)  Plaintiff's allegations do not support either.

#### a.    Oppenheimer Has No *Respondeat Superior* Liability Under RICO For Woods' Conduct Towards Plaintiff.

Woods' employment with Oppenheimer ended more than two years before Plaintiff invested in Horizon.  (Compl ¶¶ 22, 32.)  The doctrine of *respondeat superior* provides that a principal may be liable only for an agent's acts committed "by his command or in the prosecution and within the scope of his business . . . ." O.C.G.A. § 51–2–2.  So "once an agent or employee departs or steps aside from his employment and undertakes an act purely personal in nature, the employer is not liable for that act." *Cummings v. Walsh Const. Co.*, 561 F. Supp. 872, 879 (S.D. Ga. 1983).  Because Oppenheimer did not employ Woods when Plaintiff invested, and

9

there are no allegations that Oppenheimer "command[ed]" Woods to sell the security

at issue, Oppenheimer is not liable for Woods' conduct.[4]

This derivative theory also fails because Oppenheimer "can not be held liable

under Georgia RICO on a theory of *respondeat superior* when it does not receive

some benefit from the RICO violation." *Smith v. Copeland*, 2010 WL 2104667, at

*8 (N.D. Ga. May 21, 2010).[5]  Plaintiff does not allege that Oppenheimer received

any money or other benefit from Plaintiff's investment, years after Woods left

Oppenheimer.  Rather, the Complaint makes clear that Woods and Southport

advisers misappropriated Southport customers' funds "for their personal uses."

(Compl. ¶ 64.)  In Plaintiff's own words, "[t]he principal purpose of the enterprise

was to enrich Woods and provide Woods with money for various business purposes,

as well as to repay regular interest payments owed to earlier investors in the Ponzi

scheme."  (*Id.* ¶ 60.)  Plaintiff does not allege that the scheme benefitted

Oppenheimer.

---

[4]     *Farzaneh v. Merit Const. Co.*, 710 S.E.2d 839, 843 (Ga. App. 2011).
[5]     *See also Sec. State Bank v. Visiting Nurses Ass'n of Telfair Cty.*, *Inc.*, 568
S.E.2d 491, 493 (Ga. App. 2002) (bank not liable for RICO violation under a theory
of *respondeat superior* because it "received no value" as part of employee's
fraudulent scheme); *Hosch v. Wachovia Bank, N.A.*, 2011 WL 13355877, at *12
(N.D. Ga. Mar. 24, 2011) (dismissing Georgia RICO claim because no plausible
facts "to demonstrate that Defendants Wachovia and Wells Fargo benefitted from
the alleged actions of Defendant Salinas."), *aff'd*, 815 F. App'x 352 (11th Cir. 2020).

### b. Plaintiff Fails To Allege A RICO Conspiracy Involving Oppenheimer.

A "defendant may be found liable for violating § 16-14-4(c) if he knowingly and willfully joins a conspiracy which itself contains a common plan or purpose to commit two or more predicate acts."  *Rosen v. Protective Life Ins. Co.*, 2010 WL 2014657, at *8 (N.D. Ga. May 20, 2010).

Here, the Complaint lacks any facts showing that Oppenheimer agreed with Woods or any other defendant to commit fraud.  At most, Plaintiff alleges that Oppenheimer was aware or should have been aware that Woods ran a side business selling securities at the same time he was working for Oppenheimer.  (Compl. ¶¶ 72-73.)  This does not come close to establishing a meeting of the minds between Woods and Oppenheimer to jointly engage in criminal activity.  The Eleventh Circuit and judges in the Northern District have repeatedly upheld dismissal of such "wholly conclusory allegations of conspiracy" under RICO.[6]  Indeed, any agreement by Oppenheimer would be implausible, given that there are no allegations that Oppenheimer benefited from Woods' side business.

---

[6]     *See, e.g.*, *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1294 (11th Cir. 2010); *Almanza v. United Airlines, Inc.*, 851 F.3d 1060, 1067-74 (11th Cir. 2017); *Wade Park Land Holdings, LLC v. Kalikow*, 522 F. Supp. 3d 1341, 1355 (N.D. Ga. 2021); *Hosch*, 2011 WL 13355877, at *13 ("conclusory allegations or legal conclusions with respect to the existence of a conspiracy or agreement" are insufficient "to allege a viable conspiracy claim under . . . Georgia RICO").

