## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

6694 Dawson Blvd, LLC, individually )
on behalf of a class of similarly )
situated persons, )
           )
           Plaintiffs, )        Civil Action No:
           )        **1:21-cv-03625-SDG**
         v. )
           )
Oppenheimer & Co., Inc., James )
Wallace Woods, Michael J. Mooney, )
Britt Wright, William V. Conn, Jr., )
Conn & Co. Tax Practice, LLC, )
Conn & Company Consulting, LLC, and )
Kathleen Lloyd, )
           )
           Defendants. )

## DEFENDANT KATHLEEN LLOYD'S
## <u>AMENDED ANSWER AND AFFIRMATIVE DEFENSES</u>

Pursuant to Fed. R. Civ. P. 15(a)(1)(A), Defendant Kathleen Lloyd hereby

submits her amended answers to the paragraphs of Plaintiff's Complaint, and

amended affirmative defenses.

## <u>ALLEGED BACKGROUND TO THE DISPUTE</u>

Most of the unnumbered factual allegations in the "Background of the

Dispute" section of the Complaint are not directed to Ms. Lloyd.  To the extent that

a response is nevertheless required with respect to those allegations directed to

others, Ms. Lloyd denies those allegations.

With respect to the allegations in the "Background of the Dispute" section

of the Complaint that are directed to Ms. Lloyd, or to "the Defendants" collectively

(thereby including Ms. Lloyd), Ms. Lloyd denies those allegations.

## PARTIES, JURISDICTION AND VENUE

**COMPLAINT PARAGRAPH 1:** Plaintiff 6694 Dawson Blvd, LLC is a Georgia
limited liability company. Its members are residents of the State of Georgia.

**RESPONSE:**      Ms. Lloyd lacks knowledge and information sufficient to form

a belief as to the truth or not of the allegations in this Complaint paragraph.  To the

extent that a response is nevertheless required, Ms. Lloyd denies the allegations in

this Complaint paragraph.

**COMPLAINT PARAGRAPH 2:** Defendant Oppenheimer & Co., Inc., which
describes itself as "a leading global full-service brokerage and investment bank,"
operates from a regional branch office at 3414 Peachtree Road, Atlanta, Georgia,
30326. Oppenheimer is a subsidiary of Oppenheimer Holdings, Inc., a publicly
traded company listed on the New York Stock Exchange (NYSE "OPY").

**RESPONSE:**      Ms. Lloyd lacks knowledge and information sufficient to form

a belief as to the truth or not of the allegations in this Complaint paragraph.  To the

extent that a response is nevertheless required, Ms. Lloyd denies the allegations in this Complaint paragraph.

**COMPLAINT PARAGRAPH 3:** Defendant James Wallace Woods is a resident of Marietta, Cobb County, Georgia.

**RESPONSE:**      Ms. Lloyd lacks knowledge and information sufficient to form a belief as to the truth or not of the allegations in this Complaint paragraph.  To the extent that a response is nevertheless  required, Ms. Lloyd denies the allegations in this Complaint paragraph.

**COMPLAINT PARAGRAPH 4:** Defendant Michael J. Mooney is a resident of Woodstock, Cherokee County, Georgia.

**RESPONSE:**      Ms. Lloyd lacks knowledge and information sufficient to form a belief as to the truth or not of the allegations in this Complaint paragraph.  To the extent that a response is nevertheless required, Ms. Lloyd denies the allegations in this Complaint paragraph.

**COMPLAINT PARAGRAPH 5:** Defendant Britt Wright is a resident of Pfafftown, Forsyth County, North Carolina.

**RESPONSE:**      Ms. Lloyd lacks knowledge and information sufficient to form a belief as to the truth or not of the allegations in this Complaint paragraph.  To the

extent that a response is nevertheless required, Ms. Lloyd denies the allegations in

this Complaint paragraph.

**COMPLAINT PARAGRAPH 6:** Defendant William V. Conn, Jr. is a resident of
Sandy Springs, Fulton County, Georgia.

**RESPONSE:**       Ms. Lloyd lacks knowledge and information sufficient to form

a belief as to the truth or not of the allegations in this Complaint paragraph.  To the

extent that a response is nevertheless required, Ms. Lloyd denies the allegations in

this Complaint paragraph.

**COMPLAINT PARAGRAPH 7:** Defendant Conn & Co. Tax Practice, LLC is a
Georgia limited liability company with its principal place of business at 800 Mt.
Vernon Highway, Suite 380, Atlanta, Fulton County, Georgia.

**RESPONSE:**       Ms. Lloyd lacks knowledge and information sufficient to form

a belief as to the truth or not of the allegations in this Complaint paragraph.  To the

extent that a response is nevertheless required, Ms. Lloyd denies the allegations in

this Complaint paragraph.

**COMPLAINT PARAGRAPH 8:** Defendant Conn & Company Consulting, LLC
is a Georgia limited liability company with its principal place of business at 800
Mt. Vernon Highway, Suite 380, Atlanta, Fulton County, Georgia.

**RESPONSE:**       Ms. Lloyd lacks knowledge and information sufficient to form

a belief as to the truth or not of the allegations in this Complaint paragraph.  To the

extent that a response is nevertheless required, Ms. Lloyd denies the allegations in

this Complaint paragraph.

**COMPLAINT PARAGRAPH 9:** Defendant Kathleen Lloyd is a resident of Cumming, Forsyth County, Georgia.

**RESPONSE:**        Admitted.

**COMPLAINT PARAGRAPH 10:** This Court has original jurisdiction over this class action under 28 U.S.C. § 1332(d)(2)(a), (d)(5)(b), (d)(6) because (i) members of the class of plaintiffs are citizens of States different than the Defendants; (ii) there are 100 or more class members; and (iii) there is an aggregate amount in controversy of at least $5,000,000, exclusive of interest and costs.

**RESPONSE:**        Ms. Lloyd lacks knowledge and information sufficient to form

a belief as to the truth or not of the allegations in this Complaint paragraph.  To the

extent that a response is nevertheless required, Ms. Lloyd denies the allegations in

this Complaint paragraph.

**COMPLAINT PARAGRAPH 11:**  Venue is proper in this Court because Defendants conduct business in this District and a substantial part of the events giving rise to the claim occurred in this District.

**RESPONSE:**        Ms. Lloyd admits that she currently conducts business in this

jurisdiction, but denies that she currently conducts business for any of the

Defendants in this jurisdiction or elsewhere.

Ms. Lloyd lacks knowledge and information sufficient to form a belief as to

the truth or not of the remaining allegations in this Complaint paragraph.  To the

extent that a response is nevertheless required, Ms. Lloyd denies the allegations in

this Complaint paragraph.

## CLASS ACTION ALLEGATIONS

**COMPLAINT PARAGRAPH 12:** This action is brought and may properly
proceed as a class action, pursuant to the provisions of Fed. R. Civ. P. 23.

**RESPONSE:**     The allegations in this Complaint paragraph call for legal

conclusions for which no response is required.  To the extent that a response is

nevertheless required, Ms. Lloyd denies the allegations in this Complaint

paragraph.


**COMPLAINT PARAGRAPH 13:** Plaintiff brings this case on behalf of a class
composed of all investors in Horizon Private Equity from 2008 through present,
excluding Defendants and Horizon's related parties. As to Oppenheimer, the class
is composed of all investors in Horizon Private Equity from 2008 through present,
excluding Defendants and Horizon's related parties, that are not subject to
mandatory FINRA arbitration.

**RESPONSE:**     Ms. Lloyd lacks knowledge and information sufficient to form

a belief as to the truth or not of the allegations in this Complaint paragraph.  To the

extent that a response is nevertheless required, Ms. Lloyd denies the allegations in

this Complaint paragraph.


**COMPLAINT PARAGRAPH 14:** This action is properly maintainable as a class
action. Publicly filed records indicate that the class consists of at least 400
individuals and/or entities who invested in Horizon, minus the Defendants and

related parties. Class members are so numerous that their individual joinder is impracticable. A class action is superior to other available means for a fair and efficient adjudication of this controversy. Absent a class action, the costs and risks of litigating individual claims against Defendants would ensure that, as a practical matter, most or all class members will be unable to enforce their contractual and other rights.

**RESPONSE:** The allegations in the first sentence of this Complaint paragraph call for legal conclusions for which no response is required. Further, Ms. Lloyd lacks knowledge and information sufficient to form a belief as to the truth or not of the factual allegations in this Complaint paragraph. To the extent that a response is nevertheless required, Ms. Lloyd denies the allegations in this Complaint paragraph.

**COMPLAINT PARAGRAPH 15:** This action does not present difficulties in management that would preclude class treatment. The Defendants' breaches of duties, acts constituting the procurement of breach of duties, negligence, and acts giving rise to violations of Georgia RICO are identical for all class members. Further, there is no particularized knowledge or other elements that would require individual testimony from all of the class members.

**RESPONSE:** The allegations in this Complaint paragraph call for legal conclusions for which no response is required. Further, Ms. Lloyd lacks knowledge and information sufficient to form a belief as to the truth or not of the factual allegations in this Complaint paragraph. To the extent that a response is nevertheless required, Ms. Lloyd denies the allegations in this Complaint paragraph.

**COMPLAINT PARAGRAPH 16:** Rule 23(a)(2) and Rule 23(b)(3) are both satisfied because there are questions of law and fact which are common to the class and which predominate over questions affecting any individual class member. The common questions include the following:

(a) whether the Defendants' actions procured breaches of fiduciary duty by Woods and other investment advisers involved in the sale of Horizon Private Equity investments to the class;

(b) whether the Defendants' actions constitute negligence and/or breach of a duty to the class; and

(c) whether the Defendants' acts give rise to liability under the Georgia RICO statute; and, if so, whether the class members have suffered injury and damages by reason of Defendants' breaches.

**RESPONSE:**       The allegations in this Complaint paragraph call for legal conclusions for which no response is required.  To the extent that a response is nevertheless required, Ms. Lloyd denies the allegations in this Complaint paragraph.

**COMPLAINT PARAGRAPH 17:** The questions of law and fact that are common to the class, including those set forth above, predominate over any questions affecting only individual members.  Plaintiff's claims and the claims of members of the Class all derive from a common nucleus of operative fact. The common questions include the following:

(a) whether the Defendants' actions procured breaches of fiduciary duty by Woods and other investment advisers involved in the sale of Horizon Private Equity investments to the class;

(b) whether the Defendants' actions constitute negligence and/or breach of a duty to the class;

(c) whether the Defendants' acts give rise to liability under the Georgia

RICO statute; and, if so,

(d) whether the class members have suffered injury and damages by reason of Defendants' breaches.

**RESPONSE:**      The allegations in this Complaint paragraph call for legal

conclusions for which no response is required.  To the extent that a response is

nevertheless required, Ms. Lloyd denies the allegations in this Complaint

paragraph.

**COMPLAINT PARAGRAPH 18:** The named plaintiff will fairly and adequately protect and represent the interests of the class because it has suffered injuries typical of those suffered by other class members, is committed to obtaining just relief for all class members, and has retained counsel experienced in class action litigation to represent the class.

**RESPONSE:**      The allegations in this Complaint paragraph call for legal

conclusions for which no response is required. Further, Ms. Lloyd lacks knowledge

and information sufficient to form a belief as to the truth or not of the factual

allegations in this Complaint paragraph. To the extent that a response is

nevertheless required, Ms. Lloyd denies the allegations in this Complaint

paragraph.

**COMPLAINT PARAGRAPH 19:** Furthermore, the prosecution of separate actions by individual members of the class would create the risk of inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for Defendants, or adjudications with respect to individual members of the class which would as a practical matter be

dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

**RESPONSE:** The allegations in this Complaint paragraph call for legal conclusions for which no response is required. Further,  Ms. Lloyd lacks knowledge and information sufficient to form a belief as to the truth or not of the factual allegations in this Complaint paragraph. To the extent that a response is nevertheless required, Ms. Lloyd denies the allegations in this Complaint paragraph.

**COMPLAINT PARAGRAPH 20:** Individual litigation of the legal and factual issues raised by the conduct of Defendants would increase delay and expense to all parties and to the court system. The class action device presents far fewer management difficulties and provides the benefits of a single, uniform adjudication, economies of scale and comprehensive supervision by a single court. Given the identical nature of class members' claims, and the absence of material differences in the state and common laws upon which class members' claims are based, a class will be easily managed by the Court and the parties.

**RESPONSE:** The allegations in this Complaint paragraph call for legal conclusions for which no response is required.  To the extent that a response is nevertheless required, Ms. Lloyd denies the allegations in this Complaint paragraph.

