# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | | |
|---|---|---|
| 6694 Dawson Blvd, LLC, Individually and on Behalf of a Class of Similarly Situated Persons, | ) ) ) | |
| | ) | CIVIL ACTION FILE |
| Plaintiff, | ) | NO. 1:21-cv-03625-SDG |
| | ) | |
| vs. | ) | |
| | ) | |
| Oppenheimer & Co., Inc., James Wallace Woods, Michael J. Mooney, Britt Wright, William V. Conn, Jr., Conn & Co. Tax Practice, LLC, Conn & Company Consulting, LLC, and Kathleen Lloyd, | ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S OPPOSITION TO MOTION OF DEFENDANT OPPENHEIMER & CO., INC. TO DISMISS

# **TABLE OF CONTENTS**

INTRODUCTION ...................................................................................1

ARGUMENT .........................................................................................1

I.    The motion to dismiss standard.......................................................2

II.   SLUSA does not preempt Plaintiff's state law claims .....................2

III.  Plaintiff has adequately pled a claim arising under Georgia RICO ...............6

    A.    Oppenheimer is vicariously liable for the Georgia RICO
        violations committed by its employees................................6

    B.    Oppenheimer is liable as a conspirator ..............................10

    C.    Oppenheimer has direct liability for violation of Georgia
        RICO ...............................................................................12

        i.    The Complaint alleges a pattern of racketeering
            activity .....................................................................12

        ii.   The Complaint alleges pervasive racketeering
            activity by Oppenheimer ..........................................13

        iii.  The Complaint alleges that Plaintiff was the
            intended target of Oppenheimer's acts ......................14

        iv.   The Complaint alleges that Oppenheimer benefited
            from the illegal scheme..............................................15

        v.    The Complaint alleges that Oppenheimer
            participated in the enterprise.....................................16

IV.   Plaintiff has adequately pled a claim for procurement of breach
    of fiduciary duty...........................................................................17

V.     Plaintiff has adequately pled a claim for negligent
       misrepresentation ........................................................................... 19

VI.    Plaintiff has adequately pled a claim for aiding and abetting
       fraud .................................................................................................. 23

VII.   Plaintiff has adequately pled a claim for punitive
       damages/attorneys' fees .................................................................. 25

VIII.  If necessary, Plaintiff requests that the Court grant it leave to
       amend ................................................................................................ 25

CONCLUSION .................................................................................................. 26

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## Cases

*Bell Atl. V. Twombly*, 550 U.S. 544 (2007) ................................................................2

*Bivens Gardens Office Bldg. v. Barnett Banks of Florida*, 140 F.3d
898 (11th Cir. 1998) ...........................................................................14

*Brouwer v. Raffensperger, Hughes & Co.*, 199 F.3d 961 (7th Cir.
2000)........................................................................................10

*Chadbourne & Parke LLP v. Troice*, 571 U.S. 377 (2014).......................2, 3, 4, 5, 6

*Cobb Cty. v. Jones Grp. P.L.C.*, 218 Ga. App. 149 (1995) ........................................8

*Cummings v. Walsh Const. Co.*, 561 F. Supp. 872 (S.D. Ga. 1983) ....................6, 7

*Curry v. TD Ameritrade, Inc.*, No. 1:14-CV-1361-LMM, 2015 WL
11251449 (N.D. Ga. June 30, 2015)..........................................................17

*Duvall v. Cronic*, 347 Ga. App. 763 (2018) ................................................................6

*Faillace v. Columbus Bank & Tr. Co.*, 269 Ga. App. 866 (2004).....................12, 15

*Farzaneh v. Merit Const. Co.*, 309 Ga. App. 637 (2011)...........................................7

*Home Depot U.S.A., Inc. v. Wabash Nat. Corp.*, 314 Ga. App. 360
(2012) .............................................................................................19

*In re Arby's Rest. Grp. Inc. Litig.*, 317 F. Supp. 3d 122 (N.D. Ga.
2018)...............................................................................................2

*Insight Tech., Inc. v. FreightCheck, LLC*, 280 Ga. App. 19 (2006).................17, 18

*Instituto De Prevision Militar v. Merrill Lynch*, 546 F.3d 1340 (11th
Cir. 2008).......................................................................................5, 6

*Intellicig USA, LLC v. CN Creative Ltd.*, No. 1:15-CV-1832-AT, 2017
WL 11634374 (N.D. Ga. Mar. 6, 2017) .........................................................20, 21

*K.T. v. Royal Caribbean Cruises, Ltd.*, 931 F.3d 1041 (11th Cir. 2019) .............1, 2

*Longino v. Bank of Ellijay*, 228 Ga. App. 37 (1997).................................................14

*Medley v. Boomershine Pontiac-GMC Truck, Inc.*, 214 Ga. App. 795 (1994) ........................................................................................................................7

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, 547 U.S. 71 (2006) ........................................................................................................................2

*Morgan v. Fellini's Pizza, Inc.*, 64 F. Supp. 2d 1304 (N.D. Ga. 1999)....................7

*PHL Variable Ins. Co. v. Faye Keith Jolly Irrevocable Life Ins. Tr. ex. Rel. Shapiro*, 460 F. App'x 899 (11th Cir. 2012)...................................................20

*PHL Variable Ins. Co. v. Jolly*, 800 F. Supp. 2d 1205 (N.D. Ga. 2011)...........20, 21

*Purchasing Power, LLC v. Bluestem Brand, Inc.*, No. 1:12-CV-00258-WSD, 2012 WL 3065419 (N.D. Ga. July 27, 2012) ...............................................25

