# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

6994 Dawson Blvd, LLC, Individually
and on Behalf of a Class of Similarly
Situated Persons,

       Plaintiff,

vs.

                                         Civil Action No. 1:21-cv-3625-SDG

Oppenheimer & Co., Inc., James Wallace
Woods, Michael J. Mooney, Britt
Wright, William V. Conn, Jr., Conn &
Co. Tax Practice, LLC, Conn &
Company Consulting, LLC, and
Kathleen Lloyd,

       Defendants.

---

## REPLY OF OPPENHEIMER & CO. INC. IN SUPPORT OF
## <u>MOTION TO DISMISS</u>

J. Gordon Cooney, Jr.
*Admitted pro hac vice*
**Morgan, Lewis & Bockius LLP**
1701 Market Street
Philadelphia, PA 19103-2921
(213) 612.2500 (Telephone)
(213) 612.2501 (Facsimile)
gordon.cooney@morganlewis.com

Brian M. Ercole
*Admitted pro hac vice*

Frank M. Lowrey IV
Georgia Bar No. 410310
**Bondurant Mixson & Elmore, LLP**
1201 West Peachtree St NW
Suite 3900
Atlanta, GA 30309
(404) 881-4100 (Telephone)
(404) 881-4111 (Facsimile)
lowrey@bmelaw.com

**Morgan, Lewis & Bockius LLP**
600 Brickell Avenue, Suite 1600
Miami, Florida 33131-3075
(305) 415.3000 (Telephone)
(305) 415.3001 (Facsimile)
brian.ercole@morganlewis.com

*Counsel for Defendant Oppenheimer & Co. Inc.*

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ...........................................................................................1

II.   ARGUMENT.................................................................................................2

    A.    SLUSA Applies And Plaintiff's Allegations Fall Outside Of
        *Troice*.......................................................................................................2

    B.    Plaintiff's RICO Claims Against Oppenheimer Fail. ..........................4

        1.    No Vicarious Liability For Woods's Conduct..........................4

        2.    No Direct RICO Liability Against Oppenheimer.....................8

    C.    Plaintiff's Conclusory Allegations Cannot Support A Claim For
        Conspiracy Or Procurement Of A Breach of Fiduciary Duty............12

    D.    Plaintiff's Negligent Misrepresentation Claim Fails. .......................12

    E.    Plaintiff's Aiding And Abetting Fraud Claim Fails...........................14

    F.    Plaintiff's Request To Amend Should Be Denied. ............................15

III.  CONCLUSION............................................................................................15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Almanza v. United Airlines, Inc.*,
    851 F.3d 1060 (11th Cir. 2017) ..........................................................................8

*Anza v. Ideal Steel Supply Corp.*,
    547 U.S. 451 (2006).........................................................................................10

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007).....................................................................................8, 11

*State of Ga. ex rel. Bowers v. Dairymen, Inc.*,
    813 F. Supp. 1580 (S.D. Ga. 1991) .................................................................11

*Chadbourne & Parke LLP v. Troice*,
    571 U.S. 377 (2014).................................................................................2, 3, 4

*Cisneros v. Petland, Inc.*,
    972 F.3d 1204 (11th Cir. 2020) .................................................................10, 11

*Clark v. Sec. Life Ins. Co. of Am.*,
    509 S.E.2d 602 (Ga. 1998) ................................................................................6

*Cobb Cnty. v. Jones Grp. P.L.C.*,
    460 S.E.2d 516 (Ga. App. 1995) .......................................................................5

*Gaskins v. Gaona*,
    433 S.E.2d 408 (Ga. App. 1993) .......................................................................5

*In re Harbinger Cap. Partners Funds Inv. Litig.*,
    2014 WL 3694991 (S.D.N.Y. July 7, 2014).....................................................4

*In re Herald*,
    753 F.3d 110 (2d Cir. 2014) ..............................................................................4