11

In addition, even if Plaintiff had alleged facts showing that Oppenheimer and Woods reached some unlawful agreement to commit fraud (and there are none), Plaintiff does not allege that this agreement continued *after* Woods' 2016 departure. There are no facts that Oppenheimer knew anything about Woods or his selling activities at the time of Woods' 2019 transaction with Plaintiff, years after Woods left Oppenheimer. *See Rosen*, 2010 WL 2014657, at *8 (defendant "could not have knowingly and willfully conspired to steal Rosen's chose of action because it was not even aware of the terms of the Settlement Agreement").

### 2. Plaintiff's Direct Theory Of RICO Liability Against Oppenheimer Fails For Many Independent Reasons.

Plaintiff also brings RICO claims based upon the theory that Oppenheimer independently engaged in a pattern of racketeering activity that caused Plaintiff harm. (Compl. ¶¶ 63-64.) Like its derivative theories of liability, this direct theory is facially implausible and legally flawed.

#### a. Plaintiff Pleads No Pattern Of Racketeering Activity By Oppenheimer.

To plead "a pattern of racketeering activity," Plaintiff must allege facts to show that Oppenheimer "committed predicate offenses . . . at least twice." *Williams v. Unum Life Ins. Co. of Am.*, 2007 WL 2479561, at *2 (N.D. Ga. Aug. 27, 2007) (internal quotation and citation omitted); O.C.G.A § 16-14-3(4)(A). Plaintiff

purports to allege predicate offenses by Oppenheimer of mail fraud (18 U.S.C. §

1341); wire fraud (18 U.S.C. § 1343); and transactions in property derived from

unlawful activity (18 U.S.C. § 1957).

However, the Complaint contains virtually no facts as to Oppenheimer's

supposed racketeering activity.  Once the conclusory statements are swept aside

(Compl. ¶ 64 (at p. 31)), Plaintiff merely claims that Oppenheimer submitted a Form

U5 to FINRA that it contends should have disclosed more information.  (*Id.* ¶¶ 88,

91.)  That is not fraud, as addressed below, or actionable under any tort theory.  And

submitting a single form is not a "pattern" of racketeering activity.  *See Raines v.*

*State*, 467 S.E.2d 217 (Ga. App. 1996) (sale of timber was single act and could not

be converted into two predicate acts).  For this reason alone, the RICO claims fail.

**b.**     **Plaintiff Fails To Allege Any Racketeering Activity.**

Not only has Plaintiff failed to allege a "pattern" of racketeering activity, it

also has failed to allege any racketeering activity by Oppenheimer whatsoever.

***Mail/Wire Fraud***.  To allege mail or wire fraud, Plaintiff must allege facts

showing Oppenheimer "(1) intentionally participate[d] in a scheme to defraud

another of money or property and (2) use[d] the mails or wires in furtherance of that

scheme." *Am. Dental Ass'n*, 605 F.3d at 1290.  Plaintiff must also satisfy Rule 9(b),

which requires Plaintiff to allege "the precise statements, documents, or

misrepresentations made[,]" the "time and place of and person responsible for the statement[,]" the "content and manner in which the statements misled the Plaintiffs[,]" and "what the Defendants gained by the alleged fraud." *Ambrosia Coal & Const. Co. v. Pages Morales*, 482 F.3d 1309, 1316-17 (11th Cir. 2007).

The Complaint does not come close to pleading these particulars. Instead, it asserts in conclusory fashion—unconnected to Plaintiff—that Oppenheimer committed mail fraud "by causing security investment account statements, federal tax filings, and other documents to be sent in the mail to third party custodians and taxing authorities all for the purpose of furthering their fraudulent scheme to misappropriate investor funds." (Compl. ¶ 64.) It further alleges that Oppenheimer committed wire fraud "by making use of telephone calls and other electronic communications, including email, in furtherance of their fraudulent Ponzi scheme." (*Id.*) But the Complaint does not identify any particular fraudulent document or communication by Oppenheimer, when it was sent, to whom it was sent, what was fraudulent about it, or how it furthered Woods' alleged scheme or benefitted Oppenheimer. Indeed, Plaintiff does not allege that it had ***any*** communications of any kind with Oppenheimer (because it was not an Oppenheimer customer). The