## THE ALLEGED HORIZON PRIVATE EQUITY PONZI SCHEME

**COMPLAINT PARAGRAPH 21:**  Plaintiff and the class members are victims of a massive $110,000,000 Ponzi scheme that was conceived, founded, and operated

by investment advisers in Oppenheimer's Atlanta, Georgia branch office located at 3414 Peachtree Road, Atlanta, Georgia, 30326.

**RESPONSE:** Ms. Lloyd lacks knowledge and information sufficient to form a belief as to the truth or not of the allegations in this Complaint paragraph. To the extent that a response is nevertheless required, Ms. Lloyd denies the allegations in this Complaint paragraph.

**COMPLAINT PARAGRAPH 22:** The architect and mastermind of the Ponzi scheme, Woods, was registered as an investment adviser at Oppenheimer at all times from January 2003 through December 31, 2016.

**RESPONSE:** Ms. Lloyd lacks knowledge and information sufficient to form a belief as to the truth or not of the allegations in this Complaint paragraph. To the extent that a response is nevertheless required, Ms. Lloyd denies the allegations in this Complaint paragraph.

**COMPLAINT PARAGRAPH 23:** In 2008, while serving as an investment adviser at Oppenheimer, Woods founded "Horizon Private Equity, III, LLC" and began marketing "Horizon Private Equity" to his Oppenheimer customers and the investing public.

**RESPONSE:** Ms. Lloyd lacks knowledge and information sufficient to form a belief as to the truth or not of the allegations in this Complaint paragraph. To the extent that a response is nevertheless required, Ms. Lloyd denies the allegations in this Complaint paragraph.

**COMPLAINT PARAGRAPH 24:** Woods made no effort to hide his involvement in the Horizon Private Equity Ponzi scheme from Oppenheimer's management --

going so far as to rent office pace for his "selling away" scheme next door to Oppenheimer's branch office at 3414 Peachtree Road, Atlanta, Georgia, 30326. Woods and other Horizon Private Equity fundraisers walked freely between the two offices and mingled on a daily basis with the Oppenheimer branch manager charged with supervising Woods.

**RESPONSE:**       Ms. Lloyd lacks knowledge and information sufficient to form

a belief as to the truth or not of the allegations in this Complaint paragraph.  To the

extent that a response is nevertheless required, Ms. Lloyd denies the allegations in

this Complaint paragraph.

**COMPLAINT PARAGRAPH 25:**   From 2008 through December 31, 2016, Oppenheimer's management turned a blind eye while Woods, his brother, Jim Woods, and his cousin, Mooney (all of whom were investment advisers in Oppenheimer's Atlanta branch office) funneled investor money into the Horizon Private Equity Ponzi scheme while working from Oppenheimer's Atlanta branch office.

**RESPONSE:**       Ms. Lloyd lacks knowledge and information sufficient to form

a belief as to the truth or not of the allegations in this Complaint paragraph.  To the

extent that a response is nevertheless required, Ms. Lloyd denies the allegations in

this Complaint paragraph.

**COMPLAINT PARAGRAPH 26:**  In December 2016, with full knowledge that Woods was operating a secret, illegal "private equity fund," Oppenheimer actively concealed the Ponzi scheme from the regulators and investing public by permitting Woods to quietly resign from Oppenheimer without reporting the wrongdoing to regulators and the investing public, as required by law. Oppenheimer did so to protect itself from the substantial liability it knew it would face if it disclosed the selling away scheme.

**RESPONSE:**         Ms. Lloyd lacks knowledge and information sufficient to form

a belief as to the truth or not of the allegations in this Complaint paragraph.  To the

extent that a response is nevertheless required, Ms. Lloyd denies the allegations in

this Complaint paragraph.

**COMPLAINT PARAGRAPH 27:**  For nearly five more years, the Horizon
Private Equity Ponzi scheme, which was conceived, founded, and operated by
employees in Oppenheimer's Atlanta, Georgia branch office, continued raising
money from unsuspecting investors.

**RESPONSE:**         Ms. Lloyd lacks knowledge and information sufficient to form

a belief as to the truth or not of the allegations in this Complaint paragraph.  To the

extent that a response is nevertheless required, Ms. Lloyd denies the allegations in

this Complaint paragraph.

**COMPLAINT PARAGRAPH 28:**  On August 20, 2021, the United States
Securities & Exchange Commission ("SEC") brought a civil action against Woods,
Southport Capital, and HPE III for violations of federal securities fraud and moved
for emergency relief including an asset freeze, appointment of receivership, and a
full accounting.

**RESPONSE:**         Ms. Lloyd lacks knowledge and information sufficient to form

a belief as to the truth or not of the allegations-upon-allegations in this Complaint

paragraph.  To the extent that a response is nevertheless required, Ms. Lloyd denies

the allegations in this Complaint paragraph.

**COMPLAINT PARAGRAPH 29:**  The SEC's Complaint, based on sworn
affidavits from FBI agents and insiders, a review of bank statements, and
interviews with investors in the Ponzi scheme, alleges that "John Woods has been

running a massive Ponzi scheme for over a decade" and that "[a]s of the end of July 2021, investors in the Ponzi scheme were owed over $110,000,000 in principal."

**RESPONSE:**      Ms. Lloyd lacks knowledge and information sufficient to form

a belief as to the truth or not of the allegations-upon-allegations in this Complaint

paragraph.  To the extent that a response is nevertheless required, Ms. Lloyd denies

the allegations in this Complaint paragraph.

**COMPLAINT PARAGRAPH 30:** The SEC further alleged that "many of the victims are elderly retirees who were preyed upon" by Woods and other advisers, who falsely and fraudulently represented to them that "they would receive returns of 6-7% interest, guaranteed for two to three years" and that their money would be invested in "government bonds, stocks, or small real estate projects." In reality, the Ponzi scheme had not made any significant profits from legitimate investments and "instead a very large  percentage of purported 'returns' to earlier investors were simply paid out of new investor money."

**RESPONSE:**      Ms. Lloyd lacks knowledge and information sufficient to form

a belief as to the truth or not of the allegations-upon-allegations in this Complaint

paragraph.  To the extent that a response is nevertheless required, Ms. Lloyd denies

the allegations in this Complaint paragraph.

**COMPLAINT PARAGRAPH 31:**  The SEC analyzed in detail Horizon Private Equity's investments and transactions from January 1, 2019 to the present and concluded that "as of the end of July 2021, Horizon had  sets worth less than $16 million" and "owed investors more than $110 million in principal."

**RESPONSE:**      Ms. Lloyd lacks knowledge and information sufficient to form

a belief as to the truth or not of the allegations-upon-allegations in this Complaint

paragraph.  To the extent that a response is nevertheless required, Ms. Lloyd denies

the allegations in this Complaint paragraph.

## PLAINTIFF'S ALLEGED INVESTMENT IN
## THE ALLEGED HORIZON PRIVATE EQUITY PONZI SCHEME

**COMPLAINT PARAGRAPH 32:** Plaintiff 6694 Dawson Blvd, LLC is an entity
owned by Mike Hall. On or about June 1, 2019, Mike Hall invested $200,000 in
"Horizon Private Equity" through 6694 Dawson Blvd, LLC.

**RESPONSE:**        Ms. Lloyd lacks knowledge and information sufficient to form

a belief as to the truth or not of the allegations in this Complaint paragraph.  To the

extent that a response is nevertheless required, Ms. Lloyd denies the allegations in

this Complaint paragraph.

**COMPLAINT PARAGRAPH 33:**  As with all the other class members, Hall was
assured by Woods that the investment was guaranteed, that he would be paid a
steady rate of interest, and that he could redeem his investment at any time with
notice.

**RESPONSE:**        Ms. Lloyd lacks knowledge and information sufficient to form

a belief as to the truth or not of the allegations in this Complaint paragraph.  To the

extent that a response is nevertheless required, Ms. Lloyd denies the allegations in

this Complaint paragraph.

## OPPENHEIMER'S ALLEGED INVOLVEMENT IN
## THE ALLEGED HORIZON PRIVATE EQUITY PONZI SCHEME

**COMPLAINT PARAGRAPH 34:**  Oppenheimer knew that Woods was involved in the Horizon Private Equity Ponzi scheme and took no effort to stop him. To the contrary, Oppenheimer took active steps to conceal his wrongdoing from regulators and investors and ensured the survival of the Horizon Private Equity Ponzi scheme.

**RESPONSE:**      Ms. Lloyd lacks knowledge and information sufficient to form a belief as to the truth or not of the allegations in this Complaint paragraph.  To the extent that a response is nevertheless required, Ms. Lloyd denies the allegations in this Complaint paragraph.

**COMPLAINT PARAGRAPH 35:**  Securities firms, including Oppenheimer, operate under a duty to reasonably supervise their advisers so as to, among other things, (1) prevent and detect "selling away schemes" (i.e., the sale of securities not approved for sale by the firm); (2)  prevent and detect the use of unapproved and unmonitored email accounts; (3) detect and supervise any undisclosed outside business activities in which its advisers are involved; (4) detect and prevent their advisers from committing fraud; (5) supervise and monitor transfers of investor money to third parties; and (6) truthfully and accurately report the reasons for any termination or resignation of its advisers on FINRA Form U5.

**RESPONSE:**      Ms. Lloyd lacks knowledge and information sufficient to form a belief as to the truth or not of the allegations in this Complaint paragraph.  To the extent that a response is nevertheless required, Ms. Lloyd denies the allegations in this Complaint paragraph.

**COMPLAINT PARAGRAPH 36:** Oppenheimer is required to devote substantial resources dedicated to compliance and supervisory systems and personnel, whose job is to identify potential red flags and respond to them, based on their review of public databases, regular audits, reviews of all correspondence including their employees' emails.

**RESPONSE:**      Ms. Lloyd lacks knowledge and information sufficient to form

a belief as to the truth or not of the allegations in this Complaint paragraph.  To the

extent that a response is nevertheless required, Ms. Lloyd denies the allegations in

this Complaint paragraph.

**COMPLAINT PARAGRAPH 37:**  Oppenheimer facilitated the Horizon Private
Equity Ponzi scheme by taking the following actions and/or failing to take the
following actions described below:

- From 2008-December 2016, Oppenheimer failed to review and identify
  various outside business activities which were easily discoverable from a
  review of Georgia corporations which can be searched on the Secretary of
  State's website. For instance, Woods incorporated Horizon Private Equity,
  LLC as a Georgia entity on September 20, 2007. The initial filing lists
  Woods as the company's initial Registered Agent. Woods was identified as
  the company's Registered Agent in the company's 2007 and 2008 annual
  registrations.
- On or about September 2008, the Probascos family sold Southport Capital.
  Woods was quoted in an article that ran in the "Chattanoogan.com" on
  September 28, 2008 entitled "*John Woods Acquires Southport Capital from
  Probascos.*" The article, which ran while Woods was a broker at
  Oppenheimer, read "John Woods, businessman, philanthropist and
  children's sports development enthusiast, has acquired Southport Capital"
  from the Probascos family. The article noted that "Jim Woods, brother of
  John Woods, will be the chief investment strategist for Southport Capital."
  There is no indication that Oppenheimer took any steps to supervise the
  activities of Southport Capital, an investment advisory they knew to be
  owned by one of their own advisers.
- In or around 2007, Oppenheimer became aware that investors had accused
  Woods of fraud in connection with undisclosed outside business activities --
  while he was registered as an investment adviser at Oppenheimer. The
  lawsuit detailed not only that Woods ran a web of outside businesses but that
  he was heavily indebted in connection with the failed ventures -- a huge red
  flag for an investment adviser charged with safeguarding investor money.

The publicly available lawsuit, styled *Lisa and Harry Walsh v. John Woods, Sports Science CH, Inc., Honeycutt Sports LLC, Sports Science Cool Springs, LLC and E Sports LLC*, Case No. 2007-cv-135987, Superior Court of Fulton County, Georgia, referenced Woods' web of companies in the fitness industry as well as the existence of a $6,000,000 loan "personal to John Woods" used to purchase one of the companies. The allegations against Woods included, for instance, "that Defendant Woods promised them a 12% return on their investment, overstated the financials of the companies before they invested, and misrepresented the financials of Honeycutt" and moved investor money into his personal bank accounts.