*Rosen v. Protective Life Ins. Co.*, 817 F. Supp. 2d 1357 (N.D. Ga. 2011)...........................................................................................................................11

*Rosen v. Protective Life Ins. Co.*, 2010 WL 2014657 (N.D. Ga. May 20, 2020)......................................................................................................................10

*Sec. State Bank v. Visiting Nurses Ass'n of Telfair Cty., Inc.*, 256 Ga. App. 374 (2002)...................................................................................................9

*Sevcech v. Ingles Markets, Inc.*, 222 Ga. App. 221 (1996) ...................................8, 9

*Siavage v. Gandy*, 350 Ga. App. 562 (2019)..........................................................23

*Stroman v. Bank of Am. Corp.*, 852 F. Supp. 2d 1366 (N.D. Ga. 2012) ................24

*Thomas v. Town of Davie*, 847 F.2d 771 (11th Cir. 1988).....................................25

*TMX Fin., LLC v. Goldsmith*, 352 Ga. App. 190 (2019).........................................24

*United States v. Beasley*, 72 F.3d 1518 (11th Cir. 1996) .......................................10

*United States v. Starrett*, 55 F.3d 1525 (11th Cir. 1995).......................................10

*United States v. Turkette*, 452 U.S. 576 (1981) ......................................................... 16

**Statutes**

15 U.S.C. § 78bb(f)(1) ................................................................................. 3, 4

18 U.S.C. § 1343 ........................................................................................ 13

O.C.G.A. § 10-5-20 ................................................................................... 13

O.C.G.A. § 10-6-52 ..................................................................................... 7

O.C.G.A. § 16-14-2(b) ................................................................................. 8

O.C.G.A. § 16-14-3(4) .......................................................................... 12, 13

O.C.G.A. § 16-14-3(5)(C) ......................................................................... 13

O.C.G.A. § 16-14-4(a) ....................................................................... 8, 10, 15

O.C.G.A. § 16-14-4(b) ............................................................................... 10

O.C.G.A. § 16-14-4(c) ............................................................................... 10

O.C.G.A. § 51-12-30 ................................................................................. 17

**Other Authorities**

Fed. R. Civ. P. 9(b) .............................................................................. 1, 24, 25

Fed. R. Civ. P. 12(b)(6) ........................................................................ 2, 20

Fed. R. Civ. P. 15(a) ................................................................................. 25

Fed. R. Civ. P. 56 ..................................................................................... 20

**INTRODUCTION**

Plaintiff properly pled claims for state RICO, negligent misrepresentation, procuring breach of fiduciary duty, negligent misrepresentation, and aiding and abetting fraud.  Defendant Oppenheimer & Co., Inc.'s ("Oppenheimer") motion to dismiss ignores controlling Supreme Court precedent and quibbles with the well pled allegations.  The Complaint's allegations are sufficiently detailed to give Oppenheimer notice of the claims against it, and Plaintiff has pled all fraud-based allegations with the requisite particularity to satisfy Rule 9(b).  Moreover, none of the arguments advanced by Oppenheimer warrant dismissal as a matter of law. Oppenheimer's attempt to distance itself from the Horizon ponzi scheme fails to pass muster.  As alleged in the Complaint, for eight of the thirteen years that the Horizon ponzi scheme was in existence, it was operated out of Oppenheimer's Atlanta branch office by an employee Oppenheimer was duty bound to monitor and supervise.  The Court should deny the Motion to Dismiss.

**ARGUMENT**

**I.     The motion to dismiss standard.**

A court must accept the factual allegations supporting a claim as true, construe them in the light most favorable to the plaintiff, and draw all reasonable inferences in plaintiff's favor.  *K.T. v. Royal Caribbean Cruises, Ltd.*, 931 F.3d 1041, 1043

(11th Cir. 2019). "A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a 'plausible' claim for relief." *In re Arby's Rest. Grp. Inc. Litig.*, 317 F. Supp. 3d 1222, 1223 (N.D. Ga. 2018) (citing *Bell Atl. v. Twombly*, 550 U.S. 544, 555-56 (2007)). "The plausibility standard requires that a plaintiff allege sufficient facts 'to raise a reasonable expectation that discovery will reveal evidence' that supports the plaintiff's claim." *Id*. at 1224 (quoting *Twombly*, 550 U.S. at 555). "A complaint may survive a motion to dismiss for failure to state a claim even if it is improbable that a plaintiff would be able to prove those facts and even if the possibility of recovery is extremely remote and unlikely." *Id*.

## II.     SLUSA does not preempt Plaintiff's state law claims.

Oppenheimer's argument that SLUSA preempts Plaintiff's state law claims is squarely rejected by the Supreme Court's 2014 controlling decision in *Chadbourne & Parke LLP v. Troice*, 571 U.S. 377 (2014) ("*Troice*").

SLUSA was enacted to ensure that class actions involving nationally traded securities proceed in federal court under federal securities law. *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, 547 U.S. 71 (2006). It accomplishes that by allowing for the removal of cases to federal court and limiting a plaintiff to federal causes of action. But SLUSA applies only to a "covered class action" where fraud

is alleged "in connection with the purchase or sale of a covered security."  15 U.S.C. § 78bb(f)(1) (defining "covered security").  Congress defined "'covered security' narrowly to include only securities traded on a national exchange." *Troice*, 571 U.S. at 380–81.

The security purchased by Plaintiff was a non-managing membership interest in the Georgia limited liability company called Horizon Private Equity, III, LLC ("Horizon").  *See* Complaint [Doc. 1] ("Compl."), ¶¶ 23, 32.  Oppenheimer does not argue that Horizon is a "covered security."  Oppenheimer contends that SLUSA applies because the alleged fraudsters represented to Plaintiff that Horizon itself would use the proceeds to purchase a range of investments including stocks and government bonds.  Def's Brief [Doc. 50-1], pp. 7-8.[1]  This theory of preemption was squarely rejected by the Supreme Court in *Troice*.