*Instituto De Prevision Militar v. Merrill Lynch*,
    546 F.3d 1340 (11th Cir. 2008) .........................................................................3

*Intellicig USA, LLC v. CN Creative Ltd.*,
  2017 WL 11634374 (N.D. Ga. Mar. 6, 2017) .....................................13

*J & R Mktg., SEP v. Gen. Motors Corp.*,
  549 F.3d 384 (6th Cir. 2008) ..............................................................2

*In re Kingate Mgmt. Ltd. Litig.*,
  784 F.3d 128 (2d Cir. 2015) ...............................................................4

*Luis v. RBC Cap. Markets, LLC*,
  401 F. Supp. 3d 817 (D. Minn. 2019), *aff'd*, 984 F.3d 575 (8th Cir.
  2020) ...............................................................................................13

*Marchak v. JPMorgan Chase & Co.*,
  84 F. Supp. 3d 197 (E.D.N.Y. 2015) ....................................................4

*McCullough v. Nat'l Ass'n of Cntys*,
  2011 WL 13257578 (M.D. Fla. Nov. 28, 2011)...................................15

*Piedmont Hosp., Inc. v. Palladino*,
  580 S.E.2d 215 (Ga. 2003) ................................................................7

*Ray v. Spirit Airlines, Inc.*,
  836 F.3d 1340 (11th Cir. 2016) .........................................................10

*Rosen v. Protective Life Ins. Co.*,
  2010 WL 2014657 (N.D. Ga. May 20, 2010)...................................7, 8

*Sevcech v. Ingles Markets, Inc.*,
  474 S.E.2d 4 (Ga. App. 1996) ...........................................................7

*Smith v. Copeland*,
  2010 WL 2104667 (N.D. Ga. May 21, 2010).......................................6

*Stroman v. Bank of Am. Corp.*,
  852 F. Supp. 2d 1366 (N.D. Ga. 2012)..............................................15

*Todd v. LG Chem, Ltd.*,
  2021 WL 913941 (N.D. Ga. Mar. 10, 2021) (Grimberg, J.) ...............15

*Townsend v. Bayview Loan Serv., LLC*,
    2015 WL 11457697 (N.D. Ga. Jan. 15, 2015)................................................9, 14

*Williams Gen. Corp. v. Stone*,
    632 S.E.2d 376 (Ga. 2006) ..................................................................................6

**Statutes**

18 U.S.C. § 1957 ...........................................................................................................9

O.C.G.A. § 16-14-3(5)(A) .............................................................................................9

**Other Authorities**

Fed. R. Civ. P. 9(b) ..................................................................................................9, 10

## I.    <u>INTRODUCTION</u>

As its Opposition (ECF No. 64) makes clear, Plaintiff seeks to impose sweeping liability on Oppenheimer based on the allegation that Woods's personal Ponzi Scheme—operated from a company unaffiliated with Oppenheimer—started when Woods worked at Oppenheimer.  This theory is legally insufficient.  Plaintiff had no contact with Oppenheimer, Oppenheimer did not engage in any conduct Plaintiff relied on, and Plaintiff made no investment and had no interaction with Woods until years after Woods left Oppenheimer.  All claims should be dismissed.

***SLUSA Preclusion***.  Plaintiff does not dispute that government bonds and stocks are "covered securities" under SLUSA, but wholly ignores its own allegation that Woods "falsely and fraudulently . . . represented [to investors] that their money would be invested in 'government bonds, stocks, or small real estate projects.'" (Compl. ¶ 30.)  This allegation triggers SLUSA preclusion and bars the entire action.

***No Derivative Liability***.  There is no dispute Woods left Oppenheimer ***years*** before Plaintiff purchased securities from him.  And Plaintiff pleads no facts to support a conspiracy claim against Oppenheimer.  The Complaint fails to plead derivative liability against Oppenheimer based upon Woods's conduct.