Complaint's conclusory statements do not satisfy *Iqbal* and *Twombly*, much less Rule 9(b), and cannot demonstrate racketeering activity.[7]

Oppenheimer's submission of an allegedly incomplete Form U5 to FINRA does not somehow constitute mail or wire fraud.  As a threshold matter, a claim based upon an alleged violation of an asserted FINRA requirement cannot be the basis of RICO liability (or Plaintiff's other state law claims), because it is not an enumerated racketeering act and there is no private right of action to enforce FINRA rules.[8]  Plaintiff cannot circumvent Congressional intent and seek to enforce FINRA rules through its state law RICO or other claims.[9]  That ends the matter.

---

[7]    *See, e.g.*, *Doe 2 v. Red Roof Inns, Inc.*, 2020 WL 1872337, at *4 (N.D. Ga. Apr. 13, 2020) (dismissing Georgia RICO claims because predicate act "allegations are conclusory"); *Ghee v. JPMorgan Chase Bank, N.A.*, 2018 WL 1833516, at *8 (N.D. Ga. Feb. 13, 2018) (dismissing Georgia RICO claim for failure "to identify the time or place of the alleged . . . fraudulent . . . documents . . .[or] who made the misrepresentations and/or created the false documents."), *adopted by Ghee v. J.P. Morgan Chase Bank*, N.A., 2018 WL 3698999 (N.D. Ga. July 20, 2018).

[8]    *Thompson v. Smith, Barney, Harris Upham & Co., Inc.*, 709 F.2d 1413, 1419 (11th Cir. 1983); *Thuman v. Dembski*, 2017 WL 3614522, at *9 (W.D.N.Y. Apr. 4, 2017) ("courts have repeatedly held that FINRA, and previously NASD, rules do not provide for a private right of action"), *report and recommendation adopted*, 2021 WL 1865552 (W.D.N.Y. May 10, 2021).

[9]    *See, e.g.*, *Luis v. RBC Cap. Markets, LLC*, 401 F. Supp. 3d 817, 832 (D. Minn. 2019) (rejecting state law claim because "allowing Plaintiffs to enforce FINRA rules and guidance through this breach action 'would vitiate Congress's intent not to allow private rights of action' for violations of those rules and guidance, and would accordingly run against basic separation of powers principles.'"), *aff'd*, 984 F.3d 575 (8th Cir. 2020); *Richman v. Goldman Sachs Grp., Inc.*, 868 F. Supp. 2d 261, 275 (S.D.N.Y. 2012) (same).

15

Even more, there are no facts showing the circumstances of that submission, that anything in the Form U5 was false or misleading, or that Oppenheimer intended "to defraud another of money or property," *Am. Dental Ass'n*, 605 F.3d at 1290, by submitting the Form U5. While Plaintiff contends that Oppenheimer should have disclosed that Woods left the company due to alleged wrongdoing (Compl. ¶¶ 88-92), it does not allege facts that Oppenheimer knew Woods was operating a Ponzi scheme at Southport, and any alleged further duty of disclosure to FINRA simply cannot serve as the basis for a RICO cause of action by a private plaintiff. *Ayres v. Gen. Motors Corp.*, 234 F.3d 514, 522-25 (11th Cir. 2000) (failure to disclose information under the Vehicle Safety Act could not give rise to civil RICO liability).

**No Violation Of 18 U.S.C. § 1957**. Section 1957 prohibits "knowingly engag[ing] or attempt[ing] to engage in a monetary transaction in criminally derived property of a value greater than $10,000 . . . derived from specified unlawful activity[.]" *United States v. Ruan*, 966 F.3d 1101, 1148 (11th Cir. 2020) (quoting 18 U.S.C. § 1957(a)), *cert. granted*, 2021 WL 5148067 (U.S. Nov. 5, 2021). Plaintiff merely alleges in conclusory fashion that "Oppenheimer engaged in numerous monetary transactions with banks and securities firms using property criminally derived from the Horizon Private Equity investors." (Compl. ¶ 64.) But Plaintiff alleges no facts that Oppenheimer ever engaged in any transaction with Horizon

16

funds, much less knew that any such funds were criminally derived from a Ponzi scheme. Plaintiff was not an Oppenheimer customer and cannot allege that Oppenheimer had anything to do with its transaction.[10]

### c. Plaintiff Fails To Allege RICO Causation.

The Supreme Court has established "stringent" causation requirements for civil liability under RICO. *See Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 458 (2006); *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 265-271 (1992).[11] RICO causation must be scrutinized at the motion to dismiss stage. *See, e.g.*, *Holmes*, 503 U.S. at 269; *Pierson*, 2010 WL 11496944, at *12.