- In March 2015, another lawsuit, styled *Kenneth Himmler v. Livingston Group Asset Management, Inc. d/b/a Southport Capital, Inc., Horizon Private Equity, LLC, James Wallace Woods, John J. Woods, Michael Mooney, and John Does 1 through 10*, Case No. 15-cv-00497, in the United States District Court for the District of Nevada, was filed against Woods while Woods was still working as an investment adviser in Oppenheimer's Atlanta branch office. The *Himmler* lawsuit expressly detailed Woods' personal involvement in the Horizon Private Equity Ponzi scheme. The lawsuit, in which Horizon Private Equity and Woods were named, alleged among other things, that:

"Plaintiff is informed and believes that "HPE [Horizon Private Equity]" has a controlling interest in Southport"; "Plaintiff is informed and believes that [Michael] Mooney [who worked at Southport then and now] is Chairman of the Board of Directors for Horizon Private Equity"; "Plaintiff is informed and believes that Jim Woods, John Woods, and Michael Mooney control both Southport and HPE and used them as their alter egos or mere instrumentalities";

that in early 2014, Plaintiff entered into negotiations with Woods and Mooney resulting in the sale of his financial planning practice to Horizon Private Equity; and that he sold his financial planning practice to Horizon Private Equity. Emails attached to the Complaint, which were publicly available at the time, show communications between Woods and the plaintiff discussing the terms of this deal whereby Horizon Private Equity would purchase his financial planning book of business on behalf of Southport Capital. Woods, who was registered with Oppenheimer at the time, was

utilizing a private email address "johnwoods@mindspring.com" for these
communications. Oppenheimer would have detected and stopped the fraud
in 2015 had they taken steps to review the private email account used by
Woods publicly identified in the *Himmler* lawsuit.

- Woods leased the office space on the same floor directly adjacent to
  Oppenheimer's Atlanta branch office in the Monarch Plaza tower for
  Southport Capital's Atlanta branch office through which he and others sold
  interests in Horizon Private Equity. This allowed Woods to physically move
  between Oppenheimer and his selling away scheme during Oppenheimer
  business hours. There does not appear to have been any attempt to hide this
  fact. During the time period that they shared offices, the doors to the left had
  Oppenheimer's name and logo on the door. The doors to the right had the
  Southport Capital name and its familiar lighthouse logo on the door. During
  trading hours while registered at Oppenheimer, Woods would frequently
  walk back and forth between the Oppenheimer and Southport Capital
  offices. This practice, which took place for several years before  Southport
  Capital moved its office, was well known to all employees in the  office,
  including the Oppenheimer Atlanta branch manager at the time, William
  Atkinson Lobb, II (CRD #848408).

  Jim Woods wasn't the only Oppenheimer broker to move "next door" to
  Horizon/Southport Capital. In 2010, Mooney, who is related to Woods and
  Jim Woods and worked with the Woods at Oppenheimer, left Oppenheimer
  to join Southport Capital. Mooney is still registered as an Investment
  Advisor Representative at Southport Capital. His Form ADV states that he
  "served as a third-party solicitor for the Horizon Private Equity funds from
  2009 through the end of 2016."

- Woods made investor presentations in the Oppenheimer Atlanta branch
  office to investors using presentations on Oppenheimer letterhead to convey
  the impression that the Horizon Private Equity Ponzi scheme was an
  investment offered through Oppenheimer.

- From 2008-present, Oppenheimer facilitated the transfer of millions of
  dollars in customer funds to Horizon Private Equity. Oppenheimer

completely failed in its duty to monitor and supervise liquidations of client investments and subsequent transfers to Horizon Private Equity.

- On or about December 2016, after learning about Woods' involvement in various undisclosed business activities, including the Horizon Private Equity Ponzi scheme, Oppenheimer permitted Woods to resign from their firm. Even so, Oppenheimer had a duty to complete the Form U5 and notify FINRA and the investing public that he had been permitted to resign after they detected his involvement in wrongdoing. Instead, Oppenheimer intentionally hid the fact that they had detected the wrongdoing. From 2017-present, Oppenheimer failed to amend the Form U5 to accurately state the reasons for his resignation. From 2017-present, Woods' public "Investment Adviser Public Disclosure" made it appear to the investing public that Woods resigned from Oppenheimer on good terms and that Oppenheimer had not discovered any wrongdoing prior to his resignation.

**RESPONSE:**      Ms. Lloyd lacks knowledge and information sufficient to form a belief as to the truth or not of the allegations in this Complaint paragraph.  To the extent that a response is nevertheless required, Ms. Lloyd denies the allegations in this Complaint paragraph.

**COMPLAINT PARAGRAPH 38:**  From 2008-2014, when this scheme was in place, Oppenheimer's President was Robert Okin.

**RESPONSE:**      Ms. Lloyd lacks knowledge and information sufficient to form a belief as to the truth or not of the allegations in this Complaint paragraph.  To the extent that a response is nevertheless required, Ms. Lloyd denies the allegations in this Complaint paragraph.

**COMPLAINT PARAGRAPH 39:** Robert Okin was the Head of Oppenheimer's "Private Client Division" during this relevant time period and was responsible for supervising Oppenheimer's advisers.

**RESPONSE:**     Ms. Lloyd lacks knowledge and information sufficient to form

a belief as to the truth or not of the allegations in this Complaint paragraph.  To the

extent that a response is nevertheless required, Ms. Lloyd denies the allegations in

this Complaint paragraph.

**COMPLAINT PARAGRAPH 40:** Okin was barred from the securities industry by the SEC for failing to supervise other Oppenheimer brokers who were perpetrating fraud on other Oppenheimer customers in connection with the sale of 2.5 billion penny stock shares in illegal unregistered transactions. Oppenheimer's actions in this case resulted from its well-documented and cited failure to supervise its advisers during this time period.

**RESPONSE:**     Ms. Lloyd lacks knowledge and information sufficient to form

a belief as to the truth or not of the allegations in this Complaint paragraph.  To the

extent that a response is nevertheless required, Ms. Lloyd denies the allegations in

this Complaint paragraph.

## THE ADVISER DEFENDANTS' ALLEGED INVOLVEMENT IN THE ALLEGED HORIZON PRIVATE EQUITY PONZI SCHEME

**COMPLAINT PARAGRAPH 41:** The success of Woods' Ponzi scheme also relied from the outset in 2008 all the way through the present to the active involvement of the Adviser Defendants.

**RESPONSE:**       Ms. Lloyd lacks knowledge and information sufficient to form

a belief as to the truth or not of the allegations in this Complaint paragraph.  To the

extent that a response is nevertheless required, Ms. Lloyd denies the allegations in

this Complaint paragraph.

**COMPLAINT PARAGRAPH 42:** Each of the Adviser Defendants were, at all
times, registered as Investment Adviser Representatives with the SEC.

**RESPONSE:**       Ms. Lloyd lacks knowledge and information sufficient to form

a belief as to the truth or not of the allegations in this Complaint paragraph.  To the

extent that a response is nevertheless required, Ms. Lloyd denies the allegations in

this Complaint paragraph.

**COMPLAINT PARAGRAPH 43:** From 2008-present, each of the Adviser
Defendants marketed and sold the Horizon Private Equity Ponzi scheme to their
securities customers.

**RESPONSE:**       Ms. Lloyd lacks knowledge and information sufficient to form

a belief as to the truth or not of the allegations in this Complaint paragraph.  To the

extent that a response is nevertheless required, Ms. Lloyd denies the allegations in

this Complaint paragraph.

**COMPLAINT PARAGRAPH 44:** The Adviser Defendants knew that the
Horizon Private Equity security was not registered with the SEC.

**RESPONSE:**       Ms. Lloyd lacks knowledge and information sufficient to form

a belief as to the truth or not of the allegations in this Complaint paragraph.  To the

extent that a response is nevertheless required, Ms. Lloyd denies the allegations in

this Complaint paragraph.

**COMPLAINT PARAGRAPH 45:** The Adviser Defendants took active steps to
conceal their involvement in the Horizon Private Equity Ponzi scheme by failing to
disclose their sale of the security as an outside business activity to the SEC.

**RESPONSE:**        Ms. Lloyd lacks knowledge and information sufficient to form

a belief as to the truth or not of the allegations in this Complaint paragraph.  To the

extent that a response is nevertheless required, Ms. Lloyd denies the allegations in

this Complaint paragraph.

### THE ACCOUNTING DEFENDANTS' ALLEGED INVOLVEMENT IN THE ALLEGED HORIZON PRIVATE EQUITY PONZI SCHEME

**COMPLAINT PARAGRAPH 46:** The success of Woods' Ponzi scheme also
relied from the outset in 2008 all the way through the present to the active
involvement of the Accounting Defendants.

**RESPONSE:**        Ms. Lloyd denies the allegations in this Complaint paragraph

that are directed to her.  Ms. Lloyd lacks knowledge and information sufficient to

form a belief as to the truth or not of the allegations in this Complaint paragraph as

they relate to the other Accounting Defendants. In addition, this Complaint

paragraph appears to have a typographical problem affecting the meaning of the

intended allegations. To the extent that a response is nevertheless required, Ms.

Lloyd denies the allegations in this Complaint paragraph.

**COMPLAINT PARAGRAPH 47:** The Accounting Defendants authorized and/or directed that various entities related to the Horizon Private Equity Ponzi scheme be placed in their names so as to hide Woods' involvement. Woods incorporated Horizon Private Equity, LLC as a Georgia entity on September 20, 2007. The initial filing lists Woods as the company's initial Registered Agent. Woods was identified as the company's Registered Agent in the company's 2007 and 2008 annual registrations. In 2009, Woods' name disappeared from the corporate filings, replaced by Lloyd. In 2014, Conn was named the Registered Agent and has thus appeared on the company's annual registrations from 2014-2020.

**RESPONSE:** Ms. Lloyd admits that her name appears on certain of the Horizon Private Equity, LLC Annual Registration filings with the Georgia Secretary of State during the period 2008-2011, but denies that all of the Annual Registrations during that period are available on-line, and denies the allegations against her that relate to Annual Registration filings that are not available to her. Ms. Lloyd lacks knowledge and information sufficient to form a belief as to the truth or not of the other allegations in this Complaint paragraph. To the extent that a response is nevertheless required, Ms. Lloyd denies the allegations in this Complaint paragraph.

**COMPLAINT PARAGRAPH 48:** Woods incorporated HPE III -- the second "Horizon Private Equity" entity -- on October 22, 2007, by changing the name of another entity he controlled, VSpeed, LLC. The company's first Annual Registration listed Woods and his accountant, Lloyd, as the Company's Registered Agents. Woods' name disappeared from the company's filings thereafter. From 2009 to 2021, the company has listed either Woods' accountants, Lloyd and Conn, or his attorney, Mary Galardi, as the company's Registered Agent.

**RESPONSE:**        Ms. Lloyd only admits that her name appears on HPE III annual

registrations for the years 2011, 2013, and 2014, and denies any other allegations

in this Complaint paragraph that are directed to her.  Ms. Lloyd lacks knowledge

and information sufficient to form a belief as to the truth or not of the allegations in

this Complaint paragraph as they relate to the other Accounting Defendants.  To

the extent that a response is nevertheless required, Ms. Lloyd denies the allegations

in this Complaint paragraph.

**COMPLAINT PARAGRAPH 49:** On January 29, 2008, a single SEC Form D
was filed by issuer Horizon Private Equity, LLC for the sale of up to $3,000,000 in
membership units. The Form D was signed by Conn, listing him as "President" of
Horizon Private Equity, LLC. The Form D required the filers to identify each
promoter of the issuer, each beneficial owner, each executive officer and director,
and each general and managing partner of Horizon Private Equity, LLC. Conn and
Lloyd were listed as Horizon's "Executive Officers." This document was publicly
available and easily detected from an internet search of "Horizon Private Equity."

**RESPONSE:**        Ms. Lloyd does not recall seeing the SEC Form D alleged in

this Complaint paragraph, and denies the allegations in this Complaint paragraph

that are directed to her.  Ms. Lloyd lacks knowledge and information sufficient to

form a belief as to the truth or not of the allegations in this Complaint paragraph as

they relate to the other Accounting Defendants.  To the extent that a response is

nevertheless required, Ms. Lloyd denies the allegations in this Complaint

paragraph.

**COMPLAINT PARAGRAPH 50:**  The Accounting Defendants provided ongoing services to Woods and/or Horizon Private Equity on a regular basis from 2008 to the present. A Horizon Private Equity Private Placement Memorandum ("PPM") filed in the SEC case identified Conn as being Horizon's President/CEO and Lloyd as being Horizon's Secretary and Treasurer. It further disclosed that "Kathleen Lloyd, who will be acting as Secretary and Treasurer for the Company, is employed by John Woods, the Advisor to the Company," and that Conn would be making all investment decisions for Horizon and would be "entitled to 10% of any cash distributions of the Company." The PPM states that Lloyd would be compensated for her services pursuant to a "management agreement."