*Troice* arose out of the multi-billion dollar ponzi scheme operated by Allen Stanford.  There, plaintiffs alleged that they invested in uncovered securities, namely high interest-bearing Certificates of Deposit ("CDs"), while being assured that the

---

[1] Plaintiff alleges only that it was "assured by Woods that the investment was guaranteed, that he would be paid a steady rate of interest, and that he could redeem his investment at any time with notice.  Compl., ¶ 33.  The *Troice* decision makes clear that SLUSA preemption does not apply even assuming, *arguendo*, Plaintiff was told that Horizon would be investing in covered securities such as stocks or government bonds.

bank would be investing in "a well-diversified portfolio of highly marketable securities issued by stable governments, strong multinational companies and major international banks." *Id*. at 395-97.  The district court recognized that the CDs were not "covered securities" under SLUSA.  But the district court noted that each complaint in one way or another alleged that the fraud included misrepresentations that the bank maintained significant holdings in highly marketable securities issued by stable governments and strong multinational companies, and that the bank's ownership of these "covered" securities made investments in the uncovered certificates more secure.  *Id*. at 385-86 (internal citations omitted).  The court concluded that this circumstance provided the requisite statutory "connection" between (1) the plaintiffs' state-law fraud claims, and (2) "transactions in covered securities."  The district court thus dismissed the class actions under the Litigation Act. *Id.*

The Fifth Circuit reversed.  In affirming the Fifth Circuit, the Supreme Court posed the question as follows:

> The question before us concerns the scope of the Litigation Act's phrase "misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security."  § 78bb(f)(1)(A).  How broad is that scope?  Does it extend further than misrepresentations that are material to the purchase or sale of a covered security?
>
> In our view, the scope of this language does not extend further.  To put the matter more specifically: A fraudulent misrepresentation or

> omission is not made "in connection with" such a "purchase or sale of
> a covered security" unless it is material to a decision by one or more
> individuals (other than the fraudster) to buy or to sell a "covered
> security."

*Id*. at 386–87.

In *Troice*, the Supreme Court specifically rejected SLUSA preemption where
the "fraudulent assurances" pertained to "fraudulent assurances that the Bank
owned, would own, or would use the victims' money to buy *for itself* shares of
covered securities."  *Id*. at 386–87.  This is the very same situation presented by the
facts here.  Here, Plaintiff does not allege that it ever intended to take, try to take, or
divest any covered security.  The Supreme Court distinguished its previous decisions
applying the "in connection with" language:

> [E]very securities case in which this Court has found a fraud to be "in
> connection with" a purchase or sale of a security has involved victims
> who took, who tried to take, who divested themselves of, who tried to
> divest themselves of, or who maintained *an ownership interest* in
> financial instruments that fall within the relevant statutory definition.

*Id*. at 388.

Here, as in *Troice*, the Plaintiff never intended to divest or take an ownership
interest in *any* covered security.  Nor does the Complaint even allege that John
Woods intended to purchase any specific covered security.  *Instituto De Prevision
Militar v. Merrill Lynch*, 546 F.3d 1340, 1342-43 (11th Cir. 2008), cited by
Oppenheimer, falls squarely within the types of cases the Supreme Court

distinguished from *Troice*.  Def's Brief, p. 7.  The plaintiff in *Instituto* transferred over $7.7 million to Merrill Lynch expecting that the funds would be invested in covered securities (mutual funds).  Thus, Instituto intended to maintain an ownership interest in a covered security.  Here, in contrast, as in *Troice*, the Plaintiff never intended to divest or take an ownership interest in any covered security.  For the foregoing reasons, SLUSA does not preempt Plaintiff's state law claims.

## III.   Plaintiff has adequately pled a claim arising under Georgia RICO.

### A.   Oppenheimer is vicariously liable for the Georgia RICO violations committed by its employees.

Georgia's RICO statute holds employers vicariously liable where "the employer's board of directors or managerial official, acting within the scope of that person's employment, authorized, requested, commanded, performed, or recklessly tolerated the employee's acts."  *Duvall v. Cronic*, 347 Ga. App. 763, 775 (2018). Oppenheimer argues it cannot be vicariously liable because (1) John Woods was not employed by Oppenheimer at the time *this Plaintiff* made his investment in the ponzi scheme; and (2) because Oppenheimer did not derive some benefit from the scheme. Def's Brief, pp. 9-10.

**Date of Employment.**   Neither of the legal authorities cited by Plaintiff pertaining to the date of employment were decided under federal or Georgia RICO. *See* Def's Brief, pp. 9-10 (citing *Cummings v. Walsh Const. Co.*, 561 F. Supp. 872

(S.D. Ga. 1983) (dismissing state/federal claims for sexual discrimination and harassment); *Farzaneh v. Merit Const. Co.*, 309 Ga. App. 637, 639 (2011) (employer not responsible for injuries sustained by motorist after accident with employee commuting to work on personal time).   And, neither *Cummings* nor *Farzaneh* addressed the situation of acts that took place outside the dates of employment.