***No Direct Liability***.  In seeking to impose direct liability, Plaintiff points to alleged conduct by Oppenheimer that does not qualify as tortious (much less

racketeering) activity, such as "permitting John Woods to walk back and forth between Oppenheimer and his other, illegal office space." (Opp'n 14.) Plaintiff also ignores case law holding that an alleged violation of a FINRA rule cannot support a state law claim. And Plaintiff makes no effort to allege facts showing causation between Oppenheimer's alleged conduct and Plaintiff's loss, much less dispute that any causal chain is too attenuated under controlling case law.

At most, the Opposition cites allegations regarding Oppenheimer's conduct long before **_Plaintiff_** invested with Woods and not causally linked to Plaintiff's alleged loss. And only Plaintiff's claims are before the Court now. "If it is found, prior to class certification, that the named plaintiffs' individual claims are without merit, then dismissal is proper." *J & R Mktg., SEP v. Gen. Motors Corp.*, 549 F.3d 384, 390 (6th Cir. 2008). Dismissal is warranted here.

## II.   ARGUMENT

### A.   SLUSA Applies And Plaintiff's Allegations Fall Outside Of *Troice*.

Plaintiff does not dispute three of the four SLUSA preclusion elements,[1] arguing only that the alleged misrepresentations were not made "in connection with" the purchase or sale of a covered security. (Opp'n 2–6.) Plaintiff ignores its own

---

[1]   Plaintiff does not dispute that (1) this case is a "covered class action," (2) it asserts state law cause of actions, and (3) government bonds and stocks are "covered securities." (Br. ISO Mot. To Dismiss ("Br."), ECF No. 50-1, at 6–8.)

allegation that Woods "represented [to investors] that their money would be invested in 'government bonds, stocks, or small real estate projects.'"  (Compl. ¶ 30.)  Since there is no dispute that government bonds and stocks are "covered securities," SLUSA applies.  (Br. 6–8.)

Plaintiff relies entirely on *Troice*, where defendants sold certificates of bank deposits ("CDs"), a "debt asset[]" with a "fixed rate of return," and not a covered security.  *Chadbourne & Parke LLP v. Troice*, 571 U.S. 377, 384 (2014).  Defendants misrepresented that the bank "would use [investors'] money to buy *for itself* shares of covered securities"—in other words, that the CDs were "backed by" securities owned by the bank.  *Id.* at 381, 396 (emphasis in original).  SLUSA did not apply because the complaints alleged "misrepresentations about the *Bank's* ownership of covered securities"—not about *investors*' investment in covered securities.  *Id.* at 396 (emphasis in original).

By contrast, Plaintiff alleges that Woods fraudulently told investors that "*their* money would be invested" directly in covered securities.  (Compl. ¶ 30; *accord* p. 3 (emphasis added).)  As a matter of law, "[w]hat control[s]" is how the product "was *marketed* to the investor, not what the defendant actually did with the investor's money."  *Instituto De Prevision Militar v. Merrill Lynch*, 546 F.3d 1340, 1352 (11th Cir. 2008).  The allegation that Woods claimed Plaintiff's money would be directly

3

invested in covered securities, even if not true, brings this case within SLUSA.

Plaintiff argues that *Troice* applies because Plaintiff invested in Horizon Private Equity ("Horizon") and Woods "represented to Plaintiff that Horizon itself would use the proceeds to purchase" covered securities.  (Opp'n 3.)  But Plaintiff not only ignores its allegation that investor funds would be directly invested in covered securities, it also disregards that courts have found *Troice* inapplicable where, as argued here, a plaintiff invests in **a fund** expecting the fund will invest in or hold covered securities, since the plaintiff expects to have at least an indirect ownership interest in those covered securities.  *See In re Kingate Mgmt. Ltd. Litig.*, 784 F.3d 128, 142 (2d Cir. 2015) (SLUSA applies where plaintiffs "purchased the uncovered shares of the offshore Funds, expecting that the Funds were investing the proceeds in S & P 100 stocks, which are covered securities"); *In re Herald*, 753 F.3d 110, 113 (2d Cir. 2014) (same).[2]  Thus, the action must be dismissed under SLUSA.