To satisfy RICO causation, a plaintiff must suffer injury "directly caused by the [defendant's] RICO violation." *Green Leaf Nursery v. E.I. DuPont De Nemours & Co.*, 341 F.3d 1292, 1307-08 (11th Cir. 2003). Although reliance is not an express statutory requirement of a RICO mail or wire fraud claim, "[i]n most cases, the plaintiff will not be able to establish even but-for causation if no one relied on the

---

[10]    Moreover, the claim fails because Plaintiff does not allege a single transaction of more than $10,000. *Club Exploria, LLC v. Aaronson, Austin, P.A.*, 2019 WL 5328738, at *2 (M.D. Fla. Oct. 21, 2019).

[11]    To analyze causation under the Georgia RICO statute, courts look to federal RICO decisions. *Howell v. QS of Georgia, LLC*, 2007 WL 9702215, at *6 (N.D. Ga. Mar. 12, 2007) (dismissing Georgia RICO claim because "injury did not flow directly from the alleged misrepresentations"); *Maddox v. S. Eng'g Co.*, 500 S.E.2d 591, 594 (Ga. App. 1998) ("we will look to federal authority to address" RICO causation (internal quotations omitted)).

misrepresentation." *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 658-59 (2008).  The Eleventh Circuit has made clear that RICO civil claims require actual reliance on the alleged misstatement or omission by someone connected to plaintiff's transaction.  *See Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1351 (11th Cir. 2016).

Here, Plaintiff alleges that it relied on and was misled by statements made *by Woods* in deciding to invest in Horizon—*not* anything said or done by Oppenheimer. (Compl. ¶ 33.)  Plaintiff does not allege that it obtained, reviewed, or relied upon any statements by Oppenheimer.  Indeed, Plaintiff does not allege that it had any communication, interaction, or involvement with Oppenheimer relating to its transaction.  Thus, there is no causation.[12]

Plaintiff claims that Oppenheimer should have disclosed something more on the Form U5 (Compl. ¶ 103)—namely, that Woods was involved in "various undisclosed business activities" (*id.* ¶ 37) and a "selling away scheme" (*id.* ¶ 73).  But the Form U5 was submitted to FINRA, not Plaintiff, years before Plaintiff's investment with Woods.  Thus, even if an alleged violation of FINRA rules could form the basis for a RICO claim (and it cannot), this causation theory is wholly

---

[12]     *See Ray*, 836 F.3d at 1351 (dismissing RICO claim because "plaintiffs have not pled that they or anyone else relied on [defendant]'s alleged misrepresentations in purchasing their tickets—and, thus, have not shown that they were injured 'by reason of' a RICO violation"); *Vernon v. Assurance Forensic Acct., LLC*, 774 S.E.2d 197, 211 (Ga. App. 2015) (rejecting RICO claim because no reliance).

18

implausible and not direct. It would require the following speculative chain of events: (a) Oppenheimer should have disclosed something about Woods' outside business activities in the Form U5 submitted to FINRA; (b) if that information had been provided on the Form U5, FINRA would have made the information publicly available on a separate public form or database; (c) if that information were publicly available, Plaintiff would have consulted that separate form or database before investing with Woods more than two years later; and (d) if Plaintiff had done so, it would have chosen not to invest in Horizon because of that information, notwithstanding Woods' representations and assurances about the investment. That is not direct causation required for RICO. *See Anza*, 547 U.S. at 454, 458-59 (holding causal chain too attenuated at motion to dismiss stage that required defendant defrauding the state to gain pricing advantage over competitor).[13]

Proximate cause fails under Georgia RICO for another reason. There are no allegations that Oppenheimer targeted Plaintiff. *See Wylie v. Denton*, 746 S.E.2d 689, 694 (Ga. App. 2013) (plaintiff "must show that her injury was the direct result of a predicate act targeted toward her, such that she was the intended victim").