**RESPONSE:**      Ms. Lloyd denies the allegations in this Complaint paragraph

that are directed to her.  Ms. Lloyd lacks knowledge and information sufficient to

form a belief as to the truth or not of the allegations in this Complaint paragraph as

they relate to the other Accounting Defendants.  To the extent that a response is

nevertheless required, Ms. Lloyd denies the allegations in this Complaint

paragraph.

**COMPLAINT PARAGRAPH 51:**  In a lawsuit filed against Woods during the relevant time period, Lloyd submitted a sworn affidavit in which she identified herself as a consultant providing  "human resources and accounting services" to various companies controlled by Woods.

**RESPONSE:**      Ms. Lloyd does not recall submitting a sworn affidavit, and

does not have a copy of such a sworn statement in her possession, and thus she

lacks knowledge and information sufficient to form a belief as to the truth or not of

the allegations in this Complaint paragraph.  To the extent that a response is

nevertheless required, Ms. Lloyd denies the allegations in this Complaint

paragraph.

**COMPLAINT PARAGRAPH 52:**  The Accounting Defendants also assisted
Woods and other Southport Capital employees with the management and
operations of the Horizon Private Equity Ponzi scheme by preparing IRS Form
1099-INTs for Horizon Private Equity investors, monthly principal and interest
reconciliations, monthly distribution of interest payments, and federal and state tax
returns and K-1s for the Horizon Private Equity Ponzi scheme entities throughout
the time-period.

**RESPONSE:**        Ms. Lloyd denies the allegations in this Complaint paragraph

that are directed to her.  Ms. Lloyd lacks knowledge and information sufficient to

form a belief as to the truth or not of the allegations in this Complaint paragraph as

they relate to the other Accounting Defendants.  To the extent that a response is

nevertheless required, Ms. Lloyd denies the allegations in this Complaint

paragraph.

**COUNT I**
**GEORGIA RICO**
**(All Defendants)**

**COMPLAINT PARAGRAPH 53:**  Plaintiff incorporates by reference all
preceding allegations as if fully set forth herein.

**RESPONSE:**        Ms. Lloyd incorporates by reference as if set forth fully herein

her responses to the Complaint paragraph preceding this paragraph.

**COMPLAINT PARAGRAPH 54:**  This claim for relief arises under O.C.G.A. §
16-14-6 of the Georgia RICO Act and seeks relief from Defendants' activities
described herein for violations of O.C.G.A. § 16-14-4 (a), (b). Plaintiff further

seeks relief from Defendants' conspiring to violate O.C.G.A. § 16-14-4 (a), (b), pursuant to subsection (c) thereof.

**RESPONSE:** The allegations in this Complaint paragraph call for legal conclusions for which no response is required. To the extent that a response is nevertheless required, Ms. Lloyd denies the allegations in this Complaint paragraph.

**COMPLAINT PARAGRAPH 55:** Defendants violated O.C.G.A. § 16-14-4(a) by acquiring or maintaining, directly or indirectly, an interest in or control of an enterprise and personal property, including money, through a pattern of racketeering activity.

**RESPONSE:** The allegations in this Complaint paragraph call for legal conclusions for which no response is required. To the extent that a response is nevertheless required, Ms. Lloyd denies the allegations in this Complaint paragraph.

**COMPLAINT PARAGRAPH 56:** Defendants violated O.C.G.A. § 16-14-4(b) by participating in the affairs of an enterprise through a pattern of racketeering activity.

**RESPONSE:** The allegations in this Complaint paragraph call for legal conclusions for which no response is required. To the extent that a response is nevertheless required, Ms. Lloyd denies the allegations in this Complaint paragraph.

**COMPLAINT PARAGRAPH 57:** Defendants violated O.C.G.A. § 16-14-4(c) by conspiring to violate O.C.G.A. § 16-14-4(a) and O.C.G.A. § 16-14-4(b). As part

of that conspiracy, Defendants agreed to a common unlawful endeavor and committed overt acts, including but not limited to acts of racketeering activity, in furtherance of their conspiracy. The investors were injured by reason of their conspiracy.

**RESPONSE:**      The allegations in the first sentence of this Complaint paragraph

call for legal conclusions for which no response is required.  To the extent that a

response is nevertheless required, Ms. Lloyd denies the allegations in this

Complaint paragraph.  Ms. Lloyd denies the other allegations contained in this

Complaint paragraph.

### The Alleged Enterprise

**COMPLAINT PARAGRAPH 58:**  The Defendants, along with non-parties Woods, Southport Capital, and HPE III were individuals whose association in fact to obtain investor money for the HPE III Ponzi scheme constituted an "enterprise" as defined in O.C.G.A. § 16-14-3(3).

**RESPONSE:**      The allegations in this Complaint paragraph call for legal

conclusions for which no response is required.  To the extent that a response is

nevertheless required, Ms. Lloyd denies the allegations in this Complaint

paragraph.

**COMPLAINT PARAGRAPH 59:** The enterprise was an ongoing association whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise. The enterprise engaged in activities primarily in and around Atlanta, Georgia.

**RESPONSE:**      Ms. Lloyd denies the allegations in this Complaint paragraph

that are directed to her.  Ms. Lloyd lacks knowledge and information sufficient to

form a belief as to the truth or not of the allegations in this Complaint paragraph as

they relate to the others.  To the extent that a response is nevertheless required, Ms.

Lloyd denies the allegations in this Complaint paragraph.

**COMPLAINT PARAGRAPH 60:**  The principal purpose of the enterprise was to
enrich Woods and provide Woods with money for various business purposes, as
well as to repay regular interest payments owed to earlier investors in the Ponzi
scheme. The enterprise was also designed to avoid detection by regulators and
investors so as to keep the enterprise going and/or avoid liability to the investors.
The members of the enterprise carried out this purpose by using a variety of
methods and means, some of which were legal. Others were illegal or were
performed in an illegal fashion. These illegal actions included but are not limited to
racketeering activity as defined in O.C.G.A. § 16-14-3(5)(A), O.C.G.A. § 16-14-
3(5)(B), and O.C.G.A. § 16-14-3(5)(C), and overt acts in furtherance of the
conspiracy to violate O.C.G.A. § 16-14-4(a) and O.C.G.A. § 16-14-4(b).

**RESPONSE:**      Ms. Lloyd denies the allegations in this Complaint paragraph

that are directed to her.  Ms. Lloyd lacks knowledge and information sufficient to

form a belief as to the truth or not of the allegations in this Complaint paragraph as

they relate to the others.  To the extent that a response is nevertheless required, Ms.

Lloyd denies the allegations in this Complaint paragraph.

**COMPLAINT PARAGRAPH 61:** The activities of the enterprise included but
were not limited to: marketing and selling interests in HPE III, liquidating and/or
selling existing assets to fund investments in the Horizon Private Equity Ponzi
scheme, transferring by mail and wire money to fund investments in Horizon

Private Equity Ponzi scheme, filing false and misleading reports to securities regulators to hide the existence of the Horizon Private Equity Ponzi scheme, using mail and wire to transmit investor statements, and using individuals as "fronts" to hide the members' involvement in the Horizon Private Equity Ponzi scheme.

**RESPONSE:**      Ms. Lloyd denies the allegations in this Complaint paragraph

that are directed to her.  Ms. Lloyd lacks knowledge and information sufficient to

form a belief as to the truth or not of the allegations in this Complaint paragraph as

they relate to the others.  To the extent that a response is nevertheless required, Ms.

Lloyd denies the allegations in this Complaint paragraph.

**COMPLAINT PARAGRAPH 62:** The enterprise had differentiation of roles and regular communications. The members shared common concerns and objectives which were primarily financial in nature. The enterprise had stability of personnel.

**RESPONSE:**      Ms. Lloyd denies the allegations in this Complaint paragraph

that are directed to her.  Ms. Lloyd lacks knowledge and information sufficient to

form a belief as to the truth or not of the allegations in this Complaint paragraph as

they relate to the others.  To the extent that a response is nevertheless required, Ms.

Lloyd denies the allegations in this Complaint paragraph.

### The Alleged Predicate Acts

**COMPLAINT PARAGRAPH 63:**  All of the Defendants, along with Woods, Southport Capital, and HPE III, engaged in a pattern of racketeering activity as defined in O.C.G.A. § 16-14-4(a), O.C.G.A. § 16-14-4(b), and O.C.G.A. § 16-14-4(c) by performing at least two acts of racketeering activity in furtherance of one or more incidents, schemes, or transactions that have the same or similar intents,

results, accomplices, victims, or methods of commission or otherwise are interrelated by distinguishing characteristics and are not isolated incidents, and the last of such acts occurred within four years, excluding any periods of imprisonment, after the commission of a prior act of racketeering activity.

**RESPONSE:**      The allegations in this Complaint paragraph call for legal

conclusions for which no response is required.  To the extent that a response is

nevertheless required, Ms. Lloyd denies the allegations in this Complaint

paragraph.

**COMPLAINT PARAGRAPH 64:** These acts of racketeering activity included, but were not necessarily limited to, the following indictable offenses enumerated in O.C.G.A. § 16-14-3:

- Securities fraud in violation of the "Georgia Securities Act of 2008." Woods, Jim Woods, Mooney, Wright, Southport Capital, and HPE III committed securities fraud by employing, directly or indirectly, a device, scheme, or artifice to defraud, or making an untrue statement of material fact in connection with selling or offering to sell securities, in violation of O.C.G.A. § 10-5-50(a)-(b), by causing the sale of securities to investors based on material falsehoods and omissions regarding the nature of the investment, use of proceeds and investment returns. A violation of the Georgia Securities Act is a predicate act under O.C.G.A. § 16-14-3(5)(A)(iii).
- Securities fraud in violation of the "Georgia Securities Act of 2008." Woods, Jim Woods, Mooney, Wright, Southport Capital, and HPE III also committed securities fraud by engaging in an act, practice, or course of business operating as a fraud or deceit upon another person in violation of O.C.G.A. § 10-5-50(c), by causing the sale of securities to investors based on material falsehoods and omissions regarding the nature of the investment, use of proceeds and investment returns. A violation of the Georgia Securities Act is a predicate act under O.C.G.A. § 16-14-3(5)(A)(iii).
- Securities fraud in violation of the "Georgia Securities Act of 2008." Woods, Jim Woods, Mooney, Wright, Southport Capital, and HPE III also committed securities fraud by engaging as an investment advisor in employing a device, scheme, or artifice to defraud another person and engaging in an act, practice,

or course of business that operates or would operate as a fraud or deceit upon another person in violation of O.C.G.A. §10-5-51, by causing the sale of securities to investors based on material falsehoods and omissions regarding the nature of the investment, use of proceeds and investment returns. A violation of the Georgia Securities Act is a predicate act under O.C.G.A. § 16-14-3(5)(A)(iii).

- Securities fraud in violation of the "Georgia Securities Act of 2008." Woods, Jim Woods, Mooney, Wright, Southport Capital, and HPE III also committed securities fraud by employing and/or associating with an individual required to be registered under this chapter as an investment adviser representative on behalf of the investment adviser in violation of O.C.G.A. § 10-5-32 and O.C.G.A. § 10-5-33, by permitting Woods to act as an investment adviser representative of Southport Capital from January 2017 through January 2, 2019. A violation of the Georgia Securities Act is a predicate act under O.C.G.A. § 16-14-3(5)(A)(iii).

- Theft in violation of Article 1 of Chapter 8 of Title 16 of the Georgia Code. Woods, Jim Woods, Mooney, Wright, Southport Capital, and HPE III committed, at a minimum, theft by deception in violation of O.C.G.A. § 16-8-3 by misappropriating and stealing funds invested in HPE III for their personal uses and transferring new investor money to pay interest owed to existing investors without the knowledge or consent of the investors. Theft is a predicate act under O.C.G.A. § 16-14-3(5)(A)(xii).

- Mail fraud in violation of 18 U.S.C. § 1341. Woods, Jim Woods, Mooney, Wright, Southport Capital, HPE III, and the Accounting Defendants committed mail fraud by causing security investment account statements, federal tax filings, and other documents to be sent in the mail to third party custodians and taxing authorities all for the purpose of furthering their fraudulent scheme to misappropriate investor funds. Mail fraud is a predicate act under O.C.G.A. § 16-14-3(5)(C); 18 U.S.C. 1961(1).