The Complaint here alleges ongoing conduct that started in 2008, while John Woods, Jim Woods, and Mike Mooney were employed by Oppenheimer, and continued unabated until 2021.  The Complaint alleges that Oppenheimer was aware of and ratified these acts and intentionally hid the bad acts from the investing public and regulators.  Georgia law provides that "an employer who possesses or who is possessed of knowledge of the employee's behavior and fails to correct such conduct essentially ratifies his employee's acts and may be held liable therefor."  *Morgan v. Fellini's Pizza, Inc.*, 64 F. Supp. 2d 1304, 1316 (N.D. Ga. 1999).  Ratification can be express or implied from the acts or silence of the principal.  O.C.G.A. § 10-6-52. "Whether ratification occurred is usually a question for the jury and not a question of law for the court."  *Medley v. Boomershine Pontiac-GMC Truck, Inc.*, 214 Ga. App. 795, 798 (1994) (internal citations omitted).

The Georgia Court of Appeals has imposed vicarious liability on corporations for actions that took place outside the dates of employment where the prior activities

of the criminal provided benefits to the corporation.  *See, e.g., Cobb Cty. v. Jones Grp. P.L.C.*, 218 Ga. App. 149 (1995) ("*Jones Group*").  In *Jones Group*, a corporate defendant moved for summary judgment with respect to acts that took place prior to their incorporation.  In affirming the denial of summary judgment, the Court of Appeals held:

> Enviroquip and Escor contend the trial court erred in denying their motion for partial summary judgment, in which they asserted that they could not be held responsible for any racketeering activity prior to their incorporation in 1987.  However, if, as alleged, Walton's racketeering activity, completed prior to 1987, provided benefits to Enviroquip and Escor, then they engaged in prohibited activities as outlined in OCGA § 16-14-4(a).

*Jones Group*, 218 Ga. App. at 153.

**Allegations that Oppenheimer Obtained Some Pecuniary Value.** O.C.G.A. § 16-14-2(b) provides that the Act applies "to an interrelated pattern of criminal activity motivated by or the effect of which is pecuniary gain or economic or physical threat or injury."  Georgia courts impose vicarious liability where the employer had "anything to gain, pecuniary or otherwise," from the activity.  *See, e.g., Sevcech v. Ingles Markets, Inc.*, 222 Ga. App. 221, 223 (1996).

The *Security State* decision cited by Oppenheimer was not decided under the motion to dismiss standard.  There, the Court of Appeals affirmed an order granting summary judgment to the defendant after discovery revealed "absolutely no

evidence that the bank profited" from the crimes.  *Sec. State Bank v. Visiting Nurses Ass'n of Telfair Cty., Inc.*, 256 Ga. App. 374, 375 (2002).

Here, in contrast, the court is addressing a motion to dismiss.  The Complaint alleges that Oppenheimer took actions "to protect itself from the substantial liability it knew it would face if it disclosed the selling away scheme."  Compl., ¶ 26.  Plaintiff expects discovery to further show that Oppenheimer (1) knew that it was facing substantial liability to its customers and regulators for the Horizon scheme and gained financially by representing that John Woods left in good standing; (2) obtained other commission and fees from Horizon customers for serving as custodian of Horizon investments; and (3) obtained other financial benefits by permitting John Woods, a large producer, to remain employed with Oppenheimer for eight years after he started the ponzi scheme.  The allegations here are far afield from other cases in which courts have found that an employer could not possibly have obtained some benefit from the activity.  *See, e.g., Sevcech*, 222 Ga. App. at 223 ("[W]e cannot conceive how Ingles or its employees had anything to gain, pecuniary or otherwise, from falsely accusing customers of shoplifting.").

### B.    Oppenheimer is liable as a conspirator.

The Complaint alleges that Oppenheimer is also liable under Georgia RICO's conspiracy provision.  O.C.G.A. § 16-14-4(c) ("It shall be unlawful for any person

to conspire or endeavor to violate any of the provisions of subsection (a) or (b) of this Code section.").  Oppenheimer argues that the Complaint fails to sufficiently allege that Oppenheimer entered into a conspiracy with John Woods and others involved in the Horizon ponzi scheme.  Def's Brief, p. 11 (citing *Rosen v. Protective Life Ins. Co.*, 2010 WL 2014657, at *8 (N.D. Ga. May 20, 2020)).

"A RICO conspiracy differs from an ordinary conspiracy in two respects: it need not embrace an overt act, and it is broader and may encompass a greater variety of conduct." *United States v. Starrett*, 55 F.3d 1525, 1543-44 (11th Cir. 1995).  To establish a RICO conspiracy, it need only be shown that the defendant "by his words or actions, objectively manifested an agreement to participate directly or indirectly in the affairs of an enterprise through a pattern of racketeering activity." *United States v. Beasley*, 72 F.3d 1518, 1526 (11th Cir. 1996).  And, "[c]onspiracy...does not require that one agree personally to be operator or manager; rather, one must knowingly agree to perform services of a kind which facilitate activities of those who are operating enterprise in illegal manner." *Brouwer v. Raffensperger, Hughes & Co.*, 199 F.3d 961, 967 (7th Cir. 2000).  Courts addressing civil conspiracy under the Georgia RICO Act have similarly explained that conspiracy liability exists where defendants "knowingly and willfully join a conspiracy which itself contains a

common plan or purpose to commit two or more predicate acts." *Rosen v. Protective Life Ins. Co.*, 817 F. Supp. 2d 1357, 1382-83 (N.D. Ga. 2011).

The facts alleged here go far beyond the "conclusory allegations and/or legal conclusions" referenced in Oppenheimer's cited decisions.  The Complaint here alleges (1) Oppenheimer became aware of the existence of John Woods' illegal ponzi scheme as early as 2015; (2) that Oppenheimer's managers were aware that John Woods was operating the ponzi scheme from adjoining offices and permitted him to move back and forth between the offices during work hours; (3) that "Oppenheimer facilitated the transfer of millions of dollars in customer funds to Horizon Private Equity"; and (4) that Oppenheimer "intentionally hid the fact that they had detected the wrongdoing" when completing the Form U-5 which required Oppenheimer to disclose whether John Woods was under investigation for violating securities statutes prior to his departure from the firm.  Compl., ¶ 37.  These allegations set forth a plausible claim for Oppenheimer to be held liable under conspiracy liability.