### B.    Plaintiff's RICO Claims Against Oppenheimer Fail.

#### 1.    No Vicarious Liability For Woods's Conduct.

***No Employment Or Agency Relationship.***  To impose vicarious liability

---

[2]    *See also Marchak v. JPMorgan Chase & Co.*, 84 F. Supp. 3d 197, 202, 217 (E.D.N.Y. 2015) (distinguishing *Troice* and finding SLUSA covers alleged Ponzi schemes where, like here, advisors attracted investments in funds by promising those funds would consist of securities holdings); *In re Harbinger Cap. Partners Funds Inv. Litig.*, 2014 WL 3694991, at *2–3 (S.D.N.Y. July 7, 2014) (same).

under Georgia law, a "relationship must exist [at the time of the act] between the principal and agent or employer and employee." *Gaskins v. Gaona*, 433 S.E.2d 408, 409 (Ga. App. 1993).  Any other rule would create limitless liability for employers based on the conduct of former employees long after they discontinued employment. Here, Woods had no employment or other relationship with Oppenheimer ***at the time*** that Plaintiff invested with Woods.  (Opp'n 6–7.)  This defeats *respondeat superior* liability.  (Br. 9–11.)

Plaintiff wrongly relies on *Cobb Cnty. v. Jones Grp. P.L.C.*, 460 S.E.2d 516 (Ga. App. 1995).  There, the court found plaintiff alleged *respondeat superior* liability where a president engaged in racketeering conduct before his company was purchased ***and continued to do so with the new company***.  *Id.* at 520.  Yet that liability could exist only if "plaintiff can show that [the president] performed the predicate acts within the scope of his employment on behalf of the corporation."  *Id.* at 521.  Here, Plaintiff does not allege any continuing relationship between Woods and Oppenheimer when Woods allegedly defrauded Plaintiff or that Woods performed any act on behalf of Oppenheimer in allegedly defrauding Plaintiff.[3]

---

[3]     Plaintiff also ignores that a higher standard of vicarious criminal liability applies to RICO claims, requiring that crime be "'authorized, requested, commanded, performed, or recklessly tolerated by the board of directors or by a managerial official who is acting within the scope of his employment.'"  *Clark v.*

*No Benefit To Oppenheimer.*   There is no dispute that vicarious RICO liability does not apply absent a showing that Oppenheimer "receive[d] some benefit from the RICO violation."  *Smith v. Copeland*, 2010 WL 2104667, at *8 (N.D. Ga. May 21, 2010).  The Opposition does not identify any allegation that Oppenheimer received any money or other benefit from Plaintiff's investment.

The Opposition cites only one Paragraph in the Complaint (Opp'n 9), which alleges in conclusory fashion that Oppenheimer permitted Woods to resign in 2006 to avoid "substantial liability."  (Compl. ¶ 26.)  Plaintiff fails to cite a single case supporting its novel theory that permitting an employee to resign somehow makes a company criminally responsible under RICO for the non-employee's acts years later. And permitting the 2016 resignation had nothing to do with Woods's alleged misrepresentations to Plaintiff in 2019.   Although Plaintiff speculates what discovery may reveal as to *other* unidentified "Horizon customers" (Opp'n 9), there is no allegation that Oppenheimer benefited from any transaction between Woods and Plaintiff, which is what this Plaintiff must show.