---

[13]    And if the theory is that FINRA would have taken action that ended Woods' fraud, that also is too indirect. *See, e.g.*, *Hemi Grp., LLC v. City of New York, N.Y.*, 559 U.S. 1, 11 (2010) (no proximate cause under RICO where defendant failed to file reports that allegedly would have allowed plaintiff authorities to catch tax evaders).

> **d.    The 16-14-4(a) RICO Claim Also Fails Because
> Oppenheimer Did Not Acquire Money Or Property.**

To state a claim under subsection (a), Plaintiff must allege that it was injured

by reason of Oppenheimer "acquiring money [or other property] through a pattern

of racketeering." *State of Ga. ex rel. Bowers for Use & Ben. of Camden Cty. Sch.*

*Dist. v. Dairymen, Inc.*, 813 F. Supp. 1580, 1586 (S.D. Ga. 1991).   There are no

allegations that Oppenheimer acquired any other property as a result of Woods'

fraudulent scheme.   Oppenheimer made no money from Plaintiff's investment, as

Woods had not been an Oppenheimer employee for years.   Plaintiff's subsection (a)

claim fails.   *See Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1221 (11th Cir. 2020)

(affirming dismissal of § 16-14-4(a) claim).

> **e.    The 16-14-4(b) RICO Claim Fails For The Additional
> Reason That There Are No Facts Showing That
> Oppenheimer Participated In An Enterprise.**

Plaintiff must plead facts to plausibly show that Oppenheimer participated in

a RICO enterprise—that is, "an ongoing organization, formal or informal," that was

functioning "as a continuing unit." *Serpentfoot v. Rome City Comm'n*, 2010 WL

11507239, at *14 (N.D. Ga. Mar. 3, 2010) (quoting *United States v. Turkette*, 452

U.S. 576, 583 (1981)). This requires well-pled facts showing at least "three

'structural features': (1) a 'purpose,' (2) 'relationships among those associated with

the enterprise,' and (3) 'longevity sufficient to permit these associates to pursue the

enterprise's purpose.'" *Almanza*, 851 F.3d at 1067 (quoting *Boyle v. United States*, 556 U.S. 938, 946 (2009)).

Here, there are no factual allegations showing that Oppenheimer participated in any enterprise with Woods or others with the common purpose of effectuating a Ponzi scheme. The Complaint makes clear that Oppenheimer was not part of any continuing enterprise when Plaintiff decided to invest with Woods in 2019, since Woods had long departed from Oppenheimer's employ. That alone is fatal.

Nor would it make sense for Oppenheimer to participate in a RICO enterprise with Woods. Woods allegedly defrauded his own clients, and Plaintiff does not allege that Oppenheimer benefited from Woods' scheme. When the legal conclusions are cast aside (as they must be), there are no facts pled that Oppenheimer shared any common purpose with Woods to target and defraud customers.[14]

### C. Plaintiff Fails To State A Claim For Conspiracy Or Procurement Of A Breach of Fiduciary Duty (Count III).

Count III is styled "Conspiracy and/or Procurement of Breach of Fiduciary Duty." (Compl. ¶¶ 80-86.) But the allegations underlying that count do not support or address any purported conspiracy—a claim that fails for the reasons stated above.

---

[14]   *See, e.g.*, *Ray*, 836 F.3d at 1353 (finding no enterprise between airline and its vendors because no plausible factual allegations that vendors acted "with the common purpose . . .[to] defraud Spirit customers").

Plaintiff also fails to meet the elements for a procurement of a breach of fiduciary duty, which requires facts showing that:

> (1) through improper action or wrongful conduct and without privilege, the defendant acted to procure a breach of the primary wrongdoer's fiduciary duty to the plaintiff; (2) with knowledge that the primary wrongdoer owed the plaintiff a fiduciary duty, the defendant acted purposely and with malice and the intent to injure; (3) the defendant's wrongful conduct procured a breach of the primary wrongdoer's fiduciary duty; and (4) the defendant's tortious conduct proximately caused damage to the plaintiff.

*Insight Tech., Inc. v. FreightCheck, LLC*, 633 S.E.2d 373, 379 (Ga. App. 2006). None of the elements are satisfied here.