- Wire fraud in violation of 18 U.S.C. § 1343. Woods, Jim Woods, Mooney, Wright, Southport Capital, HPE III, and the Accounting Defendants Committed wire fraud by making use of telephone calls and other electronic communications, including email, in furtherance of their fraudulent Ponzi scheme. Wire fraud is a predicate act under O.C.G.A. § 16-14-3(5)(C); 18 U.S.C. 1961(1).

- Theft or embezzlement from employee business plan in violation of 18 U.S.C. § 664. Woods, Jim Woods, Mooney, Wright, Southport Capital, and HPE III

- 33 -

committed theft or embezzlement from employee business plans by misappropriating and stealing Individual Retirement Account ("IRA") funds invested in HPE III for their personal uses and transferring new investor Money to pay interest owed to existing investors without the knowledge or consent of the investors. Theft or embezzlement from employee business plan is a predicate act under O.C.G.A. § 16-14-3(5)(C); 18 U.S.C. § 1961(1).

- Engaging in monetary transactions in property derived from specified unlawful activity in violation of 18 U.S.C. § 1957. Woods, Jim Woods, Mooney, Wright, Southport Capital, and HPE III engaged in numerous monetary transactions with banks and securities firms using property criminally derived from the Horizon Private Equity investors. Engaging in monetary transactions in property derived from specified unlawful activity is a predicate act under O.C.G.A. § 16-14-3(5)(C); 18 U.S.C. § 1961(1).

- Mail fraud in violation of 18 U.S.C. § 1341. Oppenheimer committed mail fraud by causing security investment account statements, federal tax filings, and other documents to be sent in the mail to third party custodians and taxing authorities all for the purpose of furthering their fraudulent scheme to misappropriate investor funds. Mail fraud is a predicate act under O.C.G.A § 16-14-3(5)(C); 18 U.S.C. 1961(1).

- Wire fraud in violation of 18 U.S.C. § 1343. Oppenheimer committed wire fraud by making use of telephone calls and other electronic communications, including email, in furtherance of the fraudulent Ponzi scheme. Wire fraud is a predicate act under O.C.G.A. § 16-14-3(5)(C); 18 U.S.C. 1961(1).

- Engaging in monetary transactions in property derived from specified unlawful activity in violation of 18 U.S.C. § 1957. Oppenheimer engaged in numerous monetary transactions with banks and securities firms using property criminally derived from the Horizon Private Equity investors.

- Engaging in monetary transactions in property derived from specified unlawful activity is a predicate act under O.C.G.A. § 16-14-3(5)(C); 18 U.S.C. § 1961(1).

- Securities fraud in violation of the "Georgia Securities Act of 2008." The Accounting Defendants committed securities fraud by engaging in an act, practice, or course of business operating as a fraud or deceit upon another person in violation of O.C.G.A. § 10-5-50(c), by using their names to hide the true identity of the promoters of Horizon from the SEC and investors, preparing tax and accounting documents and customer statements necessary to support the scheme. A violation of the Georgia Securities Act is a predicate act under O.C.G.A. § 16-14-3(5)(A)(iii).

- 34 -

- Securities fraud in violation of the "Georgia Securities Act of 2008." The Accounting Defendants also committed securities fraud by engaging as an investment advisor in employing a device, scheme, or artifice to defraud another person and engaging in an act, practice, or course of business that operates or would operate as a fraud or deceit upon another person in violation of O.C.G.A. §10-5-51, by using their names to hide the true identity of the promoters of Horizon from the SEC and investors, preparing tax and accounting documents and customer statements necessary to support the scheme. A violation of the Georgia Securities Act is a predicate act under O.C.G.A. § 16-14-3(5)(A)(iii).
- Mail fraud in violation of 18 U.S.C. § 1341. The Accounting Defendants committed mail fraud by causing security investment account statements, federal tax filings, and other documents to be sent in the mail to third party Custodians and taxing authorities all for the purpose of furthering their fraudulent scheme to misappropriate investor funds. Mail fraud is a predicate act under O.C.G.A. § 16-14-3(5)(C); 18 U.S.C. 1961(1).
- Wire fraud in violation of 18 U.S.C. § 1343. The Accounting Defendants committed wire fraud by making use of telephone calls and other electronic communications, including email, in furtherance of the fraudulent Ponzi scheme. Wire fraud is a predicate act under O.C.G.A. § 16-14-3(5)(C); 18 U.S.C. 1961(1).
- Engaging in monetary transactions in property derived from specified unlawful activity in violation of 18 U.S.C. § 1957. The Accounting Defendants engaged in numerous monetary transactions with banks and securities firms using property criminally derived from the Horizon Private Equity investors. Engaging in monetary transactions in property derived from specified unlawful activity is a predicate act under O.C.G.A. § 16-14-3(5)(C); 18 U.S.C. § 1961(1).

**RESPONSE:**        The allegations in this Complaint paragraph call for legal

conclusions for which no response is required.  To the extent that a response is

nevertheless required, Ms. Lloyd denies the legal conclusion allegations in this

Complaint paragraph. Ms. Lloyd denies the factual allegations in this Complaint

paragraph that are directed to her.  Ms. Lloyd lacks knowledge and information

sufficient to form a belief as to the truth or not of the allegations in this Complaint

paragraph as they relate to the others.  To the extent that a response is nevertheless

required, Ms. Lloyd denies those and any other allegations in this Complaint

paragraph.

### Alleged Conspiracy to Commit the Violations of Woods, Jim Woods, Mooney, Southport Capital, and HPE III

**COMPLAINT PARAGRAPH 65:** The object and purpose of the conspiracy
included facilitating the commission of acts of racketeering activity by its members
and committing acts of racketeering to conceal those that had already occurred.

**RESPONSE:**       Ms. Lloyd denies the allegations in this Complaint paragraph

that are directed to her.  Ms. Lloyd lacks knowledge and information sufficient to

form a belief as to the truth or not of the allegations in this Complaint paragraph as

they relate to the others.  To the extent that a response is nevertheless required, Ms.

Lloyd denies the allegations in this Complaint paragraph.

**COMPLAINT PARAGRAPH 66:**  The Defendants, along with Woods,
Southport Capital, and HPE III, were aware of and agreed to the general criminal
objectives of their jointly undertaken scheme. They knowingly and willfully joined
in a conspiracy which itself contained a common plan or purpose to commit two or
more predicate acts.

**RESPONSE:**       Ms. Lloyd denies the allegations in this Complaint paragraph

that are directed to her.  Ms. Lloyd lacks knowledge and information sufficient to

form a belief as to the truth or not of the allegations in this Complaint paragraph as

- 36 -

they relate to the others.  To the extent that a response is nevertheless required, Ms.

Lloyd denies the allegations in this Complaint paragraph.

**COMPLAINT PARAGRAPH 67:**  The purposes of the conspiracy were not
accomplished, nor was the conspiracy abandoned, more than five years prior to the
filing of the Complaint.

**RESPONSE:**        Ms. Lloyd denies the allegations in this Complaint paragraph

that are directed to her.  Ms. Lloyd lacks knowledge and information sufficient to

form a belief as to the truth or not of the allegations in this Complaint paragraph as

they relate to the others.  To the extent that a response is nevertheless required, Ms.

Lloyd denies the allegations in this Complaint paragraph.

**COMPLAINT PARAGRAPH 68:**The Defendants, Woods, Southport Capital,
and HPE III undertook a number of overt acts in furtherance of the conspiracy,
including, but not limited to: marketing and selling interests in HPE III, liquidating
and/or selling existing assets to fund investments in the Horizon Private Equity
Ponzi scheme, transferring by mail and wire money to fund investments in Horizon
Private Equity Ponzi scheme, filing false and misleading reports to securities
regulators to hide the existence of the Horizon Private Equity Ponzi scheme, using
mail and wire to transmit investor statements, and using individuals as "fronts" to
hide the members' involvement in the Horizon Private Equity Ponzi scheme.

**RESPONSE:**        Ms. Lloyd denies the allegations in this Complaint paragraph

that are directed to her.  Ms. Lloyd lacks knowledge and information sufficient to

form a belief as to the truth or not of the allegations in this Complaint paragraph as

they relate to the others.  To the extent that a response is nevertheless required, Ms.

Lloyd denies the allegations in this Complaint paragraph.

**COMPLAINT PARAGRAPH 69:**The Defendants' illegal agreements and overt acts in furtherance of this conspiracy are in violation of O.C.G.A. § 16-14-4(c).

**RESPONSE:**　　　The allegations in this Complaint paragraph call for legal conclusions for which no response is required.  To the extent that a response is nevertheless required, Ms. Lloyd denies the allegations in this Complaint paragraph.

### Alleged Liability of Oppenheimer for the Violations of Woods, Jim Woods, Mooney, Southport Capital, and HPE III

**COMPLAINT PARAGRAPH 70:** At all times prior to January 2017, Woods was an agent of Oppenheimer by virtue of his employment as an Executive Director and investment adviser for Oppenheimer.

**RESPONSE:**　　　Ms. Lloyd lacks knowledge and information sufficient to form a belief as to the truth or not of the allegations in this Complaint paragraph.  To the extent that a response is nevertheless required, Ms. Lloyd denies the allegations in this Complaint paragraph.

**COMPLAINT PARAGRAPH 71:** From 2008 through January 2017, Woods raised money for and operated the Horizon Private Equity Ponzi scheme from Oppenheimer's Atlanta, Georgia branch office.

**RESPONSE:** Ms. Lloyd lacks knowledge and information sufficient to form a belief as to the truth or not of the allegations in this Complaint paragraph.  To the

extent that a response is nevertheless required, Ms. Lloyd denies the allegations in

this Complaint paragraph.

**COMPLAINT PARAGRAPH 72:** Oppenheimer's Atlanta branch manager during the relevant time period, William Atkinson Lobb, II, was physically located down the hall from Woods and was charged by law with supervising his activities to ensure Woods was complying with all securities laws. Lobb and other Oppenheimer management had first-hand, actual knowledge of Woods' activities from a multitude of sources including public filings and the allegations set forth in the *Himmler* lawsuit, which attached emails from Woods' undisclosed personal email account.

**RESPONSE:**      Ms. Lloyd lacks knowledge and information sufficient to form

a belief as to the truth or not of the allegations in this Complaint paragraph.  To the

extent that a response is nevertheless required, Ms. Lloyd denies the allegations in

this Complaint paragraph.

**COMPLAINT PARAGRAPH 73:** In addition to Lobb, a host of other Oppenheimer personnel were, or should have been, aware of the selling away scheme, including the on-site compliance manager physically present in the Atlanta branch office.

**RESPONSE:** Ms. Lloyd lacks knowledge and information sufficient to form

a belief as to the truth or not of the allegations in this Complaint paragraph.  To the

extent that a response is nevertheless required, Ms. Lloyd denies the allegations in

this Complaint paragraph.

**COMPLAINT PARAGRAPH 74:** Oppenheimer is vicariously liable for the criminal acts undertaken by Woods from 2008-present because Oppenheimer's

executives, managers, and compliance personnel authorized and/or recklessly tolerated Woods' acts.

**RESPONSE:**       The allegations in this Complaint paragraph call for legal

conclusions for which no response is required.  To the extent that a response is

nevertheless required, Ms. Lloyd denies the legal conclusion allegations in this

Complaint paragraph. Ms. Lloyd lacks knowledge and information sufficient to

form a belief as to the truth or not of the factual allegations in this Complaint

paragraph.  To the extent that a response is nevertheless required, Ms. Lloyd denies

the allegations in this Complaint paragraph.

### COUNT II
### Alleged Breach of Fiduciary Duty
### (Adviser Defendants)

**COMPLAINT PARAGRAPH 75:** Plaintiff incorporates by reference all preceding allegations as if fully set forth herein.

**RESPONSE:**       Ms. Lloyd incorporates by reference as if set forth fully herein

her responses to the Complaint paragraph preceding this paragraph.

**COMPLAINT PARAGRAPH 76:** As registered investment advisor representatives with Southport Capital, the Adviser Defendants owed all Southport Capital customers, including Plaintiff and the class, fiduciary duties with respect to management of their investments.

**RESPONSE:**       Ms. Lloyd lacks knowledge and information sufficient to form

a belief as to the truth or not of the allegations in this Complaint paragraph.  To the

extent that a response is nevertheless required, Ms. Lloyd denies the allegations in

this Complaint paragraph.