### C.    Oppenheimer has direct liability for violation of Georgia RICO.

Oppenheimer's attacks on the Complaint's allegations pertaining to direct liability under the Georgia RICO statute likewise fail.

### i.     The Complaint alleges a pattern of racketeering activity.

Plaintiff has plausibly alleged the "pattern of racketeering activity" required

to state a RICO claim.  O.C.G.A. § 16-14-3(4).  With respect to this element of

Georgia RICO, the Court of Appeals explains:

> Though it is true that a "pattern" for purposes of the Georgia RICO Act
> must consist of "at least two incidents of racketeering activity," this
> does not mean that *each* RICO defendant must commit at least two acts
> to come under the Act's prohibitions.  If defendants' argument were to
> prevail, a racketeer could escape liability by limiting his participation
> in the racketeering enterprise to a single act, even one as decisive as
> forging a signature or pulling a trigger.  Since the core purpose of the
> Act is to reach collective action, what matters is the existence of a
> pattern of criminal activity (including at least two interrelated acts) and
> each defendant's participation in that pattern, whether by one act or
> more.

*Faillace v. Columbus Bank & Tr. Co.*, 269 Ga. App. 866, 868–69 (2004) (internal

citations omitted).

This case is far broader than the filing by Oppenheimer of a single form.  The

Complaint alleges that the Horizon ponzi scheme was conceived and founded by an

employee in Oppenheimer's office they were duty bound to supervise; that for an

ongoing basis of eight years, Oppenheimer's management "actively aided" the ponzi

scheme's operators, including assisting the funneling of money to the Horizon ponzi

scheme; and that Oppenheimer worked "to conceal the Ponzi scheme from the

regulators and investing public."  Compl., Background to the Dispute.

These incidents form part of the same pattern of fraud and securities violations that harmed Plaintiff.  Plaintiff alleges more than four separate "incidents, schemes, or transactions" and "interrelated by distinguishing characteristics" - the use of falsehoods to sell interests in the Horizon ponzi scheme.  O.C.G.A. § 16-14-3(4). This pattern involves at least the RICO predicate acts of the offer for sale of unregistered securities, in violation of O.C.G.A. § 10-5-20, and wire fraud, in violation of 18 U.S.C. § 1343 (made a state RICO violation by O.C.G.A. § 16-14-3(5)(C)).  Thus, even if Oppenheimer were right that a state RICO claim cannot rest on a single transaction, Plaintiff has plausibly alleged the "pattern of racketeering activity" required to state a RICO claim.  O.C.G.A. § 16-14-3(4).

### ii.    The Complaint alleges pervasive racketeering activity by Oppenheimer.

Oppenheimer's argument that the Complaint "failed to allege any racketeering activity by Oppenheimer whatsoever" simply ignores the well pled allegations in the Complaint directed specifically at Oppenheimer.  See Compl., ¶¶ 34-40 (titled "Oppenheimer's Involvement in the Horizon Private Equity Ponzi Scheme").  The membership interests in Horizon were illegal, unregistered securities.  The Complaint sets forth in detail information in the public domain that gave Oppenheimer actual knowledge of the Horizon ponzi scheme.  *Id.*  It is properly pled that while John Woods was employed by Oppenheimer, it gave Woods and others

active assistance by permitting John Woods to walk back and forth between Oppenheimer and his other, illegal office space, and it is alleged that from "2008-present, Oppenheimer facilitated the transfer of millions of dollars in customer funds to Horizon Private Equity," and that Oppenheimer electronically filed a false and misleading Form U-5.  Compl., ¶ 37.  The Complaint also properly alleges the use of wires in furtherance of the Horizon ponzi scheme by Oppenheimer.

### iii.    The Complaint alleges that Plaintiff was the intended target of Oppenheimer's acts.

To satisfy the proximate cause element of RICO, Plaintiff must show that its injury flowed directly from at least one of the predicate acts.  *Longino v. Bank of Ellijay,* 228 Ga. App. 37, 41 (1997).  This requires that a plaintiff adequately plead that it was "the target" of the alleged scheme.  *Id*.  Plaintiff alleges facts sufficient to show that Oppenheimer's predicate acts were aimed at Plaintiff rather than a third party.  *Cf. Bivens Gardens Office Bldg. v. Barnett Banks of Florida,* 140 F.3d 898, 906 (11th Cir.1998) (noting that a shareholder or a limited partner in a company that was the target of the alleged RICO violation does not have standing to sue for the losses he sustained as a result of the racketeering activity against the company).  The Complaint here alleges that Oppenheimer and the ponzi scheme promoters engaged in illegal behavior to market and sell illegal securities, transfer funds to the illegal ponzi scheme, and hide the scheme from the investing public, including Plaintiff.

Accord *Faillace v. Columbus Bank & Tr. Co.*, 269 Ga. App. 866, 871 (2004) (bank that processed transactions, as well as credit card customers, were principal and direct targets of a telemarketing scheme).