Plaintiff cites *Sevcech v. Ingles Markets, Inc.*, 474 S.E.2d 4 (Ga. App. 1996),

*Sec. Life Ins. Co. of Am.*, 509 S.E.2d 602, 604 (Ga. 1998) (quoting O.C.G.A. § 16-2-22(a)(2)), *disapproved on other grounds by Williams Gen. Corp. v. Stone*, 632 S.E.2d 376 (Ga. 2006).  Plaintiff does not even attempt to identify allegations that meet this standard.  (Opp'n 6–7.)

but that case undermines its position.  There, the court affirmed summary judgment because the court could not "conceive how Ingles or its employees had anything to gain, pecuniary or otherwise, from falsely accusing customers of shoplifting." *Id.* at 7.  So, too, here.  There is no allegation that Oppenheimer gained anything from Woods allegedly defrauding Plaintiff for his own "personal uses."  (Compl. ¶ 64.) Indeed, an "employer cannot be liable under a theory of respondeat superior ***as a matter of law***" when "the employee's actions were for purely personal reasons and did nothing to further the employer's business." *Piedmont Hosp., Inc. v. Palladino*, 580 S.E.2d 215, 216 (Ga. 2003) (emphasis added).  Dismissal is required.

***No Conspiracy***.  Plaintiff concedes (Opp'n 10–11) that a RICO conspiracy requires factual allegations that plausibly show Oppenheimer "knowingly and willfully join[ed] a conspiracy which itself contains a common plan or purpose to commit two or more predicate acts." *Rosen v. Protective Life Ins. Co.*, 2010 WL 2014657, at *8 (N.D. Ga. May 20, 2010).  The Opposition fails to cite any well-pled allegation that Oppenheimer entered into a conspiracy with Woods or others.

The Opposition cites ***only*** Paragraph 37 (Opp'n 11), which, at most, alleges that Oppenheimer should have more closely monitored Woods's non-Oppenheimer activities years ago and did not disclose the reasons for his resignation on Form U5. (Compl. ¶ 37.)  But conspiracy requires ***agreement***, and this paragraph does not

plausibly show Oppenheimer agreed with Woods to engage in criminal racketeering. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 561 (2007) (rejecting conspiracy claim for failure to allege specific facts to show plausible agreement); *Almanza v. United Airlines, Inc.*, 851 F.3d 1060, 1071–74 (11th Cir. 2017) (applying requirement to affirm dismissal of RICO claims); *Rosen*, 2010 WL 2014657, at *8 (same). And it does not show that any such conspiracy existed when Woods allegedly defrauded Plaintiff years after he left Oppenheimer. Absent any allegation that Oppenheimer received any financial benefit from Plaintiff's transaction (much less Woods's scheme), Plaintiff's theory is simply implausible.

## 2. <u>No Direct RICO Liability Against Oppenheimer</u>.

Plaintiff's direct RICO claims fail because there are no well-pled allegations showing: (1) Oppenheimer engaged in any racketeering activity, much less a pattern of such activity; (2) causation; (3) Plaintiff was injured because Oppenheimer received money or property from the alleged scheme; and (4) any participation by Oppenheimer in a RICO enterprise. (Br. 12–21.) The Opposition either ignores or confirms the validity of each argument.

***No Racketeering Activity***. Plaintiff fails to identify any specific acts of mail fraud, wire fraud, or a 18 U.S.C. § 1957 violation that Oppenheimer supposedly committed, much less plead the specifics required by Rule 9(b). (Br. 13–17.)

Plaintiff argues that Oppenheimer gave "active assistance by permitting John Woods to walk back and forth between Oppenheimer and his other, illegal office space," and facilitated his side business by not monitoring Woods as closely as Plaintiff would have liked.  (*Id.*)  These alleged acts of "assistance," however, are not enumerated RICO predicate acts.  O.C.G.A. § 16-14-3(5)(A) (listing acts).

Similarly, the submission of an allegedly incomplete or inaccurate Form U5 to FINRA is not an enumerated RICO predicate act.  There is no private cause of action to enforce FINRA rules, and Plaintiff cannot circumvent Congressional intent and seek to enforce FINRA rules through state law claims.  (Br. 15.)  The Opposition ignores—and thus waives the right to contest—this dispositive issue.[4]

Plaintiff argues that Oppenheimer's behavior went beyond the single form U5 and consisted of "four separate" RICO predicate acts.  (Opp'n 12–13.)  But Plaintiff does not identify those "four" incidents, any supporting allegations, or any Rule 9(b) specifics.  (*Id.*)  There is no Oppenheimer racketeering activity, much less a pattern.