Plaintiff invested with Woods in June 2019, years after Woods left Oppenheimer's employment. There are no allegations that Oppenheimer knew Plaintiff was dealing with Woods at all, let alone that it directed Woods to steal Plaintiff's money. Why would Oppenheimer do that? The theory makes no sense.

In addition, the element of procurement requires "giving advice, counsel, persuasion, or command" to solicit someone to commit a breach. *Curry v. TD Ameritrade, Inc.*, 2015 WL 11251449, at *15 (N.D. Ga. June 30, 2015) (internal quotation omitted). There are no plausible factual allegations that Oppenheimer advised, counseled, persuaded, or commanded Woods to steal Plaintiff's money.

22

### D.    <u>Plaintiff's Negligent Misrepresentation Claim Fails (Count IV).</u>

Plaintiff must plead facts showing:  "(1) the defendant's negligent supply of false information to foreseeable persons, known or unknown; (2) such persons' reasonable reliance upon that false information; and (3) economic injury proximately resulting from such reliance."  *Courtesy Props., LLC v. S&ME, Inc.*, 2020 WL 7698659, at *7 (N.D. Ga. Dec. 28, 2020) (Grimberg, J.) (quotations omitted). Plaintiff also must satisfy Rule 9(b)'s heightened pleading standard.  *Id.* (applying 9(b) to Georgia negligent misrepresentation claim); *Smith v. Ocwen Fin.*, 488 F. App'x 426, 428 (11th Cir. 2012) (same).

Plaintiff cannot meet these elements.  First, Plaintiff does not allege any misrepresentation by Oppenheimer.  Rather, Plaintiff merely alleges that Oppenheimer should have ***disclosed more*** in the Form U5—namely that Woods had been operating a separate business.  (Compl. ¶ 91.)  It is well-settled that a "defendant's alleged failure to disclose information . . . is not actionable as negligent misrepresentation absent proof of a false statement by the defendant."[15]  Nor can

---

[15]     *PHL Variable Ins. Co. v. Jolly*, 800 F. Supp. 2d 1205, 1214 (N.D. Ga. 2011), *aff'd sub nom.* 460 F. App'x 899 (11th Cir. 2012); *see also Intellicig USA, LLC v. CN Creative Ltd.*, 2017 WL 11634374, at *7 (N.D. Ga. Mar. 6, 2017) (applying rule and dismissing negligent misrepresentation claim); *Lilliston v. Regions Bank*, 244, 653 S.E.2d 306, 309 (Ga. App. 2007) ("Absent a confidential relationship, no duty to disclose exists between parties engaged in arms-length business transactions").

Plaintiff try to use state law claims to circumvent the Congressional decision not to provide a private cause of action to enforce FINRA rules.[16]

Second, even if this legal theory were viable (and it is not), Plaintiff fails to allege the "who, what, when, where, and how" of any purported misrepresentations by Oppenheimer.[17]  Plaintiff does not allege any circumstances about submission of the Form U5, why any particular information on that form was supposedly false, or how it influenced Plaintiff to invest with Woods.

Third, the negligent misrepresentation claim fails because Plaintiff does not allege that it obtained, reviewed, or justifiably relied on the Form U5 or any false or misleading statements by Oppenheimer when it decided to invest with Woods.[18] Plaintiff invested because of Woods' promises, not the Form U5.  (Compl. ¶ 33.)

Lastly, where the alleged misrepresentation was not made to the plaintiff, "under Georgia law it is necessary that the maker of the statement actually be aware that the [plaintiff] will rely on the information and that the [plaintiff's] 'reliance was

---

[16]     *See, e.g.*, *Luis*, 401 F. Supp. 3d at 832 (applying rule); *Hauptman v. Interactive Brokers, LLC*, 2018 WL 4278345, at *7 (S.D.N.Y. June 12, 2018) (same).

[17]     *Purchasing Power, LLC v. Bluestem Brands, Inc.*, 2012 WL 3065419, at *7 (N.D. Ga. July 27, 2012) (internal quotation and citation omitted)).