**COMPLAINT PARAGRAPH 77:** The Adviser Defendants breached their
fiduciary duties to Plaintiff and the class by, among other things, (1) participating
in the sale of an unregistered security; (2) engaging in an act, practice, or course of
business operating as a fraud or deceit upon another person in violation of
O.C.G.A. § 10-5-50(c); and (3) by causing the sale of securities to investors based
on material falsehoods and omissions regarding the nature of the investment, use of
proceeds and investment returns.

**RESPONSE:**       Ms. Lloyd lacks knowledge and information sufficient to form

a belief as to the truth or not of the allegations in this Complaint paragraph.  To the

extent that a response is nevertheless required, Ms. Lloyd denies the allegations in

this Complaint paragraph.

**COMPLAINT PARAGRAPH 78:** As a proximate cause of these actions,
Plaintiff and the class have sustained damages in an amount to be proven at trial.

**RESPONSE:**       Ms. Lloyd lacks knowledge and information sufficient to form

a belief as to the truth or not of the allegations in this Complaint paragraph.  To the

extent that a response is nevertheless required, Ms. Lloyd denies the allegations in

this Complaint paragraph.

**COMPLAINT PARAGRAPH 79:** The breaches set forth herein took place on a
regular and ongoing basis at all times from 2008 through the present.

**RESPONSE:**       Ms. Lloyd lacks knowledge and information sufficient to form

a belief as to the truth or not of the allegations in this Complaint paragraph.  To the

extent that a response is nevertheless required, Ms. Lloyd denies the allegations in

this Complaint paragraph.


### COUNT III
### ALLEGED CONSPIRACY AND/OR
### PROCUREMENT OF BREACH OF FIDUCIARY DUTY
**(Defendant Oppenheimer and the Accounting Defendants)**

**COMPLAINT PARAGRAPH 80:** Plaintiff incorporates by reference all preceding allegations as if fully set forth herein.

**RESPONSE:**      Ms. Lloyd incorporates by reference as if set forth fully herein her responses to the Complaint paragraph preceding this paragraph.

**COMPLAINT PARAGRAPH 81:** Oppenheimer is a sophisticated financial institution with access to world-class legal and management experience and assistance. Oppenheimer was aware of the fiduciary duty owed to Woods' customers and yet it purposefully hid Woods' and the Adviser Defendants' violations of securities related statutes by permitting them to quietly resign from Oppenheimer and failing to comply with SEC and FINRA rules requiring Oppenheimer to disclose said violations at the time Woods and the Adviser Defendants were permitted to resign from Oppenheimer.

**RESPONSE:**      Ms. Lloyd lacks knowledge and information sufficient to form

a belief as to the truth or not of the allegations in this Complaint paragraph.  To the

extent that a response is nevertheless required, Ms. Lloyd denies the allegations in

this Complaint paragraph.

**COMPLAINT PARAGRAPH 82:** Similarly, the Accounting Defendants were involved in HPE III from its inception and were aware that Woods and other investment advisers were marketing and selling HPE III to investors in violation of their fiduciary duties to their customers.

**RESPONSE:**      Ms. Lloyd denies the allegations in this Complaint paragraph

that are directed to her.  Ms. Lloyd lacks knowledge and information sufficient to

form a belief as to the truth or not of the allegations in this Complaint paragraph as

they relate to the others.  To the extent that a response is nevertheless required, Ms.

Lloyd denies the allegations in this Complaint paragraph.

**COMPLAINT PARAGRAPH 83:** As a result of their actions, Oppenheimer and
the Accounting Defendants procured the breach of fiduciary duty committed by
Woods, Southport Capital, and Southport Capital's other investment adviser
representatives that marketed and sold interests in the Horizon Private Equity
Ponzi scheme.

**RESPONSE:**      Ms. Lloyd denies the allegations in this Complaint paragraph

that are directed to her.  Ms. Lloyd lacks knowledge and information sufficient to

form a belief as to the truth or not of the allegations in this Complaint paragraph as

they relate to the others.  To the extent that a response is nevertheless required, Ms.

Lloyd denies the allegations in this Complaint paragraph.

**COMPLAINT PARAGRAPH 84:** Each of the breaches were undertaken
willfully and in reckless disregard of their obligations and duties to the investors.

**RESPONSE:**      Ms. Lloyd denies the allegations in this Complaint paragraph

that are directed to her.  Ms. Lloyd lacks knowledge and information sufficient to

form a belief as to the truth or not of the allegations in this Complaint paragraph as

they relate to the others.  To the extent that a response is nevertheless required, Ms.

Lloyd denies the allegations in this Complaint paragraph.

**COMPLAINT PARAGRAPH 85**: As a result of their actions, Oppenheimer and
the Accounting Defendants procured the breach of fiduciary duty committed by
Woods and the Adviser Defendants.

**RESPONSE:**      Ms. Lloyd denies the allegations in this Complaint paragraph

that are directed to her.  Ms. Lloyd lacks knowledge and information sufficient to

form a belief as to the truth or not of the allegations in this Complaint paragraph as

they relate to the others.  To the extent that a response is nevertheless required, Ms.

Lloyd denies the allegations in this Complaint paragraph.

**COMPLAINT PARAGRAPH 86:** As a result of its actions, Oppenheimer and
the Accounting Defendants proximately caused damages to Plaintiff and the class
in an amount to be determined at trial.

**RESPONSE:**      Ms. Lloyd denies the allegations in this Complaint paragraph

that are directed to her.  Ms. Lloyd lacks knowledge and information sufficient to

form a belief as to the truth or not of the allegations in this Complaint paragraph as

they relate to the others.  To the extent that a response is nevertheless required, Ms.

Lloyd denies the allegations in this Complaint paragraph.

### COUNT IV
### Alleged Negligent Misrepresentation
### (Oppenheimer)

**COMPLAINT PARAGRAPH 87:** Plaintiff incorporates by reference all preceding allegations as if fully set forth herein.

**RESPONSE:**        Ms. Lloyd incorporates by reference as if set forth fully herein

her responses to the Complaint paragraph preceding this paragraph.

**COMPLAINT PARAGRAPH 88:** Oppenheimer was required by law to file a "Form U5 Uniform Termination Notice for Securities Industry Registration" with securities regulators. Oppenheimer was required to file the Form U5 as to Woods within thirty (30) days of his employment end date. In the Form U5, Oppenheimer was required to disclose why an individual left the firm.

**RESPONSE:**        The allegations in this Complaint paragraph call for legal

conclusions for which no response is required.  To the extent that a response is

nevertheless required, Ms. Lloyd denies the legal conclusion allegations in this

Complaint paragraph.

**COMPLAINT PARAGRAPH 89:** Oppenheimer was under a continuing obligation to amend and update Woods' Form U5 to include reportable matters that became known to Oppenheimer after initial submission of the Form U5.

**RESPONSE:**        The allegations in this Complaint paragraph call for legal

conclusions for which no response is required.  To the extent that a response is

nevertheless required, Ms. Lloyd denies the allegations in this Complaint

paragraph.

**COMPLAINT PARAGRAPH 90:** Oppenheimer was required to disclose whether Woods was "under internal review for fraud or wrongful taking of property, or violating investment-related statutes, regulations, rules or industry standards of conduct." Separately, Oppenheimer was asked whether Woods voluntarily resigned, or was permitted to resign, after allegations were made that

he had violated "investment-related statutes, regulations, rules or industry standards of conduct?"

**RESPONSE:**        The allegations in the first sentence of this Complaint paragraph

call for legal conclusions for which no response is required.  To the extent that a

response is nevertheless required, Ms. Lloyd denies the legal conclusion

allegations in this Complaint paragraph.  Ms. Lloyd lacks knowledge and

information sufficient to form a belief as to the truth or not of the factual

allegations in this Complaint paragraph.  To the extent that a response is

nevertheless required, Ms. Lloyd denies the factual allegations in this Complaint

paragraph.

**COMPLAINT PARAGRAPH 91:** Oppenheimer had actual knowledge that Woods was engaged in a selling away scheme in violation of "investment-related statutes, regulations, rules or industry standards of conduct," but permitted Woods to resign without disclosing the wrongdoing on the Form U5. Had they done so, the violation would have automatically triggered an investigation by FINRA and would have been placed on Woods' publicly available "broker check."

**RESPONSE:**        The allegations in the second sentence of this Complaint

paragraph call for legal conclusions for which no response is required.  To the

extent that a response is nevertheless required, Ms. Lloyd denies the legal

conclusion allegations in this Complaint paragraph.  Ms. Lloyd lacks knowledge

and information sufficient to form a belief as to the truth or not of the factual

allegations in this Complaint paragraph.  To the extent that a response is

nevertheless required, Ms. Lloyd denies the factual allegations in this Complaint

paragraph.

**COMPLAINT PARAGRAPH 92:** From January 2017 through the present,
Oppenheimer, which had actual knowledge of the wrongdoing, failed to comply
with its duty to amend and update Woods' Form U5, which would have publicly
disclosed the wrongdoing to regulators and the public.

**RESPONSE:**        Ms. Lloyd lacks knowledge and information sufficient to form

a belief as to the truth or not of the allegations in this Complaint paragraph.  To the

extent that a response is nevertheless required, Ms. Lloyd denies the factual

allegations in this Complaint paragraph.

**COMPLAINT PARAGRAPH 93:** From January 2017 through the present,
Southport Capital was required by law to provide all customers the SEC Form
ADV which includes, among other things, disclosures regarding the advisors
employed at Southport Capital. Had Oppenheimer completed the Form U5
truthfully, its disclosure would have been included on the Form ADV provided to
Plaintiff and the class. Instead, the Form ADV provided to Southport Capital
customers, including Plaintiff and the class, indicated that Woods had left
Oppenheimer on good terms.

**RESPONSE:**        The allegations in the first sentence of this Complaint paragraph

call for legal conclusions for which no response is required.  To the extent that a

response is nevertheless required, Ms. Lloyd denies the legal conclusion

allegations in this Complaint paragraph.  Ms. Lloyd lacks knowledge and

information sufficient to form a belief as to the truth or not of the factual

allegations in this Complaint paragraph.  To the extent that a response is

nevertheless required, Ms. Lloyd denies the factual allegations in this Complaint

paragraph.

**COMPLAINT PARAGRAPH 94:** Oppenheimer failed to exercise reasonable care and competence in the representations made to regulators and the investing public, including Plaintiff and the class.

**RESPONSE:**        Ms. Lloyd lacks knowledge and information sufficient to form

a belief as to the truth or not of the allegations in this Complaint paragraph.  To the

extent that a response is nevertheless required, Ms. Lloyd denies the allegations in

this Complaint paragraph.

**COMPLAINT PARAGRAPH 95:** Oppenheimer owed Plaintiff and the class a duty of reasonable care and competence in the provision of information to FINRA that was relied upon by Plaintiff and the class deciding to invest in the Horizon Private Equity Ponzi scheme.

**RESPONSE:**        The allegations in the first clause of this Complaint paragraph

call for legal conclusions for which no response is required.  To the extent that a

response is nevertheless required, Ms. Lloyd denies the legal conclusion

allegations in this Complaint paragraph.  Ms. Lloyd lacks knowledge and

information sufficient to form a belief as to the truth or not of the factual

allegations in this Complaint paragraph.  To the extent that a response is

nevertheless required, Ms. Lloyd denies the factual allegations in this Complaint

paragraph.

**COMPLAINT PARAGRAPH 96:** Oppenheimer breached this duty by failing to exercise reasonable care and diligence and providing information with respect to Woods' resignation that was false, inaccurate, and/or misleading.

**RESPONSE:**        The allegations in the first clause of this Complaint paragraph

call for legal conclusions for which no response is required.  To the extent that a

response is nevertheless required, Ms. Lloyd denies the legal conclusion

allegations in this Complaint paragraph.  Ms. Lloyd lacks knowledge and

information sufficient to form a belief as to the truth or not of the factual

allegations in this Complaint paragraph.  To the extent that a response is

nevertheless required, Ms. Lloyd denies the factual allegations in this Complaint

paragraph.

**COMPLAINT PARAGRAPH 97:** Plaintiff and the class, at the time these representations were made, and at the time they took the actions alleged herein, were unaware of the falsity, inaccuracy and/or misleading nature of Oppenheimer's representations. Plaintiff and the class's reliance on the statements was justifiable and reasonable given Oppenheimer's reputation and superior knowledge.

**RESPONSE:**        Ms. Lloyd lacks knowledge and information sufficient to form

a belief as to the truth or not of the allegations in this Complaint paragraph.  To the

extent that a response is nevertheless required, Ms. Lloyd denies the allegations in

this Complaint paragraph.