###### iv. The Complaint alleges that Oppenheimer benefited from the illegal scheme.

O.C.G.A. § 16-14-4(a) does not require that Plaintiff prove that Oppenheimer made "money from Plaintiff's investment." Def's Brief, p. 20. The statute only provides that Oppenheimer "acquire or maintain, directly or indirectly, any interest in or control of any enterprise, real property, or personal property of any nature, including money." O.C.G.A. § 16-14-4(a). As noted in Section III(A), *supra*, the Complaint here alleges that Oppenheimer took actions "to protect itself from the substantial liability it knew it would face if it disclosed the selling away scheme." Compl., ¶ 26. Thus, Oppenheimer "maintained" "any interest in" "money" as a result of the scheme. And, Plaintiff expects discovery to further show that Oppenheimer (1) obtained other commission and fees from Horizon customers for serving as custodian of Horizon investments; and (2) obtained other financial benefits by permitting John Woods, a large producer, to remain employed with Oppenheimer for eight years while he ran the ponzi scheme.

### v.   The Complaint alleges that Oppenheimer participated in the enterprise.

Finally, Oppenheimer argues that the Complaint fails to adequately plead that it participated in an enterprise, stating that it would not "make sense for Oppenheimer to participate in a RICO enterprise with Woods." Def's Brief, pp. 20-21.

Oppenheimer's argument assumes it "makes sense" for *anyone* to participate in a RICO enterprise, and the Complaint does, in fact, sufficiently allege facts supporting a conclusion that Oppenheimer was part of "a group of persons associated together for a common purpose of engaging in a course of conduct." *United States v. Turkette*, 452 U.S. 576, 583. (1981). The Complaint alleges that at various times from 2008-2016, Oppenheimer was part of a group that included John Woods and other individuals selling interests in the ponzi scheme. The Complaint further alleges that "Oppenheimer facilitated the transfer of millions of dollars in customer funds to Horizon Private Equity" thus engaging with Woods in a course of conduct for a common purpose, i.e., to raise money for the ponzi scheme. These facts sufficiently allege an enterprise under RICO.

**IV.   Plaintiff has adequately pled a claim for procurement of breach of fiduciary duty.**

Georgia law recognizes a cause of action for procuring a breach of fiduciary duty upon proof of the following:

> (1) through improper action or wrongful conduct and without privilege, the defendant acted to procure a breach of the primary wrongdoer's fiduciary duty to the plaintiff; (2) with knowledge that the primary wrongdoer owed the plaintiff a fiduciary duty, the defendant acted purposely and with malice and the intent to injure; (3) the defendant's wrongful conduct procured a breach of the primary wrongdoer's fiduciary duty; and (4) the defendant's tortious conduct proximately caused damage to the plaintiff.

*Insight Tech., Inc. v. FreightCheck, LLC*, 280 Ga. App. 19, 25–26 (2006) (citations omitted) ("*Insight*").  The elements of this claim are the same "regardless of whether denominated 'aiding and abetting a breach of fiduciary duty,' 'procuring a breach of fiduciary duty,' or 'tortious interference with a fiduciary relationship.'" *Id*. at 25.

Oppenheimer contends that "there are no plausible factual allegations that Oppenheimer advised, counseled, persuaded, or commanded Woods to steal Plaintiff's money."  Def's Brief, p. 22 (citing *Curry v. TD Ameritrade, Inc.*, No. 1:14-CV-1361-LMM, 2015 WL 11251449, at *14 (N.D. Ga. June 30, 2015)).  The quote in *Curry* was taken from the *Insight* decision, in which the Court of Appeals explained:

> "[P]rocure" as ... used [in OCGA § 51-12-30], does not require the lending of assistance in the actual perpetration of the wrong done by

> another; but if one, acting only through advice, counsel, persuasion, or command, succeeds in procuring any person to commit an actionable wrong, the procurer becomes liable for the injury, either singly or jointly, with the actual perpetrator.

*Insight*, 280 Ga. App. at 26.

Oppenheimer's argument simply ignores the well pled allegations in the Complaint which, construed favorably to Plaintiff, set forth a viable cause of action against Oppenheimer for procuring John Woods' breach of fiduciary duty to Plaintiff and the class. The Complaint alleges that Woods "was an investment adviser at Oppenheimer at all times from January 2003 through December 31, 2016; that during this time period Woods "founded [Horizon] and began illegally marketing the unapproved [Horizon] security to Oppenheimer's customers as well as the investing public"; that "Woods made no effort to hide his scheme from Oppenheimer"; and that "Oppenheimer's management actively aided Woods, his brother James Wallace Woods ("Jim Woods"), and his cousin Michael J. Mooney ("Mooney") (all of whom were investment advisers in Oppenheimer's Atlanta branch office) in funneling investor money into the Horizon Private Equity Ponzi scheme." Compl., Background to the Dispute. The Complaint further alleges that Oppenheimer "took steps to conceal the Ponzi scheme" when Woods departed Oppenheimer and failed to comply with its duty to update Woods' public record for years while he continued to raise money for Horizon from Plaintiff and other

investors.  These allegations raise a reasonable expectation that discovery will reveal evidence that supports this claim.

## V.    Plaintiff has adequately pled a claim for negligent misrepresentation.

Oppenheimer also seeks dismissal of Plaintiff's claim for negligent misrepresentation.  Compl., ¶¶ 87-100.  "The essential elements of a claim of negligent misrepresentation are (1) the defendant's negligent supply of false information to foreseeable persons, known or unknown; (2) such persons' reasonable reliance upon that false information; and (3) economic injury proximately resulting from such reliance."  *Home Depot U.S.A., Inc. v. Wabash Nat. Corp.*, 314 Ga. App. 360, 367 (2012).