***No Causation.***  Plaintiff does not dispute that it invested money because of alleged misrepresentations ***by Woods***; it did not rely on anything said or done by

---

[4]     *See Townsend v. Bayview Loan Serv., LLC*, 2015 WL 11457697, at *3 (N.D. Ga. Jan. 15, 2015) ("failure to brief and argue an issue raised in a defendant's motion to dismiss is grounds for declaring the subject claim or claims abandoned."), *report and recommendation adopted*, 2015 WL 12434458 (N.D. Ga. Jan. 28, 2015).

Oppenheimer; and any chain of causation between Oppenheimer's alleged conduct (years earlier) and Plaintiff's injury is, at best, attenuated and indirect.  (Br. 17–19; Opp'n 14–15.)  Plaintiff cannot satisfy RICO's stringent causation requirement for civil liability, *see Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 459–60 (2006), including reliance on the alleged misstatement by someone connected to Plaintiff's transaction.  *See Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1351 (11th Cir. 2016).[5]

Ignoring this controlling law, Plaintiff argues that it need only show that "Oppenheimer's predicate acts were aimed at Plaintiff" (Opp'n 14–15), regardless of whether they harmed Plaintiff.  This is not the law, and it would negate RICO's stringent causation requirement.  Regardless, Plaintiff's Complaint fails under even its own standard.  Plaintiff does not allege it was targeted by Oppenheimer, and there is no allegation Oppenheimer even knew Plaintiff existed before this lawsuit.  Plaintiff was not an Oppenheimer customer, and Woods was not an Oppenheimer employee when he allegedly caused Plaintiff harm.  (Br. 17–20; Opp'n 14–15.)

***No Acquisition Of Money Or Property***.  There are no allegations that Plaintiff was injured by reason of Oppenheimer "acquiring money [or other property] through

---

[5]    "The federal and Georgia RICO acts are 'essentially identical,' meaning failure to state a claim under the federal act warrants dismissal under the Georgia act." *Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1211, 1221 (11th Cir. 2020) (internal citation omitted) (citing *Ray* for RICO elements).

a pattern of racketeering." *State of Ga. ex rel. Bowers v. Dairymen, Inc.*, 813 F. Supp. 1580, 1586 (S.D. Ga. 1991).  Plaintiff concedes that Oppenheimer made no money from Plaintiff's investment.  (Opp'n 15.)  Thus, the § 16-14-4(a) claim fails. *See Cisneros*, 972 F.3d at 1221.

Plaintiff makes the tortured argument that Oppenheimer "maintained" an "interest" in Woods's profits from his side business by not disclosing it.  (*Id.*)  But not disclosing something does not create a legal "interest" in money.  Oppenheimer never acquired (and thus never maintained) money that Woods unlawfully obtained from Plaintiff.  Plaintiff cites no case to support its illogical position.

***No Participation In A RICO Enterprise.***  Plaintiff pled no facts showing that Oppenheimer participated in a RICO enterprise.  (Br. 20–21.)  Plaintiff argues that Oppenheimer somehow "facilitated" Woods's transfer of consumer funds to Horizon and was "part of a group that included John Woods . . . selling interests in the Ponzi scheme."  (Opp'n 16.)  But these arguments as to Oppenheimer are unsupported by well pled facts under *Twombly*.  They do not distinguish Oppenheimer from any bank that complied with instructions of Woods's investors to transfer money from their accounts.  And they have nothing to do with Plaintiff, who was never an Oppenheimer customer.

Plaintiff also makes no effort to plead the existence of a RICO enterprise

involving Oppenheimer, including the requisite structural features.  (Br. 20–21.)
Plaintiff even concedes that Oppenheimer was not part of a "continuing" enterprise
when Plaintiff chose to invest, since Woods left Oppenheimer in 2016.  (Opp'n 16
(relying on conduct by Oppenheimer from "2008–2016").)  This is dispositive.