[18]     *See Next Century Commc'ns Corp. v. Ellis*, 214 F. Supp. 2d 1366, 1370 (N.D. Ga. July 30, 2002) ("failure to plead justifiable reliance requires dismissal of Plaintiff's fraud and negligent misrepresentation claims"), *aff'd,* 318 F.3d 1023 (11th Cir. 2003); *Moore v. Lovein Funeral Home*, 852 S.E.2d 876, 884 (Ga. App. 2020) (claims failed because no showing plaintiff "relied on a misrepresentation").

24

the desired result of the misrepresentation.'"[19]  Here, Plaintiff does not allege that Oppenheimer submitted the Form U5 to FINRA with the desire to induce Plaintiff, or anyone else, to invest with Woods three years later.  *See Travelers Cas. & Sur. Co. of Am. v. Reznick Grp.*, P.C., 271 F. App'x 833, 835 (11th Cir. 2008).

### E.    Plaintiff's Aiding And Abetting Fraud Claim Fails (Count V).

There is no cause of action for "aiding and abetting fraud." *Siavage v. Gandy*, 829 S.E.2d 787, 790 (Ga. App. 2019).  Even if recast as a claim for fraud, it would fail for the same reasons as the negligent misrepresentation claim, including no affirmative misstatement, failure to satisfy Rule 9(b), and no reliance or causation.[20]

### F.    Plaintiff's Request for Punitive Damages/Attorneys' Fees Must Be Stricken (Counts VII and VIII).

Because the underlying claims fail, Plaintiff's request for punitive damages and attorneys' fees must be dismissed.  *Courtesy Props.*, 2020 WL 7698659, at *6 n.45 (applying rule) (Grimberg, J.).

### IV.    CONCLUSION

The Court should dismiss all claims against Oppenheimer.

---

[19]    *New York Life Ins. Co. v. Grant*, 57 F. Supp. 3d 1401, 1412 (M.D. Ga. 2014) (internal quotation omitted); *Wingate Land, LLC v. ValueFirst, Inc.*, 722 S.E.2d 868, 870 (Ga. App. 2012) (applying rule).

[20]    *See Stroman v. Bank of Am. Corp.*, 852 F. Supp. 2d 1366, 1381 (N.D. Ga. 2012) (dismissing fraud claim because no "specific reference to any affirmative misrepresentations" and no non-conclusory allegations or reliance).

Respectfully submitted this 22nd day of November, 2021.

| | |
|---|---|
| J. Gordon Cooney, Jr. | */s/ Frank M. Lowrey IV* |
| *Pro hac vice motion forthcoming* | Frank M. Lowrey IV |
| **Morgan, Lewis & Bockius LLP** | Georgia Bar No. 410310 |
| 1701 Market St. | **Bondurant Mixson & Elmore, LLP** |
| Philadelphia, PA 19103-2921 | 1201 West Peachtree St NW |
| (213) 612-2500 (Telephone) | Suite 3900 |
| (213) 612-2501 (Facsimile) | Atlanta, GA  30309 |
| gordon.cooney@morganlewis.com | (404) 881-4100 (Telephone) |
| | (404) 881-4111 (Facsimile) |
| | lowrey@bmelaw.com |

Brian M. Ercole
*Pro hac vice motion forthcoming*
Matthew M. Papkin
*Pro hac vice motion forthcoming*
Melissa M. Coates
*Pro hac vice motion forthcoming*
**Morgan, Lewis & Bockius LLP**
600 Brickell Avenue, Suite 1600
Miami, FL 33131-3075
(305) 415-3000 (Telephone)
(305) 415-3001 (Facsimile)
brian.ercole@morganlewis.com
matthew.papkin@morganlewis.com
melissa.coates@morganlewis.com

*Counsel for Defendant Oppenheimer & Co., Inc.*

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that the foregoing brief has been prepared in accordance with Local Rule 5.1, including preparation in Times New Roman 14-point font, one of the font and point selections approved by the Court in Local Rule 5.1(C).

This 22nd day of November, 2021.

*/s/ Frank M. Lowrey IV*
Frank M. Lowrey IV
Georgia Bar No. 410310

## <u>CERTIFICATE OF SERVICE</u>

I certify that I caused a true and correct copy of the foregoing to be filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all parties to this matter via electronic notification or otherwise.

This 22nd day of November, 2021.

<u>*/s/ Frank M. Lowrey IV*</u>
Frank M. Lowrey IV
Georgia Bar No. 410310