**COMPLAINT PARAGRAPH 98:** In reliance on these representations, Plaintiff and the class were induced to incur, and did incur, damages.

**RESPONSE:**     Ms. Lloyd lacks knowledge and information sufficient to form a belief as to the truth or not of the allegations in this Complaint paragraph.  To the extent that a response is nevertheless required, Ms. Lloyd denies the allegations in this Complaint paragraph.

**COMPLAINT PARAGRAPH 99:** Oppenheimer had the ability at all times to correct their false filing but chose not to do so, thus giving the appearance to the investing public at all times from 2016-present that Woods resigned from its firm whilst in good standing. Thus, the negligent misrepresentations were publicly stated and reiterated on a regular and ongoing basis at all times from December 2016 to the present.

**RESPONSE:**     Ms. Lloyd lacks knowledge and information sufficient to form a belief as to the truth or not of the allegations in this Complaint paragraph.  To the extent that a response is nevertheless required, Ms. Lloyd denies the allegations in this Complaint paragraph.

**COMPLAINT PARAGRAPH 100:** As a proximate result of Oppenheimer's negligent misrepresentations as herein alleged, Plaintiff and the class have incurred damages.

**RESPONSE:**     Ms. Lloyd lacks knowledge and information sufficient to form a belief as to the truth or not of the allegations in this Complaint paragraph.  To the

extent that a response is nevertheless required, Ms. Lloyd denies the allegations in

this Complaint paragraph.

## COUNT V
## Alleged Aiding and Abetting Fraud
### (All Defendants)

**COMPLAINT PARAGRAPH 101:** Plaintiff incorporates by reference all
preceding allegations as if fully set forth herein.

**RESPONSE:**       Ms. Lloyd incorporates by reference as if set forth fully herein

her responses to the Complaint paragraph preceding this paragraph.


**COMPLAINT PARAGRAPH 102:**  Oppenheimer knew or should have known
that fraud and wrongful acts and omissions like that committed by Woods and his
related parties was possible absent appropriate monitoring, supervision, rules, and
safeguards but purposefully failed to engage in monitoring or supervising or to
adopt such rules or safeguards.

**RESPONSE:**       Ms. Lloyd lacks knowledge and information sufficient to form

a belief as to the truth or not of the allegations in this Complaint paragraph.  To the

extent that a response is nevertheless required, Ms. Lloyd denies the allegations in

this Complaint paragraph.


**COMPLAINT PARAGRAPH 103:** Oppenheimer, after discovering the Ponzi
scheme, intentionally filed false statements with regulators so as to shield Woods
from being discovered because it knew that it was liable for him engaging in a
Ponzi scheme from their office and they wished to avoid financial liability for his
acts.

**RESPONSE:**      Ms. Lloyd lacks knowledge and information sufficient to form

a belief as to the truth or not of the allegations in this Complaint paragraph.  To the

extent that a response is nevertheless required, Ms. Lloyd denies the allegations in

this Complaint paragraph.

**COMPLAINT PARAGRAPH 104:** Oppenheimer thereby substantially assisted
in the fraud by deliberately turning a blind eye to illegal conduct and/or
intentionally covering up the illegal conduct.

**RESPONSE:**      Ms. Lloyd lacks knowledge and information sufficient to form

a belief as to the truth or not of the allegations in this Complaint paragraph.  To the

extent that a response is nevertheless required, Ms. Lloyd denies the allegations in

this Complaint paragraph.

**COMPLAINT PARAGRAPH 105:** The conduct of Oppenheimer directly and
proximately caused damages to all investors who invested in the Horizon Private
Equity Ponzi scheme from 2008 to present.

**RESPONSE:**      Ms. Lloyd lacks knowledge and information sufficient to form

a belief as to the truth or not of the allegations in this Complaint paragraph.  To the

extent that a response is nevertheless required, Ms. Lloyd denies the allegations in

this Complaint paragraph.

**COMPLAINT PARAGRAPH 106:** Likewise, the Accounting Defendants knew
or should have known that fraud and wrongful acts and omissions were being
committed by Woods and his related parties due to their access to financial

records, legal documents and active participation in his web of related corporate entities Woods utilized to carry out his illegal scheme.

**RESPONSE:**     Ms. Lloyd denies the allegations in this Complaint paragraph that are directed to her.  Ms. Lloyd lacks knowledge and information sufficient to form a belief as to the truth or not of the allegations in this Complaint paragraph as they relate to the other Accounting Defendants. To the extent that a response is nevertheless required, Ms. Lloyd denies the allegations in this Complaint paragraph.

**COMPLAINT PARAGRAPH 107:** The Accounting Defendants failed to take any action to notify investors or regulators that Woods was engaged in an illegal Ponzi scheme.

**RESPONSE:**     Ms. Lloyd denies the allegations in this Complaint paragraph that are directed to her.  Ms. Lloyd lacks knowledge and information sufficient to form a belief as to the truth or not of the allegations in this Complaint paragraph as they relate to the other Accounting Defendants. To the extent that a response is nevertheless required, Ms. Lloyd denies the allegations in this Complaint paragraph.

**COMPLAINT PARAGRAPH 108:** The Accounting Defendants thereby substantially assisted in the fraud by deliberately turning a blind eye to illegal conduct and/or intentionally covering up the illegal conduct.

**RESPONSE:**      Ms. Lloyd denies the allegations in this Complaint paragraph

that are directed to her.  Ms. Lloyd lacks knowledge and information sufficient to

form a belief as to the truth or not of the allegations in this Complaint paragraph as

they relate to the other Accounting Defendants. To the extent that a response is

nevertheless required, Ms. Lloyd denies the allegations in this Complaint

paragraph.

**COMPLAINT PARAGRAPH 109:** The conduct of the Accounting Defendants
directly and proximately caused damages to all investors who invested in the
Horizon Private Equity Ponzi scheme from 2008 to present.

**RESPONSE:**      Ms. Lloyd denies the allegations in this Complaint paragraph

that are directed to her.  Ms. Lloyd lacks knowledge and information sufficient to

form a belief as to the truth or not of the allegations in this Complaint paragraph as

they relate to the other Accounting Defendants. To the extent that a response is

nevertheless required, Ms. Lloyd denies the allegations in this Complaint

paragraph.

## COUNT VI
## ALLEGED UNJUST ENRICHMENT
### (The Adviser and Accounting Defendants)

**COMPLAINT PARAGRAPH 110:** Plaintiff incorporates by reference all
preceding allegations as if fully set forth herein.

**RESPONSE:**      Ms. Lloyd incorporates by reference as if set forth fully herein her responses to the Complaint paragraph preceding this paragraph.

**COMPLAINT PARAGRAPH 111:** As a result of the various breaches alleged herein, Plaintiff and the class suffered damages. The Adviser and Accounting Defendants were unjustly enriched by the receipt of ongoing fees from Horizon investor money for which they were not entitled due to the acts set forth herein.

**RESPONSE:**      Ms. Lloyd denies the allegations in this Complaint paragraph that are directed to her.  Ms. Lloyd lacks knowledge and information sufficient to form a belief as to the truth or not of the allegations in this Complaint paragraph as they relate to the other Defendants. To the extent that a response is nevertheless required, Ms. Lloyd denies the allegations in this Complaint paragraph.

**COMPLAINT PARAGRAPH 112:** The Adviser and Accounting Defendants should in all interests of fairness be required to disgorge all compensation earned and monies taken from Horizon Private Equity from its inception through the present.

**RESPONSE:**      Ms. Lloyd denies the allegations in this Complaint paragraph that are directed to her.  Ms. Lloyd lacks knowledge and information sufficient to form a belief as to the truth or not of the allegations in this Complaint paragraph as they relate to the other Defendants. To the extent that a response is nevertheless required, Ms. Lloyd denies the allegations in this Complaint paragraph.

## COUNT VII
## <u>ALLEGED PUNITIVE DAMAGES</u>
### (All Defendants)

**COMPLAINT PARAGRAPH 113:** Plaintiff incorporates by reference all preceding allegations as if fully set forth herein.

**RESPONSE:**     Ms. Lloyd incorporates by reference as if set forth fully herein her responses to the Complaint paragraph preceding this paragraph.

**COMPLAINT PARAGRAPH 114:** Defendants engaged in willful misconduct, acted with malice, and have engaged in fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences.

**RESPONSE:**     Ms. Lloyd denies the allegations in this Complaint paragraph that are directed to her.  Ms. Lloyd lacks knowledge and information sufficient to form a belief as to the truth or not of the allegations in this Complaint paragraph as they relate to the other Defendants. To the extent that a response is nevertheless required, Ms. Lloyd denies the allegations in this Complaint paragraph.

**COMPLAINT PARAGRAPH 115:** Defendants acted with specific intent to cause harm to the investors.

**RESPONSE:**     Ms. Lloyd denies the allegations in this Complaint paragraph that are directed to her.  Ms. Lloyd lacks knowledge and information sufficient to form a belief as to the truth or not of the allegations in this Complaint paragraph as

they relate to the other Defendants. To the extent that a response is nevertheless

required, Ms. Lloyd denies the allegations in this Complaint paragraph.

**COMPLAINT PARAGRAPH 116:** In light of the allegations set forth herein, Plaintiff and the class are entitled to punitive damages.

**RESPONSE:**        Denied.


# COUNT VIII
## ALLEGED ATTORNEYS' FEES
### (All Defendants)

**COMPLAINT PARAGRAPH 117:** Plaintiff incorporates by reference all preceding allegations as if fully set forth herein.

**RESPONSE:**        Ms. Lloyd incorporates by reference as if set forth fully herein

her responses to the Complaint paragraph preceding this paragraph.


**COMPLAINT PARAGRAPH 118:** Defendants have acted in bad faith, have been stubbornly litigious and have caused Plaintiffs unnecessary trouble and expense.

**RESPONSE:**        Ms. Lloyd denies the allegations in this Complaint paragraph

that are directed to her.  Ms. Lloyd lacks knowledge and information sufficient to

form a belief as to the truth or not of the allegations in this Complaint paragraph as

they relate to the other Defendants. To the extent that a response is nevertheless

required, Ms. Lloyd denies the allegations in this Complaint paragraph.

**COMPLAINT PARAGRAPH 119:** Pursuant to O.C.G.A. § 9-5-14 and Titles 10 and 16 of the Georgia Code, Plaintiffs are entitled to recover from Defendants their expenses of litigation, including but not limited to, attorneys' fees.

**RESPONSE:**     The allegations in this Complaint paragraph call for legal conclusions for which no response is required.  To the extent that a response is nevertheless required, Ms. Lloyd denies the allegations in this Complaint paragraph.

**COMPLAINT'S PRAYER FOR RELIEF:** Plaintiff respectfully asks that this Court:
   (a) Enter an order certifying this action as a class action pursuant to Fed. R. Civ. P. 23;
   (b) Conduct a jury trial of all claims and issues as to which there is a right to jury trial;
   (c) Enter judgment awarding damages to Plaintiff and the class in an amount to be determined at trial;
   (d) Award Plaintiff the costs of this suit, including reasonable attorneys' fees; and
   (e) Such other and further relief as the Court deems proper and just.

**RESPONSE:** Ms. Lloyd denies that this case is appropriate for class treatment, and denies that Plaintiff and/or the putative Class Members that it seeks to represent are entitled to any of the damages or relief prayed for in the Complaint.

## JURY DEMAND

Ms. Lloyd admits that Plaintiff has demanded a trial by jury

## GENERAL DENIAL

Ms. Lloyd denies each and every allegation of Plaintiff's Complaint not expressly admitted as if such allegation had been specifically denied.

## AFFIRMATIVE DEFENSES

Ms. Lloyd asserts the following affirmative defenses as to each and every cause of action asserted in the Complaint unless specified otherwise. By pleading these defenses, Ms. Lloyd does not assume the burden of proving any fact, issue, or element of a cause of action where such burden belongs to Plaintiff.

Furthermore, all such defenses should be considered as pleaded in the alternative and do not constitute an admission of liability or that Plaintiff is entitled to any relief whatsoever. Ms. Lloyd reserves the right to assert additional defenses as she become evident through further discovery and/or investigation.

### First Defense

Plaintiff's Complaint, in whole or in part, fails to state a claim upon which relief can be granted.

### Second Defense

Plaintiff's claims and those of the class that it seeks to represent may be barred by applicable statutes of limitation. Further, the applicability of the statutes

of limitations may require individualized determinations for each putative member of the purported class, thereby precluding class-wide resolution.