Oppenheimer seeks dismissal because "Plaintiff does not allege any misrepresentation by Oppenheimer" but instead "merely alleges that Oppenheimer should have disclosed more in the Form U-5." Def's Brief, pp. 23-24.  This argument ignores the actual allegations set forth in the Complaint, viewed in a light most favorable to Plaintiff.  The Complaint alleges that Oppenheimer negligently supplied false information to Plaintiff and the class when (1) Oppenheimer completed the Form U-5 stating that John Woods was not "under internal review for fraud or wrongful taking of property, or violating investment-related statutes, regulations, rules or industry standards of conduct"; (2) Oppenheimer completed the

19

Form U-5 stating positively that John Woods had not "voluntarily resigned, or was permitted to resign, after allegations were made that he violated 'investment-related statutes, regulations, rules or industry standards of conduct'"; and when (3) Oppenheimer failed in its duty to "amend and update Woods' Form U-5, which would have publicly disclosed the wrongdoing to the regulators and the public." Compl., ¶ 90.   The Complaint does not allege that Oppenheimer should have disclosed *more*; it alleges that Oppenheimer affirmatively represented to Plaintiff and the investing public that Woods had resigned free of any internal investigations or allegations of wrongdoing despite Oppenheimer having actual knowledge of the falsity of the information.

The authority relied on by Oppenheimer is easily distinguishable.[2]  *Jolly*, a case in which an insurance company sued the Trustee of a life insurance trust concerning representations made in a policy application, was decided under Rule 56's summary judgment standard, not under Rule 12(b)(6).  On summary judgment, after reviewing the evidence, the court concluded:

---

[2] Def's Brief, p. 23 (citing *PHL Variable Ins. Co. v. Jolly*, 800 F. Supp. 2d 1205, 1214 (N.D. Ga. 2011), *aff'd sub nom. PHL Variable Ins. Co. v. Faye Keith Jolly Irrevocable Life Ins. Tr. ex rel. Shapiro*, 460 F. App'x 899 (11th Cir. 2012) ("*Jolly*") and *Intellicig USA, LLC v. CN Creative Ltd.*, No. 1:15-CV-1832-AT, 2017 WL 11634374, at *7 (N.D. Ga. Mar. 6, 2017) ("*Intellicig*").

> The Trustee did not affirmatively verify the stated amount of the insured's net worth and income. The Trust only represented that the information supplied by Jolly was true "to the best knowledge and belief of" the Trust. The Eleventh Circuit squarely has held that this same limiting language in an insurance application requires that the truth of the applicant's representations in the application be determined by what the applicant "believed to be true" when he signed the application. *See, Sands,* 912 F.2d at 1363. Plaintiff fails to point the court to any evidence that when the Trustee signed the Application, he either believed that Jolly's statements in the application about his net worth and income were untrue or had knowledge of facts which clearly contradicted the truth of the statements made in the Application.

*Jolly*, 800 F. Supp. 2d at 1214. The unique facts presented in *Jolly*, involving use of the phrase "to the best knowledge and belief of" in an insurance application, has no relevance to this case.

In dismissing a negligent misrepresentation claim in *Intellicig*, the court held that the plaintiff had provided no evidence of reasonable reliance on "affirmative representations regarding the existence of a five year agreement." *Intellicig*, 2017 WL 11634374, at *7. The court also dismissed a claim that the defendants failed to disclose merger negotiations with a third party. In doing so, the court explained "Plaintiffs do not allege that Creative made any representations about the continued viability or independence of the company, let alone any false representations of that nature, so the Court cannot infer that Creative supplied Plaintiffs with any false information regarding merger negotiations." *Id*. at *8. In contrast, the Complaint here alleges that Oppenheimer supplied Plaintiff with false information concerning

John Woods when it completed the Form U-5, that Plaintiff reasonably relied on the false information (Compl., ¶ 90), and that "in reliance on these representations, Plaintiff and the class were induced to incur, and did incur, damages" (Compl., ¶ 98).

Oppenheimer also argues that the Complaint fails to allege the "'who, what, when, where, and how' of any purported misrepresentations by Oppenheimer" and that "Plaintiff does not allege any circumstances about submission of the Form U-5, why any particular information on that form was supposedly false, or how it influenced Plaintiff to invest with Woods." Def's Brief, p. 24. This argument cannot be squared with the actual allegations in the Complaint. Plaintiff alleges that ***Oppenheimer*** provided the false information "within thirty (30) days of [John Woods'] employment end date" ***in "December 2016***." Compl., Background to the Dispute and ¶ 88. The Complaint alleges that Oppenheimer was "asked whether Woods voluntarily resigned, or was permitted to resign, after allegations were made that he had violated investment-related statutes, regulations, rules or industry standards of conduct." Compl., ¶ 90. The Complaint alleges that Oppenheimer had "actual knowledge that Woods was engaged in a selling away scheme" (Compl., ¶ 91) and that Oppenheimer's representation that Woods had resigned free of any internal investigations or allegations of wrongdoing was relied on by Plaintiff and

the class when making their decision to conduct business with John Woods (Compl., ¶ 93).[3]

Lastly, Oppenheimer seeks to add another element to the cause of action by claiming that it must have "submitted the Form U5 to FINRA with the desire to induce Plaintiff, or anyone else, to invest." Def's Brief, p. 25. Georgia law requires no such thing. Oppenheimer was aware that the investing public relies on the information provided on the Form U-5 when investing, and the Complaint further explains that John Woods Form ADV, which he is required to provide to all advisory clients on an annual basis, contained the information provided by Oppenheimer to the investing public. Compl., ¶ 93.