### C.   Plaintiff's Conclusory Allegations Cannot Support A Claim For Conspiracy Or Procurement Of A Breach of Fiduciary Duty.

The Opposition abandons the civil "Conspiracy" claim (Br. 21; Opp'n 17),
and points to no factual allegations to satisfy any procurement of a breach of
fiduciary duty.  (Br. 22; Opp'n 17–18.)  Plaintiff concedes it must show that
Oppenheimer gave "advice, counsel, persuasion, or command" to solicit someone to
breach a fiduciary duty towards Plaintiff, but identifies no such allegations.  (Opp'n
17–18.)  This is unsurprising because Woods was not employed by Oppenheimer
when Plaintiff invested.  (Br. 22.)  The Opposition ignores this issue.  (Opp'n 18.)

### D.   Plaintiff's Negligent Misrepresentation Claim Fails.

Plaintiff does not dispute that a negligent misrepresentation claim based on an
omission is not actionable under Georgia law.  (Br. 23–24; Opp'n 19–20.)  Yet
Plaintiff bases its claim on an omission—that Oppenheimer did not disclose certain
information in the Form U5.  (Compl. ¶ 90.)  This purported omission cannot support
a negligent misrepresentation claim.  *See, e.g.*, *Intellicig USA, LLC v. CN Creative*

*Ltd.*, 2017 WL 11634374, at *7 (N.D. Ga. Mar. 6, 2017) (applying rule).[6]

Plaintiff argues that it has pled an affirmative misrepresentation because Oppenheimer was asked on Form U5 "whether Woods voluntarily resigned . . . after allegations were made that he had violated investment-related statutes," and that Oppenheimer supposedly did not answer the question correctly.  (Opp'n 22.)  But apart from mischaracterizing its own allegation, Plaintiff does not allege any facts to show that Woods did not voluntarily resign, what reportable statutory allegations were made against him, or why they had to be disclosed.  This theory fails, too.

Regardless, any claim based on Oppenheimer's Form U5 fails because Congress decided not to provide a private cause of action to enforce FINRA rules.  (Br. 23–24; Opp'n 19–23.)   Plaintiff cannot use Georgia law to circumvent Congressional intent and hold Oppenheimer liable for allegedly violating FINRA rules regarding the form.  *See, e.g.*, *Luis v. RBC Cap. Markets, LLC*, 401 F. Supp. 3d 817, 832 (D. Minn. 2019), *aff'd*, 984 F.3d 575 (8th Cir. 2020).  By not addressing this argument, Plaintiff concedes it.  *Townsend*, 2015 WL 11457697, at *3.

---

[6]    Plaintiff does not and cannot distinguish Oppenheimer's cited authority holding that an omission is not actionable through a negligent misrepresentation claim under Georgia law.  (Br. 23 n.15; Opp'n 20–21.)  The Opposition also ignores *Lilliston v. Regions Bank*, which holds that "[a]bsent a confidential relationship, no duty to disclose exists between parties engaged in arms-length business transactions."  653 S.E.2d 306, 309 (Ga. App. 2007).

Lastly, the Opposition does not explain how the Form U5 that Oppenheimer submitted years before Plaintiff invested caused Plaintiff to invest with Woods. Plaintiff does not allege that it reviewed or relied on anything in this form.  To the contrary, Plaintiff alleges it was misled by Woods's assurances.  (Compl. ¶ 33.) Plaintiff argues that Paragraph 93 of the Complaint shows that it "relied on" an affirmative statement by Oppenheimer when deciding to conduct business with Woods (Opp'n 22), but Paragraph 93 includes no such allegation.  (Compl. ¶ 93 (discussing "Form ADV" that Southport Capital provided to its customers).) Plaintiff does not identify any Oppenheimer statement it reviewed in connection with its investment.  As a result, this claim should be dismissed, too.