### Third Defense

Plaintiff's claims and those of the class that it seeks to represent are barred in whole or in part due to Ms. Lloyd's lack of knowledge.

### Fourth Defense

Plaintiff's claims and those of the class that it seeks to represent are barred in whole or in part due to Ms. Lloyd's lack of scienter or intent.

### Fifth Defense

Plaintiff's claims and those of the class that it seeks to represent are barred in whole or in part because Ms. Lloyd at all times acted in good faith.

### Sixth Defense

Plaintiff and/or the putative class members may not recover some or all of the relief requested in the Complaint because Ms. Lloyd did not commit any oppressive, willful, wanton, fraudulent, or malicious act or authorize or ratify any such act with respect\t to Plaintiff and/or any putative class member.

### Seventh Defense

Plaintiff's claims and those of the class that it seeks to represent may be barred, in whole or in part, under the doctrines of waiver, laches, estoppel,

ratification, acquiescence, or unclean hands.

## Eighth Defense

Plaintiff's claims and those of the putative class members may be barred in whole or in part, because they failed to mitigate damages, if any.

## Ninth Defense

Plaintiff's claims and those of the putative class members may be barred in whole or in part, if allowed to be tried upon or with so-called representative evidence, because doing so would violate the procedural and substantive Due Process clauses of the state of Georgia and federal Constitutions.

## Tenth Defense

Plaintiff's claims and those of the putative class members cannot and should not be maintained on a class-action or representative action to the extent that their claims, or each of them, fail to meet the necessary requirements for class certification, including, class ascertainability, typicality, commonality, numerosity, manageability, superiority, adequacy of the class representative; and lack of a community of interest among the putative class.

## Eleventh Defense

Plaintiff's equitable claims and those of the putative class members are barred because if the claims were meritorious (which Ms. Lloyd denies) there

would be an adequate legal remedy for the claims asserted and because there is otherwise no basis for equitable relief in this case.

## Twelfth Defense

Plaintiff's equitable claims and those of the putative class members may be barred because equitable theories do not lie where there is an express contract.

## Thirteenth Defense

Plaintiff's claims and those of the putative class fail in whole or in part because Ms. Lloyd in her individual capacity is not liable to them.

## Fourteenth Defense

Plaintiff's claims and those of the putative class fail in whole or in part because Ms. Lloyd in her individual capacity owed no legal duty to them.

## Fifteenth Defense

Plaintiff's claims and those of the putative class fail in whole or in part because Ms. Lloyd in her capacity as an independent contractor owed no legal duty to them.

## Sixteenth Defense

Ms. Lloyd's alleged acts and/or omissions were not the cause or proximate cause of damage or injury to Plaintiff or to any putative class member.

### Seventeenth Defense

Plaintiff's claims and those of the putative class may be barred in whole or in part to the extent that Plaintiff has failed to join necessary parties.

### Eighteenth Defense

Any damages alleged in the Complaint were proximately caused in whole or in part by persons or entities other than Ms. Lloyd and over which Ms. Lloyd had no control.

### Nineteenth Defense

Ms. Lloyd did not engage in any conduct that would warrant an award of punitive damages.

### Twentieth Defense

Plaintiff's claims and those of the putative class may be barred in whole or in part based on the doctrine of assumption of risk.

### Twenty-First Defense

Plaintiff's claims are barred in whole or in part because Ms. Lloyd did not know about, agree to, have reason to know about, or in any way join any alleged conspiracy.

### Twenty-Second Defense

Plaintiff's claims are barred in whole or in part because Ms. Lloyd did not

hold decision-making intent, control, or authority with respect to any of the other Defendants or others allegedly involved in the alleged facts underlying the Complaint.

### Twenty-Third Defense

Plaintiff's and the putative class's claim for attorneys' fees may be barred in who or in part because "Attorneys' Fees" in not an independent cause of action.

### Twenty-Fourth Defense

Neither Plaintiff nor the putative class is entitled to recovery of attorneys' fees, expenses, and other costs.

### Twenty-Fifth Defense

Neither Plaintiff nor the putative class is entitled to an award of punitive damages, pre-judgment interest, or post-judgment interest.

### Twenty-Sixth Defense

Plaintiff's and the putative class's claims may be barred in whole or in part due to intervening acts of others.

### Twenty-Seventh Defense

Plaintiff's and the putative class's claims may be barred in whole or in part due to mistake of fact and/or mistake of law.

### Twenty-Eighth Defense

Plaintiff's and the putative class's claims may be barred in whole or in part to the extent that they seek any prohibited duplicative recovery.

### Twenty-Ninth Defense

Plaintiff's and the putative class claims are barred in whole or in part because Ms. Lloyd terminated her independent contractor agreement and ended any working relationship John Woods and any company in which he was involved in January 2019 -- months before Plaintiff allegedly invested in June of 2019.

### Thirtieth Defense

Plaintiff's and the putative class claims are barred in whole or in part because they are precluded by the Federal Securities Litigation Uniform Standards Act of 1998, 15 U.S.C. § 78bb(f)(1).

### Thirty-First Defense

Plaintiff's and the putative class claims are barred in whole or in part because there is no causal connection between Ms. Lloyd's very limited services as an independent contractor, and the injuries alleged by Plaintiff and the putative class.

### Thirty-Second Defense

Plaintiff's and the putative class claims are barred in whole or in part

because Ms. Lloyd did not intentionally participate in any alleged scheme to defraud another of money or property.

### Thirty-Third Defense

Plaintiff's and the putative class claims are barred in whole or in part because Ms. Lloyd did not intentionally use the mails or wires in furtherance of any such alleged scheme to defraud another of money or property.

### Thirty-Fourth Defense

Plaintiff's and the putative class claims are barred in whole or in part because none of them has suffered any injury caused by Ms. Lloyd's alleged conduct.

### Thirty-Fifth Defense

Plaintiff's and the putative class claims are barred in whole or in part because none of them relied on any alleged misstatement or omission made by Ms. Lloyd.

### Thirty-Sixth Defense

Plaintiff's and the putative class claims are barred in whole or in part because Ms. Lloyd did not acquire money or other property through a pattern of alleged racketeering activity.

### Thirty-Seventh Defense

Plaintiff's and the putative class claims are barred in whole or in part because Ms. Lloyd never had any dealings or relationship with any Southport entity.

### Thirty-Eighth Defense

Plaintiff's and the putative class claims for procurement of a breach of fiduciary duty are barred because Ms. Lloyd did not act to procure a breach of anyone's fiduciary duty to the Plaintiff or the putative class.

### Thirty-Ninth Defense

Plaintiff's and the putative class claims for procurement of a breach of fiduciary duty are barred because Ms. Lloyd did not act purposely and with malice and the intent to injure.

### Fortieth Defense

Plaintiff's and the putative class claims for procurement of a breach of fiduciary duty are barred because no conduct of Ms. Lloyd's procured a breach of anyone's fiduciary duty.

### Forty-First Defense

Plaintiff's and the putative class claims for procurement of a breach of fiduciary duty are barred because Ms. Lloyd did not give advice, counsel, persuade

or command anyone to solicit anyone to breach any fiduciary duties.

### Forty-Second Defense

Plaintiff's and the putative class claims for procurement of a breach of fiduciary duty are barred because no conduct of Ms. Lloyd's proximately case damage to Plaintiff or the putative class.

### Forty-Third Defense

Plaintiff's and the putative class claims are barred in whole or in part to the extent that Ms. Lloyd never made any representations to them.

### Forty-Fourth Defense

Plaintiff's and the putative class claims for alleged aiding and abetting fraud are barred because Georgia does not recognize that claim as an independent cause of action.

### Forty-Fifth Defense

Plaintiff's and the putative class claims for alleged unjust enrichment are barred because they have alleged unjust enrichment as a separate and distinct cause of action and not as an alternate remedy for a failed contract with Ms. Lloyd.

### Forty-Sixth Defense

Plaintiff's and the putative class claims for alleged punitive damages are barred because Georgia does not recognize an independent cause of action for

punitive damages.

## Forty-Seventh Defense

Plaintiff's and the putative class claims for alleged attorneys' fees and expenses of litigation under O.C.G.A. § 13-6-11 (which Plaintiff appears to quote but does not cite) are barred because that statute does not support an independent cause of action.

## Forty-Eighth Defense

Plaintiff's and the putative class claims for alleged attorneys' fees and expenses of litigation under Titles 10 (Commerce and Trade) and 16 (Crime and Offenses) of the Georgia Code are barred because those Titles do not support an independent cause of action for attorneys' fees and expenses of litigation.

## Forty-Ninth Defense

Plaintiff's and the putative class claims for alleged attorneys' fees and expenses of litigation against Ms. Lloyd under O.C.G.A. § 9-15-14 are barred for reasons including that they have not pleaded and cannot prove any facts with respect to Ms. Lloyd that could give rise to any claims under that statute.

WHEREFORE, having answered the Complaint and asserted her affirmative defenses, Defendant Kathleen Lloyd prays for judgment as follows:

1)  That judgment be entered in favor of Ms. Lloyd and against Plaintiff and the putative class, and that the Complaint be dismissed with prejudice;

2)  That Ms. Lloyd be awarded her costs of this action;

3)  That Ms. Lloyd be awarded her reasonable attorneys' fees as may be determined by the Court; and

4)  That the Court award such other and further relief as it deems just and proper.

## DEMAND FOR JURY TRIAL

Ms. Lloyd demands a trial by jury on all issues so triable.

Respectfully submitted, this 13th  day of December, 2021.

s/ Kevin A. Maxim
Georgia Bar No. 478580
Attorney for Defendant
Kathleen Lloyd

THE MAXIM LAW FIRM, P.C.
1718 Peachtree St., NW
Suite 599
Atlanta, Georgia 30309
Phone: (404) 924-4272
Fax:    (404) 924-4273
E-mail: kmaxim@maximlawfirm.com

## **CERTIFICATION**

Pursuant to N.D. Ga. L.R. 7.1(D), counsel for Defendant hereby certifies that this document has been prepared with Times New Roman (14 point) font, which font has been approved under LR 5.1(C).

s/ Kevin A. Maxim
Georgia Bar No. 478580
Attorney for Defendant
Kathleen Lloyd

THE MAXIM LAW FIRM, P.C.
1718 Peachtree St., NW
Suite 599
Atlanta, Georgia 30309
Phone: (404) 924-4272
Fax: (404) 924-4273
E-mail: kmaxim@maximlawfirm.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| 6694 Dawson Blvd, LLC, individually on behalf of a class of similarly situated persons, | ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No: **1:21-cv-03625-SDG** |
| v. | ) ) | |
| Oppenheimer & Co., Inc., James Wallace Woods, Michael J. Mooney, Britt Wright, William V. Conn, Jr., Conn & Co. Tax Practice, LLC, Conn & Company Consulting, LLC, and Kathleen Lloyd, | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this day electronically filed the foregoing

document with the Clerk of Court using the CM/ECF system, which automatically

sent e-mail notification of such filing to the following attorneys of record:

Craig H. Kuglar, Esq.
THE LAW OFFICE OF
CRAIG KUGLAR, LLC
931 Monroe Drive NE
Suite  A102-353
Atlanta, GA   30308

John S. Chapman, Esq.
Jason T. Albin, Esq.
Philip L. Vujanov, Esq.
CHAPMAN ALBIN LLC
700 West. St. Clair Avenue
Suite 200
Cleveland, OH  44113

William Paul Mason, Esq.
MASON | CARTER LLC
45 Technology Parkway South
Suite 240
Peachtree Corners, GA
30092-3455

James W. Cobb
Julia Blackburn Stone
CAPLAN COBB LLP
75 Fourteenth Street, NE
Suite 2750
Atlanta, GA  30309

Randy S. Chartash, Esq.
CHARTASH LAW, LLC
3151 Maple Drive, N.E.
Atlanta, GA   30305

Richard A. Rice, Jr.
THE RICE LAW FIRM, LLC
3151 Maple Drive NE
Atlanta, GA 30305

Frank M. Lowrey IV, Esq.
BONDURANT MIXSON &
ELMORE, LLP
1201 West Peachtree St NW
Suite 3900
Atlanta, GA 30309

This 13th day of December, 2021.

s/ Kevin A. Maxim
Georgia Bar No. 478580
Attorney for Defendant
Kathleen Lloyd

The Maxim Law Firm, P.C.
1718 Peachtree St., NW
Suite 599
Atlanta, GA  30309
Phone: (404) 924-4272
Fax:     (404) 924-4273
E-mail: kmaxim@maximlawfirm.com