## VI.   Plaintiff has adequately pled a claim for aiding and abetting fraud.

Georgia courts have *not* held that there is no liability under Georgia law for aiding and abetting fraud as Oppenheimer contends. Def's Brief, p. 25 (citing *Siavage v. Gandy*, 350 Ga. App. 562, 565–67 (2019)). Rather, Georgia courts "find no significant distinction between aiding and abetting fraud as a separate tort and committing the tort of fraud as a joint tortfeasor." *Id.* Fraud requires "a false representation by a defendant, scienter, intention to induce the plaintiff to act or

---

[3] Oppenheimer's argument that "Plaintiff invested because of Woods' promises, not the Form U-5," is worthy of closing argument, but ignores the well pled allegations in the Complaint. Def's Brief, p. 24.

refrain from acting, justifiable reliance by plaintiff, and damage to plaintiff." *TMX Fin., LLC v. Goldsmith*, 352 Ga. App. 190, 203 (2019).  Further, "although fraud must be pled with particularity," "a complaint alleging fraud should not be dismissed for failure to state a claim unless it appears beyond a doubt that the pleader can prove no set of facts in support of his claim which would entitle him to relief."  *Id*.

Oppenheimer's legal support, *Stroman v. Bank of Am. Corp.*, 852 F. Supp. 2d 1366 (N.D. Ga. 2012), is illustrative.  There, the district court dismissed plaintiff's fraud claim finding that "Plaintiff's fraud claim is pled in an entirely conclusory manner, with no specific reference to any affirmative misrepresentations.  *Id*. at 1381.  Here, in contrast, Plaintiff has supplied the "who, what, when, where and why" of fraud consistent with Rule 9(b).  As discussed more fully in Section V, *supra*, the Complaint alleges that on or about December 2016, Oppenheimer represented that John Woods was not "under internal review for fraud or wrongful taking of property, or violating investment-related statutes, regulations, rules or industry standards of conduct" and that John Woods had not "voluntarily resigned, or was permitted to resign, after allegations were made that he violated 'investment-related statutes, regulations, rules or industry standards of conduct.'"  Compl., ¶ 90. The Complaint alleges that Plaintiff and the class reasonably relied on Woods'

public securities record in deciding to invest in Horizon and that they were damaged as a result.  These allegations satisfy Rule 9(b).

## VII.  Plaintiff has adequately pled a claim for punitive damages/attorneys' fees.

As Plaintiff has adequately pled substantive legal claims against Oppenheimer, Plaintiff has a legal basis for pursuing punitive damages and/or attorneys' fees against Oppenheimer.

## VIII.  If necessary, Plaintiff requests that the Court grant it leave to amend.

In the event the Court finds any pleading deficiencies in the Complaint, Plaintiff respectfully requests that the Court grant it leave to amend the complaint to address any such deficiencies forty-five (45) days after the Court's order ruling on Defendant's motion to dismiss.   "The Court normally grants a plaintiff the opportunity to amend before dismissing claims in a complaint for pleading defects." *Purchasing Power, LLC v. Bluestem Brands, Inc.*, No. 1:12-CV-00258-WSD, 2012 WL 3065419, at *7 (N.D. Ga. July 27, 2012) (granting leave to amend to address Rule 9(b) pleading deficiencies); *Thomas v. Town of Davie,* 847 F.2d 771, 773 (11th Cir. 1988) (A district court's discretion to dismiss a complaint without leave to amend "is 'severely restrict[ed]' by Fed. R. Civ. P. 15(a), which directs that leave to amend 'shall be freely given when justice so requires.'").

## CONCLUSION

Plaintiff respectfully requests that the Court deny the Motion to Dismiss in its entirety.  In the alternative, Plaintiff requests that the Court grant leave to amend.

Respectfully submitted this 20th day of December, 2021.

**THE LAW OFFICE OF CRAIG KUGLAR, LLC**

 /s/ Craig H. Kuglar
CRAIG H. KUGLAR, ESQ.
Georgia Bar No. 429968
The Law Office of Craig Kuglar, LLC
931 Monroe Drive NE, Suite A102-353
Atlanta, Georgia  30308
TEL (404) 432-4448
FAX (404) 393-8007
ck@kuglarlaw.com

**CHAPMAN ALBIN LLC**
JOHN S. CHAPMAN, ESQ.
*Admitted pro hac vice*
jchapman@chapmanlegal.com
JASON T. ALBIN, ESQ.
*Admitted pro hac vice*
jalbin@chapmanlegal.com
PHILIP L. VUJANOV, ESQ.
*Admitted pro hac vice*
pvujanov@chapmanlegal.com
Chapman Albin LLC
700 West St. Clair Avenue
Suite 200
Cleveland, Ohio  44113
TEL (216) 241-8172
FAX (216) 241-8175

*Attorneys for Plaintiffs*

## <u>LOCAL RULE 7.1D CERTIFICATION</u>

This is to certify that the foregoing pleading complies with the font and

margin specifications set forth in Local Rule 5.1B.  The font used is Times New

Roman, 14 point.

        /s/ Craig H. Kuglar

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| 6694 Dawson Blvd, LLC, Individually and on Behalf of a Class of Similarly Situated Persons, <br><br> Plaintiff, <br><br> vs. <br><br> Oppenheimer & Co., Inc., James Wallace Woods, Michael J. Mooney, Britt Wright, William V. Conn, Jr., Conn & Co. Tax Practice, LLC, Conn & Company Consulting, LLC, and Kathleen Lloyd, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) )   CIVIL ACTION FILE <br> NO. 1:21-cv-03625-SDG |

## CERTIFICATE OF SERVICE

I certify that I electronically filed the foregoing pleading with the Clerk of Court using the CM/ECF system, which will automatically send electronic mail notification of such filing to all counsel of record.

This 20th day of December, 2021.


_____/s/ Craig H. Kuglar_____