### E.    Plaintiff's Aiding And Abetting Fraud Claim Fails.

Georgia does not recognize a claim for aiding and abetting fraud.  To the extent the Court construes the claim as one of fraud, it fails for at least the same reasons as the negligent misrepresentation claim.  (Br. 25.)

Plaintiff argues that it "reasonably relied on Woods's public securities record in deciding to invest in Horizon," without citing to any paragraph of the Complaint. (Opp'n 24–25.)  There are no such allegations.  Yet even this would be insufficient. Plaintiff fails to identify any fraudulent statements *made by Oppenheimer* that Plaintiff received, much less reviewed and relied upon.  *See Stroman v. Bank of Am.*

*Corp.*, 852 F. Supp. 2d 1366, 1381 (N.D. Ga. 2012) (dismissing fraud claim because no non-conclusory allegation that plaintiff "relied" on false statement or omission).

### F.   __Plaintiff's Request To Amend Should Be Denied__.

Plaintiff's request to amend its Complaint should be denied because "a party seeking to amend a pleading . . . 'must either attach a copy of the proposed amendment to the motion or set forth the substance thereof.'" *Todd v. LG Chem, Ltd.*, 2021 WL 913941, at *3 (N.D. Ga. Mar. 10, 2021) (Grimberg, J.) (quoting *U.S. ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1362 (11th Cir. 2006)).

Moreover, Plaintiff cannot amend to avoid SLUSA preclusion. *See McCullough v. Nat'l Ass'n of Cntys*, 2011 WL 13257578, at *11 (M.D. Fla. Nov. 28, 2011) (denying leave to amend to avoid SLUSA preclusion).  Nor can Plaintiff cure the other failures in its Complaint, including that:  (a) Woods was not employed by Oppenheimer when he allegedly tricked Plaintiff into investing (thereby defeating the indirect liability claims); and (b) Oppenheimer did not engage in any racketeering or otherwise actionable conduct and did not proximately cause Plaintiff's alleged harm (thereby defeating the direct liability claims).

### III.   __CONCLUSION__

For the above reasons, and those stated in Oppenheimer's motion to dismiss, all claims against Oppenheimer should be dismissed.

Respectfully submitted this 17th day of January, 2022.

J. Gordon Cooney, Jr.
(admitted *pro hac vice*)
gordon.cooney@morganlewis.com
**Morgan, Lewis & Bockius LLP**
1701 Market Street
Philadelphia, PA 19103-2921
Tel: (213) 612-2500
Fax: (213) 612-2501

Brian M. Ercole
(admitted *pro hac vice*)
brian.ercole@morganlewis.com
**Morgan, Lewis & Bockius LLP**
600 Brickell Avenue, Suite 1600
Miami, Florida 33131-3075
Tel:  (305) 415-3000
Fax:  (305) 415-3001

/s/  Frank M. Lowrey IV
Frank M. Lowrey IV
Georgia Bar No. 410310
lowrey@bmelaw.com
Bondurant Mixson & Elmore, LLP
1201 West Peachtree St. NW
Suite 3900
Atlanta, GA 30309
Tel: (404) 881-4100
Fax: (404) 881-4111

*Attorneys for Defendant Oppenheimer & Co. Inc.*

16

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that the foregoing brief has been prepared in accordance with Local Rule 5.1, including preparation in Times New Roman 14-point font, one of the font and point selections approved by the Court in Local Rule 5.1(C).

This 17th day of January, 2022.

<u>*/s/ Frank M. Lowrey IV*</u>
Frank M. Lowrey IV
Georgia Bar No. 410310

## **CERTIFICATE OF SERVICE**

I certify that I caused a true and correct copy of the foregoing to be filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all parties to this matter via electronic notification or otherwise.

This 17th day of January, 2021.

/s/ Frank M. Lowrey IV
Frank M. Lowrey IV
Georgia Bar No. 410310